1

**WRIGHT, FINLAY & ZAK, LLP**
Renee M. Parker, Esq., WSBA No. 256851

2
Lukasz I. Wozniak, Esq., WSBA No. 47290
4665 MacArthur Court, Suite 200

3
Newport Beach, CA 92660
Tel: (949) 610-7023; Fax: (949) 477-9200

4
rmparker@wrightlegal.net

5

Attorney for GREEN TREE LOAN SERVICING LLC and MORTGAGE ELECTRONIC

6
REGISTRATION SYSTEMS, INC.

7

**UNITED STATES DISTRICT COURT**

8
**WESTERN DISTRICT OF WASHINGTON (TACOMA)**

9

JAMES A. BIGELOW | Case No. 3:14-cv-05798 BHS

10

Plaintiff, | **REQUEST FOR JUDICIAL NOTICE ON**

11
| **MOTION TO DISMISS BY DEFENDANTS**
vs. | **GREEN TREE SERVICING LLC AND**

12
| **MORTGAGE ELECTRONIC**
NORTHWEST TRUSTEE SERVICES, | **REGISTRATION SYSTEMS, INC.**

13
INC.; GREEN TREE SERVICING, LLC;
MORTGAGE ELECTRONIC

14
REGISTRATION SYSTEMS, INC.; and
DOE DEFENDANTS 1-20

15
Defendants.

16

17

18
  Pursuant to ER 201, Defendants GREEN TREE SERVICING LLC and MORTGAGE

19
ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") (hereinafter "Defendants"

20
collectively) requests that the Court take judicial notice of the following documents submitted

21
in support of its Motion to Dismiss Plaintiff's Complaint as stated below.

22
  Judicial notice is appropriate because Exhibits 2, 3, 4, 6 and 7 are matters of public

23
record according to Rule ER 803(14), (15) and RCW 5.44.040 as incorporated by Rule ER

24
803(8).

25

26

27
DEFENDANTS' REQUEST FOR | Renee M. Parker (SBN 36995)
JUDICIAL NOTICE | Wright, Finlay, & Zak, LLP

28
WFZ File No. 206-2014258 | 4665 MacArthur Blvd., Suite 200
Newport Beach, CA 92660
PH: (949) 477-5050

1    Plaintiffs also refer to the documents comprising Exhibits 1, and 5 throughout the

2  Complaint.  Documents whose contents are alleged in a complaint may be considered in ruling

3  on a CR 12(b)(6) motion to dismiss without converting the motion into a motion for summary

4  judgment pursuant to CR 56. *Rodriguez v. Loudeye Corp.*, 144 Wn. App. 709, 726 (2008) ("ER

5  201(b) authorizes the court to take judicial notice of a fact that is 'not subject to reasonable

6  dispute in that it is . . . capable of accurate and ready determination by resort to sources whose

7  accuracy cannot reasonably be questioned.'"); *Sebek v. City of Seattle*, 172 Wn. App. 273, 275

8  n.2 (2012) (same).

9    Defendants requests that the Court take judicial notice of the following documents:

10    1.    Exhibit 1 is a true and correct copy of the Note dated April 24, 2007 as executed

11  by James Bigelow and Carolyn Bigelow.

12    2.    Exhibit 2 is a true and correct copy of the Deed of Trust dated April 24, 2007,

13  recorded in the office of the Thurston County Auditor on April 27, 2007 as Instrument No.

14  3922368, except where personally identifying information, such as the loan number, has been

15  redacted for privacy.

16    3.    Exhibit 3 is a true and correct copy of the document entitled "Corporate

17  Assignment of Deed of Trust" from Mortgage Electronic Registration Systems, Inc. as nominee

18  for Pierce Commercial Bank, its Successors and Assigns, to Green Tree Servicing LLC,

19  recorded on April 20, 2012 in the official records of the Thurston County Auditor as Instrument

20  No. 4261697, except where personally identifying information, such as the loan number, has

21  been redacted for privacy.

22    4.    Exhibit 4 is a true and correct copy of the document entitled "Appointment of

23  Successor Trustee" naming Northwest Trustee Services, Inc. as the successor trustee, recorded

24  on May 18, 2012 in the official records of the Thurston County Auditor as Instrument No.

25  4266605.

26

27

28

DEFENDANTS' REQUEST FOR
JUDICIAL NOTICE
WFZ File No. 206-2014258

Renee M. Parker (SBN 36995)
Wright, Finlay, & Zak, LLP
4665 MacArthur Blvd., Suite 200
Newport Beach, CA 92660
PH: (949) 477-5050

5.     Exhibit 5 is a true and correct copy of the document entitled "Notice of Default" dated May 10, 2012 as sent to James Bigelow aka James A. Bigelow and Carolyn Bigelow aka Carolyn G. Bigelow aka Carolyn G. Willey aka Carolyn G. Absell.

6.     Exhibit 6 is a true and correct copy of the document entitled "Notice of Trustee's Sale" recorded on April 30, 2014 in the official records of the Thurston County Auditor as Instrument No. 4389907.

7.     Exhibit 7 is a true and correct copy of the Docket as obtained from PACER on October 24, 2014 for the bankruptcy case filed by James Allan Bigelow in the Western District of Washington, Case No. 14-45463-PBS.

Dated: December 2, 2014

Respectfully submitted,
WRIGHT, FINLAY, & ZAK, LLP

By:

Renee M. Parker, WSBA # 36995
Attorneys for Defendants,
GREEN TREE SERVICING LLC and
MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC.

DEFENDANTS' REQUEST FOR
JUDICIAL NOTICE
WFZ File No. 206-2014258

Renee M. Parker (SBN 36995)
Wright, Finlay, & Zak, LLP
4665 MacArthur Blvd., Suite 200
Newport Beach, CA 92660
PH: (949) 477-5050

3

1

## DECLARATION OF SERVICE

2

The undersigned declares as follows:

3

        On December 2, 2014, I served the foregoing document: **REQUEST FOR JUDICIAL**

4

**NOTICE ON MOTION TO DISMISS BY DEFENDANTS GREEN TREE SERVICING**

**LLC AND MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.** on interested

5

parties in this action by placing a true copy thereof enclosed in a sealed envelope via postage

prepaid, regular first class mail and/or electronic service as follows:

6

**SERVICE VIA U.S. MAIL:**

7

8

CHAMBER COPY:

The Honorable Benjamin H. Settle

9

United States Courthouse

1717 Pacific Avenue, Room 3100

10

Tacoma, WA 98402 - 3200

11

**ELECTRONIC SERVICE:**

12

PLAINTIFF:

13

James A Bigelow

sistermoonproductions@gmail.com

14

15

        I declare under penalty of perjury under the laws of the State of Washington and the

16

United States of America that the foregoing is true and correct.

17

DATED this 2nd day of December, 2014

18

19

                    _Steve Bennett_

20

                    Steve Bennett

21

22

23

24

25

26

27

| DEFENDANTS' REQUEST FOR | Renee M. Parker (SBN 36995) |
| JUDICIAL NOTICE | Wright, Finlay, & Zak, LLP |
| WFZ File No. 206-2014258 | 4665 MacArthur Blvd., Suite 200 |
| | Newport Beach, CA 92660 |
| | PH: (949) 477-5050 |

28

# EXHIBIT 1

MIN: ██████████████        Loan Number: ██████████

# INTEREST ONLY FIXED RATE NOTE

APRIL 24, 2007                    PUYALLUP                    WASHINGTON
[Date]                              [City]                        [State]

10018 CASCADIAN AVENUE SE, YELM, WASHINGTON 98597
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 233,899.00        (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is PIERCE COMMERCIAL BANK, A WASHINGTON CORPORATION
I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of  6.875 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

**(A) Time and Place of**

I will make a payment every month. This payment will be for interest only for the first  120        months, and then will consist of principal and interest.

I will make my monthly payment on the  1st       day of each month beginning on JUNE 1, 2007        . I will make these payments every month until I have paid all of the Principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest it will be applied to interest before Principal. If, on MAY 1, 2037        , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at PO BOX 110488, TACOMA, WASHINGTON 98411

or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $ 1,340.05        for the first 120        months of this Note, and thereafter will be in the amount of U.S. $ 1,795.91        . The Note Holder will notify me prior to the date of change in monthly payment.

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a prepayment if I have not made all the monthly payments due under the Note.

I may make a full prepayment or partial prepayments without paying a prepayment charge. The Note Holder will use my prepayments to reduce the amount of principal that I owe under this Note. However, the Note Holder may apply my prepayment to the accrued and unpaid interest on the prepayment amount, before applying my prepayment to reduce the principal amount of the Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes. However, if the partial prepayment is made during the period when my monthly payments consist only of interest, the amount of the monthly payment will decrease for the remainder of the term when my payments consist only of interest as well as during the time that my payments consist of principal and interest. If the partial prepayment is made during the period when my payments consist of principal and interest, the amount of my monthly payment will not decrease; however, the principal and the interest required under this Note will be paid prior to the Maturity Date.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

INTEREST ONLY Fixed Rate Note
FE-3166 (0508)                    Page 1 of 3

6. **BORROWER'S FAILURE TO PAY AS REQUIRED**

(A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of  15    calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be   5.000 % of my overdue payment. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

7. **GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

8. **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

9. **WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

10. **UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Initials:

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
JAMES BIGELOW                    -Borrower

_____ (Seal)
CAROLYN BIGELOW                  -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

*[Sign Original Only]*

PAY TO THE ORDER OF
COUNTRYWIDE HOME LOANS, INC
WITHOUT RECOURSE
COUNTRYWIDE BANK, FSB
FKA COUNTRYWIDE BANK, N.A.

BY _____
        LAURIE MEDER
    SENIOR VICE PRESIDENT

PAY TO THE ORDER OF

WITHOUT RECOURSE
COUNTRYWIDE HOME LOANS, INC.

BY: _____
    MICHELE SJOLANDER
    EXECUTIVE VICE PRESIDENT

PAY TO THE ORDER OF COUNTRYWIDE BANK,N.A., WITHOUT RECOURSE

PIERCE COMMERCIAL BANK

BY: _____
    SONJA L. LIGHTFOOT
ITS: SENIOR VICE PRESIDENT

INTEREST ONLY Fixed Rate Note
FE-3166 (0506)                          Page 3 of 3

# EXHIBIT 2

After Recording Return To:
PIERCE COMMERCIAL BANK
PO BOX 110488
TACOMA, WASHINGTON 98411

---
[Space Above This Line For Recording Data]
---

Loan Number: ████████                           *Chicago*

## DEED OF TRUST

MIN: ████████

Grantor(s) (Last name first, then first name and initials):
1. BIGELOW, JAMES
2. BIGELOW, CAROLYN
3.
4.
5.
6.
☐   Additional names on page          of document.

Grantee(s) (Last name first, then first name and initials):
1. MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS)
2. *Pierce Commercial Bank MERS*
3.
4.
5.
6. *Trustee Chicago Title*
☐   Additional names on page          of document.

Legal Description (abbreviated: i.e., lot, block, plat or section, township, range):
LOT 28 OF OAKRIDGE


Full legal description on page    3    of document.

Assessor's Property Tax Parcel(s) or Account Number(s): 65730002800

Reference Number(s) Assigned or Released:

☐   Additional references on page          of document.


Borrower Initials: _JB_  _CB_  _____  _____  _____  _____

WASHINGTON--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3048 1/01 (02/01/07)          Page 1 of 16

DocMagic *eForms* 800-649-1362
www.docmagic.com

3922368                                    **Page 1 of 19**
04/27/2007 03:24 PM    Deed Of Trust
Thurston County Washington
CHICAGO TITLE COMPANY

**EXHIBIT 2**

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A)** "Security Instrument" means this document, which is dated APRIL 24, 2007 , together with all Riders to this document.

**(B)** "Borrower" is JAMES BIGELOW AND CAROLYN BIGELOW, HUSBAND AND WIFE

Borrower is the trustor under this Security Instrument.

**(C)** "Lender" is PIERCE COMMERCIAL BANK

Lender is a WASHINGTON CORPORATION                                            organized and existing under the laws of WASHINGTON
Lender's address is PO BOX 110488, TACOMA, WASHINGTON 98411

**(D)** "Trustee" is CHICAGO TITLE
3315 PACIFIC AVENUE SE D-1B, OLYMPIA, WASHINGTON 98501

**(E)** "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(F)** "Note" means the promissory note signed by Borrower and dated APRIL 24, 2007 .
The Note states that Borrower owes Lender TWO HUNDRED THIRTY-THREE THOUSAND EIGHT HUNDRED NINETY-NINE AND 00/100 Dollars (U.S. $ 233,899.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than MAY 1, 2037

**(G)** "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

**(H)** "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(I)** "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☒ Planned Unit Development Rider | |
| ☐ Balloon Rider | ☐ Biweekly Payment Rider | |
| ☐ 1-4 Family Rider | ☐ Second Home Rider | |
| ☐ Condominium Rider | ☐ Other(s) [specify] | |

**(J)** "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

Borrower Initials: _JB_  _CB_  _____  _____

WASHINGTON--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3048 1/01  (02/01/07)                     Page 2 of 16

DocMagic *EForms* 800-649-1362
www.docmagic.com

3922368
04/27/2007 03:24 PM     Deed Of Trust
Thurston County Washington
CHICAGO TITLE COMPANY

**Page 2 of 19**

Branch :F7I,User :TZ01                    Comment:                                    Station Id :WX0X

**(K)** "**Community Association Dues, Fees, and Assessments**" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L)** "**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M)** "**Escrow Items**" means those items that are described in Section 3.

**(N)** "**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O)** "**Mortgage Insurance**" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P)** "**Periodic Payment**" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q)** "**RESPA**" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R)** "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

|  COUNTY  | of |  THURSTON  | : |
|---|---|---|---|
| [Type of Recording Jurisdiction] | | [Name of Recording Jurisdiction] | |

LOT 28 OF OAKRIDGE, ACCORDING TO THE PLAT THEREOF RECORDED
MARCH 9, 2006 UNDER AUDITOR'S FILE NO. 3813776. IN THURSTON
COUNTY, WASHINGTON.
A.P.N.: 65730002800

which currently has the address of          10018 CASCADIAN AVENUE SE
                                                          [Street]

      YELM                        , Washington98597 ("Property Address"):
      [City]                                              [Zip Code]

Borrower Initials:

WASHINGTON--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3048 1/01 (02/01/07)                    Page 3 of 16

*DocMagic* 800-649-1362
www.docmagic.com

3922368                                    **Page 3 of 19**
04/27/2007 03:24 PM   Deed Of Trust
Thurston County Washington
CHICAGO TITLE COMPANY

Branch :F7I,User :TZ01                    Comment:                          Station Id :WX0X

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

Borrower Initials:

WASHINGTON--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3048 1/01 (02/01/07)                    Page 4 of 16

DocMagic *eForms* 800-649-1362
www.docmagic.com

**Page 4 of 19**

3922368
04/27/2007 03:24 PM          Deed Of Trust
Thurston County Washington
CHICAGO TITLE COMPANY

Branch :F7I,User :TZ01                          Comment:                                     Station Id :WX0X

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall

Borrower Initials: _____   _____   _____   _____

WASHINGTON--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3048 1/01  (02/01/07)                                          Page 5 of 16

DocMagic *eFpans* 800-649-1362
www.docmagic.com

3922368                                   **Page 5 of 19**
04/27/2007 03.24 PM    Deed Of Trust
Thurston County Washington
CHICAGO TITLE COMPANY

Branch :F7I,User :TZ01                    Comment:                                    Station Id :WX0X

be paid on the Funds.  Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA.  If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments.  If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.   **Charges; Liens.**  Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any.  To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument.  If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.   **Property Insurance.**  Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires.  What Lender requires pursuant to the preceding sentences can change during the term of the Loan.  The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably.  Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification.  Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense.  Lender is under no obligation to purchase any particular type or amount of coverage.  Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect.  Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of

Borrower Initials: _____  _____  _____  _____  _____

WASHINGTON--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3048 1/01  (02/01/07)                    Page 6 of 16

DocMagic *DocMagic*  800-649-1362
www.docmagic.com

3922368                                        **Page 6 of 19**
04/27/2007 03 24 PM   Deed Of Trust
Thurston County Washington
CHICAGO TITLE COMPANY

insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.  **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.  **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair

Borrower Initials: 

WASHINGTON--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3048 1/01 (02/01/07)                  Page 7 of 16

DocMagic *eFormes* 800-649-1362
www.docmagic.com

3922368
04/27/2007 03:24 PM   Deed Of Trust   **Page 7 of 19**
Thurston County Washington
CHICAGO TITLE COMPANY

Branch :F7I,User :TZ01                    Comment:                    Station Id :WX0X

the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8.   Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9.   Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10.   Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage

Borrower Initials: _____   _____   _____

WASHINGTON--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3048 1/01 (02/01/07)                    Page 8 of 16

DocMagic EFORMS 800-649-1362
www.docmagic.com

Page 8 of 19

3922368
04/27/2007 03:24 PM
Thurston County Washington
Deed Of Trust
CHICAGO TITLE COMPANY

substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the

Borrower Initials: _____  _____  _____  _____

WASHINGTON--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3048 1/01  (02/01/07)                                Page 9 of 16

DocMagic *eForms* 800-649-1362
www.docmagic.com

3922368                              Page 9 of 19
04/27/2007 03:24 PM     Deed Of Trust
Thurston County Washington
CHICAGO TITLE COMPANY

Branch :F7I,User :TZ01                          Comment:                                    Station Id :WX0X

repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original

Borrower Initials: _JB_  _____  _____  _____

WASHINGTON--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3048 1/01  (02/01/07)                          Page 10 of 16

DocMagic *DocMagic* 800-649-1362
www.docmagic.com

3922368                                              **Page 10 of 19**
04/27/2007 03:24 PM    Deed Of Trust
Thurston County Washington
CHICAGO TITLE COMPANY

Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice

Borrower Initials: _JB_   _CYB_   _____   _____   _____

WASHINGTON--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3048 1/01 (02/01/07)                     Page 11 of 16

DocMagic €Farms 800-649-1362
www.docmagic.com

3922368                          Page 11 of 19
04/77/2007 03 24 PM        Deed Of Trust
Thurston County Washington
CHICAGO TITLE COMPANY

required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) paysall expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no

Borrower Initials: _____  _____  _____  _____  _____

WASHINGTON--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3048 1/01  (02/01/07)                          Page 12 of 16

*DocMagic eForms* 800-649-1362
www.docmagic.com

Page **12 of 19**

3922368
04/27/2007 03:24 PM     Deed Of Trust
Thurston County Washington
CHICAGO TITLE COMPANY

Branch :F7I,User :TZ01                    Comment:                              Station Id :WX0X

acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental

Borrower Initials: _____  _____  _____  _____

WASHINGTON--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3048 1/01  (02/01/07)              Page 13 of 16

DocMagic *eFarms* 800-649-1362
www.docmagic.com

Page **13 of 19**

3922368
04/27/2007 03:24 PM   Deed Of Trust
Thurston County Washington
CHICAGO TITLE COMPANY

Branch :F7I,User :TZ01                    Comment:                                    Station Id :WX0X

or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property at public auction at a date not less than 120 days in the future. The notice shall further inform Borrower of the right to reinstate after acceleration, the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale, and any other matters required to be included in the notice by Applicable Law. If the default is not cured on or before the date specified in the notice, Lender at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and/or any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee and Lender shall take such action regarding notice of sale and shall give such notices to Borrower and to other persons as Applicable Law may require. After the time required by Applicable Law and after publication of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of the Property for a period or periods permitted by Applicable Law by public announcement at the time and place fixed in the notice of sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it or to the clerk of the superior court of the county in which the sale took place.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs and the Trustee's fee for preparing the reconveyance.

**24. Substitute Trustee.** In accordance with Applicable Law, Lender may from time to time appoint a successor trustee to any Trustee appointed hereunder who has ceased to act. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

**25. Use of Property.** The Property is not used principally for agricultural purposes.

Borrower Initials:

WASHINGTON--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3048 1/01 (02/01/07)                    Page 14 of 16

DocMagic *EForms* 800-649-1362
www.docmagic.com

3922368                                    Page 14 of 19
04/27/2007 03 24 PM      Deed Of Trust
Thurston County Washington
CHICAGO TITLE COMPANY

**26. Attorneys' Fees.** Lender shall be entitled to recover its reasonable attorneys' fees and costs in any action or proceeding to construe or enforce any term of this Security Instrument. The term "attorneys' fees," whenever used in this Security Instrument, shall include without limitation attorneys' fees incurred by Lender in any bankruptcy proceeding or on appeal.

**ORAL AGREEMENTS OR ORAL COMMITMENTS TO LOAN MONEY, EXTEND CREDIT, OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT ARE NOT ENFORCEABLE UNDER WASHINGTON LAW.**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)              _____ (Seal)
JAMES BIGELOW              -Borrower              CAROLYN BIGELOW           -Borrower

_____ (Seal)              _____ (Seal)
                           -Borrower                                         -Borrower

_____ (Seal)              _____ (Seal)
                           -Borrower                                         -Borrower

_____                      _____
Witness                                            Witness

WASHINGTON--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3048 1/01  (02/01/07)                 Page 15 of 16

DocMagic *eForms* 800-649-1362
www.docmagic.com

**Page 15 of 19**

3922368
04/27/2007 03 24 PM    Deed Of Trust
Thurston County Washington
CHICAGO TITLE COMPANY

Branch :F7I,User :TZ01                     Comment:                                    Station Id :WX0X

———————————— [Space Below This Line For Acknowledgment] ————————————

State of Washington          )

County of __PIERCE_____ )

On this day personally appeared before me ___JAMES BIGELOW AND CAROLYN___

__BIGELOW_____

to me known to be the individual or individuals described in and who executed the within and foregoing
instrument, and acknowledged that he/she/they signed the same as his/her/their free and voluntary act and
deed, for the uses and purposes therein mentioned.

Given under my hand and official seal this 25th day of __April, 2007__ .

_____
Notary Public in and for the state of Washington,
residing at: Puyallup

My commission expires: __8-1-07__

(Seal)

WASHINGTON--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3048 1/01  (02/01/07)                Page 16 of 16

DocMagic *eForms* 800-649-1362
www.docmagic.com

3922368                                    **Page 16 of 19**
04/27/2007 03:24 PM    Deed Of Trust
Thurston County Washington
CHICAGO TITLE COMPANY

Branch :F7I,User :TZ01                    Comment:                                    Station Id :WX0X

Loan Number: ▇▇▇▇▇▇

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this     24th        day of
APRIL, 2007                    , and is incorporated into and shall be deemed to amend and
supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date,
given by the undersigned (the "Borrower") to secure Borrower's Note to   PIERCE
COMMERCIAL BANK, A WASHINGTON CORPORATION
(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

    10018 CASCADIAN AVENUE SE, YELM, WASHINGTON 98597
                              [Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other
such parcels and certain common areas and facilities, as described in
COVENANTS, CONDITIONS AND RESTRICTIONS OF RECORD
(the "Declaration"). The Property is a part of a planned unit development known as

OAKRIDGE
                         [Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent
entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the
uses, benefits and proceeds of Borrower's interest.

    **PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument,
Borrower and Lender further covenant and agree as follows:

    **A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's
Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation,
trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or
other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and
assessments imposed pursuant to the Constituent Documents.

    **B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted
insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and
which provides insurance coverage in the amounts (including deductible levels), for the periods, and against
loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but
not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the
provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property
insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance
coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the
Owners Association policy.

Borrower Initials: _____ _____ _____ _____ _____

MULTISTATE PUD RIDER--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3150 1/01                              Page 1 of 3

*DocMagic* ℰℱℴℛ𝓂ℴ𝓈 800-649-1362
www.docmagic.com

Page 17 of 19

3922368
04/27/2007 03:24 PM    Deed Of Trust
Thurston County Washington
CHICAGO TITLE COMPANY

Branch :F7I,User :TZ01                    Comment:                              Station Id :WX0X

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

Borrower Initials: _____ _____ _____ _____ _____ _____

MULTISTATE PUD RIDER--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3150 1/01                                      Page 2 of 3

*DocMagic* 800-649-1362
www.docmagic.com

Page 18 of 19

3922368
04/22/2007 03:24 PM   Deed Of Trust
Thurston County Washington
CHICAGO TITLE COMPANY

Branch :F7I,User :TZ01                          Comment:                                    Station Id :WX0X

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

_____ (Seal)         _____ (Seal)
JAMES BIGELOW              -Borrower            CAROLYN  BIGELOW             -Borrower

_____ (Seal)         _____ (Seal)
                          -Borrower                                        -Borrower

_____ (Seal)         _____ (Seal)
                          -Borrower                                        -Borrower

MULTISTATE PUD RIDER--Single Family                     DocMagic *ERormas* 800-649-1362
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                        www.docmagic.com
Form 3150 1/01                    Page 3 of 3

Page 19 of 19

3922368
04/27/2007 03:24 PM   Deed Of Trust
Thurston County Washington
CHICAGO TITLE COMPANY

# EXHIBIT 3

4261697                          **Pages: 1**
04/20/2012 08:34 AM ASSGN
Thurston County, Washington
NATIONWIDE TITLE CLEARING

When Recorded Return To:
Green Tree Servicing LLC
C/O NTC 2100 Alt. 19 North
Palm Harbor, FL 34683

## CORPORATE ASSIGNMENT OF DEED OF TRUST

Loan # ███████████

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS) AS NOMINEE FOR PIERCE COMMERCIAL BANK, ITS SUCCESSORS AND ASSIGNS, (ASSIGNOR), (MERS Address: P.O. Box 2026, Flint, Michigan 48501-2026) by these presents does convey, grant, sell, assign, transfer and set over the described Deed of Trust together with all interest secured thereby, all liens, and any rights due or to become due thereon to **GREEN TREE SERVICING LLC, WHOSE ADDRESS IS 7360 SOUTH KYRENE ROAD, T314, TEMPE, AZ 85283 (800)643-0202, ITS SUCCESSORS OR ASSIGNS,** (ASSIGNEE)

Said Deed of Trust is dated 04/24/2007 and executed by **JAMES BIGELOW AND CAROLYN BIGELOW** and recorded in Book/ page /Instr# 3922368 in the office of the Recorder of THURSTON County, WA.

LOT 28 OF OAKRIDGE
Parcel ID #: 65730002800

Dated this 19th day of April in the year 2012
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS) AS NOMINEE FOR PIERCE COMMERCIAL BANK, ITS SUCCESSORS AND ASSIGNS

DERRICK WHITE
ASST. SECRETARY

STATE OF FLORIDA          COUNTY OF PINELLAS
The foregoing instrument was acknowledged before me on this 19th day of April in the year 2012, by DERRICK WHITE as ASST. SECRETARY for MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS) AS NOMINEE FOR PIERCE COMMERCIAL BANK, ITS SUCCESSORS AND ASSIGNS, who, as such ASST. SECRETARY being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.

MIRANDA AVILA, NOTARY PUBLIC
Comm. Expires: 08/22/2014

Notary Public State of Florida
Miranda Avila
My Commission EE019063
Expires 08/22/2014

Document Prepared By: E.Lance/NTC 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152
GTSAV███████ MIN ████████████          MERS PHONE 1-888-679-MERS████

## EXHIBIT 3

# EXHIBIT 4

Branch :F7I,User :TZ01                    Comment:                              Station Id :WX0X

* After Recording Return to:
Nanci Lambert
Northwest Trustee Services, Inc.
P.O. Box 997
Bellevue, WA 98009-0997

## Appointment of Successor Trustee



File No. 7042.26476

James Bigelow and Carolyn Bigelow, husband and wife is/are the grantor(s), Chicago Title is the trustee and Mortgage Electronic Registration Systems, Inc. as nominee for Pierce Commercial Bank is the beneficiary under that certain deed of trust dated 04/24/07 and recorded on 04/27/07 under Thurston County, Washington Auditor's File No. 3922368.

The present beneficiary under said deed of trust appoints Northwest Trustee Services, Inc., a Washington corporation, whose address is P.O. Box 997, Bellevue, WA 98009-0997, as successor trustee under the deed of trust with all powers of the original trustee.

Green Tree Servicing LLC

By _____

STATE OF _South Dakota_ )
COUNTY OF _Pennington_ )ss

I certify that I know or have satisfactory evidence that _David S Potts_ is the person who appeared before me, and said person acknowledged that (he/she) signed this instrument, on oath stated that (he/she) was authorized to execute the instrument and acknowledged it as the _AVP_ of _Green Tree Servicing LLC_ to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument.

Dated: _5-14-12_

_____
Notary Public in and for the State of _South Dakota_
Residing at _Pennington County_
My appointment expires _9/18/17_

**NORTHWEST TRUSTEE SERVICES, INC.**
P.O. BOX 997
BELLEVUE, WA 98009-0997
425-586-1900    FAX 425-586-1997

Client:    Green Tree Servicing LLC
Borrower: Bigelow, James and Carolyn



4266605
05/18/2012 12:49 PM    Miscellaneous
Thurston County Washington
DPS

Pages: 1

EXHIBIT 4

# EXHIBIT 5

# Notice of Default

**To:**

James Bigelow aka James A. Bigelow          Carolyn Bigelow aka Carolyn G. Bigelow
10018 Cascadian Avenue Southeast          aka Carolyn G. Willey aka Carolyn G. Asbell
Yelm, WA  98597          10018 Cascadian Avenue Southeast
          Yelm, WA  98597

Regarding the real property "Property" located at:

**Property Address:**
10018 Cascadian Avenue Southeast
Yelm, WA  98597

**If you are the owner of this property and you occupy it as your residence, you should take care to protect your interest in your home. This notice of default (your failure to pay or otherwise perform) is the first step in a process that could result in you losing your home. You should carefully review your options. For example:**

**Can you pay and stop the foreclosure process?**
**Do you dispute the failure to pay?**
**Can you sell your property to preserve your equity?**
**Are you able to refinance this loan or obligation with a new loan or obligation from another lender with payments, terms, and fees that are more affordable?**
**Do you qualify for any government or private homeowner assistance programs?**
**Do you know if filing for bankruptcy is an option? What are the pros and cons of doing so?**

**Do not ignore this notice; because if you do nothing, you could lose your home at a foreclosure sale. (No foreclosure sale can be held any sooner than ninety days after a notice of sale is issued and a notice of sale cannot be issued until thirty days after this notice.) Also, if you do nothing to pay what you owe, be careful of people who claim they can help you. There are many individuals and businesses that watch for the notices of sale in order to unfairly profit as a result of borrowers' distress.**

**You may feel you need help understanding what to do. There are a number of professional resources available, including home loan counselors and attorneys, who may assist you. Many legal services are lower-cost or even free, depending on your ability to pay. If you desire legal help in understanding your options or handling this default, you may obtain a referral (at no charge) by contacting the county bar association in the county where your home is located. These legal referral services also provide information about lower-cost or free legal services for those who qualify.  You may contact the Department of Financial Institutions or the statewide civil legal aid hotline for possible assistance or referrals.**

A)  **Property description:**

Lot 28 of Oakridge, according to the plat thereof recorded March 9, 2006 under Auditor's File No. 3813776. In Thurston County, Washington.

B)  **Deed of Trust information:**  Thurston County Auditor's File No.: 3922368;  Recording Date:  04/27/07

C)  **Declaration of payment default:**  The beneficiary declares you in default for failing to make payments as required by your note and deed of trust.

EXHIBIT 5

**D) Itemized account of the arrears:**

| | |
|---|---|
| Delinquent monthly payments beginning with the 11/01/11 installment. | $11,619.37 |
| Late charges: | $0.00 |
| Lender's Fees and Costs | $226.00 |
| Trustee's fees | $475.00 |
| Costs | |
|     Title report (estimate) | $946.08 |
|     Recording | $15.00 |
|     Certified mail | $20.00 |
|     Posting | $70.00 |
|     Sale Costs | $0.00 |
| **Total arrears and costs due today** | **$13,371.45** |

**E) Itemized account of all other specific charges, costs or fees that grantor or borrower is or may be obliged to pay to reinstate the deed of trust before the recording of the notice of sale.**

| | |
|---|---|
| Additional monthly payment | $1,659.91 |
| Additional late charge | |

**F)  Amount required to cure payment defaults before notice of sale recorded:**    **$15,110.77**
**In addition, grantor or borrower must timely cure all other defaults before the note and deed of trust are deemed reinstated.**

*Payments and late charges continue to accrue and additional advances may be made.* <u>*The sums stated above are*</u> <u>*estimates only*</u>*.  Before attempting to reinstate the loan, call us at 425-586-1900 to learn the exact amounts of monetary defaults and actions required to cure possible other defaults.*

**G) Effect of failure to cure:**  Failure to cure all alleged defaults within 30 days of mailing/personal service of this notice may lead to recordation, transmittal and publication of a notice of sale and the Property may be sold at public auction no less than 120 days from the date of this notice.

**H) Effect of recording, transmitting and publication of the notice of sale:**  The effect of the recordation, transmittal and publication of the notice of sale will be to (i) increase the costs and fees and (ii) publicize the default and advertise the Property for sale.

**I)  Effect of sale of the Property:**  The Trustee's sale of the Property will deprive the borrower, grantor and any successor in interest of all their interest in the Property.

**J)  Recourse to courts:**  The borrower, grantor, any guarantor or any successor in interest has recourse to the courts pursuant to RCW 61.24.130 to contest the default(s) on any proper ground.

**K) Contact Information for Note Owner and Loan Servicer.**

The owner of the note is Federal National Mortgage Association (Fannie Mae), whose address is:

Fannie Mae
3900 Wisconsin Avenue
Washington DC  20016

The loan servicer for this loan is Green Tree Servicing LLC, whose address and telephone number are:

7360 South Kyrene Road, T-208
Tempe, AZ  85283

877-337-4141

**L) Notice pursuant to the Federal Fair Debt Collection Practices Act:** IF YOU HAVE RECEIVED A DISCHARGE OF THE DEBT REFERENCED HEREIN IN A BANKRUPTCY PROCEEDING, THIS LETTER IS NOT AN ATTEMPT TO IMPOSE PERSONAL LIABILITY UPON YOU FOR PAYMENT OF THAT DEBT. IN THE EVENT YOU HAVE RECEIVED A BANKRUPTCY DISCHARGE, ANY ACTION TO ENFORCE THE DEBT WILL BE TAKEN AGAINST THE PROPERTY ONLY. If you are the consumer who originally contracted the debt or if you assumed the debt, then you are notified that:

1. As of the date of this notice you owe $245,934.21. Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check. For further information, write to the address provided in Section 6 below or call us at 425-586-1900.
2. The creditor to whom the debt is owed Green Tree Servicing LLC.
3. Unless within 30 days after receipt of this notice you dispute the debt or any portion of it, we will assume the debt to be valid. The Fair Debt Collection Practices Act does not require that we wait until 30 days from the date you receive this letter before initiating foreclosure proceedings.
4. If you notify us within 30 days after receipt of this notice that you dispute the debt or any part of it, we will request that the creditor obtain verification of the debt and mail it to you.
5. If you request within 30 days after receipt of this notice, we will request that the creditor provide you with the name and address of the original creditor, if different from the current creditor.
6. Written requests should be addressed to Northwest Trustee Services, Inc., Post Office Box 997, Bellevue, WA 98009-0997.

Dated:  **May 10, 2012**                              Green Tree Servicing LLC
                                                       By Northwest Trustee Services, Inc., its duly authorized agent


**This is an attempt to collect a debt and any information obtained will be used for that purpose.**


**NORTHWEST TRUSTEE SERVICES, INC.**
**P.O. BOX 997**
**BELLEVUE, WA 98009-0997**

        **File No:** 7042.26476
        **Matter:** Bigelow, James and Carolyn
        **Client:** Green Tree Servicing LLC


**NANCI LAMBERT**
**425-586-1900**
**FAX 425-586-1997**

**BENEFICIARY OR AUTHORIZED AGENT DECLARATION PURSUANT TO
CHAPTER 61.24 RCW (SSHB 1362)
AND "FORECLOSURE LOSS" MITIGATION FORM**

Borrower(s):        Bigelow, James and Carolyn
Beneficiary:        Green Tree Servicing LLC
Loan Servicer:      Green Tree Servicing LLC
Property:           10018 CASCADIAN AVENUE SE, YELM, WA 98597
Loan No.:           ███████████

The undersigned beneficiary or authorized agent for the beneficiary hereby represents and
declares under the penalty of perjury that [check the applicable box and fill in any blanks
so that the trustee can insert, on the beneficiary's behalf, the applicable declaration in the
notice of default required under chapter 61.24 RCW]:



[X] (1) The beneficiary or beneficiary's authorized agent has contacted the borrower
under, and has complied with, RCW 61.24.031 (contact provision to "assess the
borrower's financial ability to pay the debt secured by the deed of trust and explore
options for the borrower to avoid foreclosure") and the borrower did not request a
meeting.

[ ] (2) The beneficiary or beneficiary's authorized agent has contacted the borrower
as required under RCWW 61.24.031 and the borrower or the borrower's designated
representative requested a meeting.  A meeting was held in compliance with RCW
61.24.031.

[ ] (3) The beneficiary or beneficiary's authorized agent has exercised due diligence
to contact the borrower as required in RCW 61.24.031(5)

[ ] (4) The borrower has surrendered the secured property as evidenced by either a
letter confirming the surrender or by delivery of the keys to the secured property to
the beneficiary, the beneficiary's authorized agent or to the trustee.

[ ] (5) Under RCW 61.24.031, the beneficiary or the beneficiary's authorized agent
has verified information that, on or before the date of this declaration, the
borrower(s) has filed for bankruptcy, and the bankruptcy stay remains in place, or
the borrower has filed for bankruptcy and the bankruptcy court has granted relief
from the bankruptcy stay allowing the enforcement of the deed of trust.

**I declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.**

Dated: 5-4-12

Place of Signature: Rapid City SD

Green Tree Servicing LLC
(Beneficiary's or Authorized Agent's Name)

By: Sue Spratte
(Signature)

Sue Spratto
(Authorized Signer's Printed Name)

Foreclosure Specialist
(Authorized Signer's Title)

BIGELOW, JAMES AND CAROLYN

# EXHIBIT 6

Branch :F7I,User :TZ01                Comment:                              Station Id :WX0X

4389907                **Pages: 4**
04/30/2014 02:10 PM NTS
Thurston County, Washington
FIRST AMERICAN NATIONAL DEFAULT SEATTLE

After Recording, Return to:
Nanci Lambert
Northwest Trustee Services, INC.
P.O. Box 997
Bellevue, WA 98009-0997

File No.:        7042.26476
Grantors:        Northwest Trustee Services, Inc.
                 Green Tree Servicing LLC
Grantee:         James Bigelow and Carolyn Bigelow, husband and wife
Ref to DOT Auditor File No.: 3922368
Tax Parcel ID No.: 65730002800
Abbreviated Legal:  Lot 28 of Oakridge, Auditor's File No. 3813776, Thurston Co., WA

**Notice of Trustee's Sale**
Pursuant to the Revised Code of Washington 61.24, et seq.

**THIS NOTICE IS THE FINAL STEP BEFORE THE FORECLOSURE SALE OF YOUR HOME**

You have only 20 DAYS from the recording date of this notice to pursue mediation.

**DO NOT DELAY.  CONTACT A HOUSING COUNSELOR OR AN ATTORNEY LICENSED IN WASHINGTON NOW** to assess your situation and refer you to mediation if you are eligible and it may help you save your home.  See below for safe sources of help.

**SEEKING ASSISTANCE**

Housing counselors and legal assistance may be available at little or no cost to you.  If you would like assistance in determining your rights and opportunities to keep your house, you may contact the following:

The statewide foreclosure hotline for assistance and referral to housing counselors recommended by the Housing Finance Commission Telephone: Toll-free: 1-877-894-HOME (1-877-894-4663).  Web site: http://www.dfi.wa.gov/consumers/homeownership/post_purchase_counselors_foreclosure.htm
The United States Department of Housing and Urban Development Telephone: Toll-free: 1-800-569-4287.  Web site: http://www.hud.gov/offices/hsg/sfh/hcc/fc/index.cfm?webListAction=search&searchstate=WA&filterSvc=dfc
The statewide civil legal aid hotline for assistance and referrals to other housing counselors and attorneys Telephone: Toll-free: 1-800-606-4819.  Web site: http://nwjustice.org/what-clear.
I.

On August 29, 2014, at 10:00 AM. near the directory in front of the Thurston County Courthouse, 2000 Lakeridge Drive S.W. in the City of Olympia, State of Washington, the undersigned Trustee (subject to any conditions imposed by the Trustee) will sell at public auction to the highest and best bidder, payable at time of sale, the following described real property "Property", situated in the County(ies) of Thurston, State of Washington:

**EXHIBIT 6**

Branch :F7I,User :TZ01                    Comment:                                    Station Id :WX0X

4389907  Page 2 of 4 04/30/2014 02:10 PM Thurston County WA

Lot 28 of Oakridge, according to the plat thereof recorded March 9, 2006 under Auditor's File No. 3813776. In Thurston County, Washington.

Commonly known as:    10018 Cascadian Avenue Southeast
                      Yelm, WA 98597

which is subject to that certain Deed of Trust dated 04/24/07, recorded on 04/27/07, under Auditor's File No. 3922368, records of Thurston County, Washington, from James Bigelow and Carolyn Bigelow, husband and wife, as Grantor, to Chicago Title, as Trustee, to secure an obligation "Obligation" in favor of Mortgage Electronic Registration Systems, Inc. as nominee for Pierce Commercial Bank, as Beneficiary, the beneficial interest in which was assigned by Mortgage Electronic Registration Systems, Inc. (MERS) as nominee for Pierce Commercial Bank, its successors and assigns to Green Tree Servicing LLC, under an Assignment/Successive Assignments recorded under Auditor's File No. 4261697.

*The Tax Parcel ID number and Abbreviated Legal Description are provided solely to comply with the recording statutes and are not intended to supplement, amend or supersede the Property's full legal description provided herein.

II.

No action commenced by the Beneficiary of the Deed of Trust is now pending to seek satisfaction of the Obligation in any Court by reason of the Grantor's or Borrower's default on the Obligation secured by the Deed of Trust.

III.

The Beneficiary alleges default of the Deed of Trust for failure to pay the following amounts now in arrears and/or other defaults:

|  |  | Amount due to reinstate as of 04/24/2014 |
|---|---|---|
| Monthly Payments |  | $47,915.25 |
| Late Charges |  | $0.00 |
| Lender's Fees & Costs |  | $442.97 |
| Total Arrearage | $48,358.22 |  |
| Trustee's Expenses (Itemization) |  |  |
| Trustee's Fee |  | $200.00 |
| Total Costs | $200.00 |  |
| Total Amount Due: |  | $48,558.22 |

IV.

The sum owing on the Obligation is: Principal Balance of $233,899.00, together with interest as provided in the note or other instrument evidencing the Obligation from 11/01/11, and such other costs and fees as are due under the Obligation, and as are provided by statute.

V.

The Property will be sold to satisfy the expense of sale and the Obligation as provided by statute. The sale will be made without representation or warranty, express or implied regarding title, possession, encumbrances or condition of the Property on August 29, 2014. The default(s) referred to in paragraph III, together with any

Branch :F7I,User :TZ01                         Comment:                                    Station Id :WX0X

4389907  Page 3 of 4 04/30/2014 02:10 PM Thurston County WA

subsequent payments, late charges, advances costs and fees thereafter due, must be cured by 08/18/14 (11 days before the sale date), to cause a discontinuance of the sale.  The sale will be discontinued and terminated if at any time before 08/18/14 (11 days before the sale date), the default(s) as set forth in paragraph III, together with any subsequent payments, late charges, advances, costs and fees thereafter due, is/are cured and the Trustee's fees and costs are paid.  The sale may be terminated any time after 08/18/14 (11 days before the sale date), and before the sale by the Borrower, Grantor, any Guarantor or the holder of any recorded junior lien or encumbrance paying the entire balance of principal and interest secured by the Deed of Trust, plus costs, fees, and advances, if any made pursuant to the terms of the obligation and/or Deed of Trust, and curing all other defaults.

VI.

A written notice of default was transmitted by the Beneficiary or Trustee to the Borrower and Grantor at the following address(es):

NAME AND ADDRESS

James Bigelow aka James A. Bigelow           Carolyn Bigelow aka Carolyn G. Bigelow
10018 Cascadian Avenue Southeast             aka Carolyn G. Willey aka Carolyn G. Asbell
Yelm, WA  98597                              10018 Cascadian Avenue Southeast
                                             Yelm, WA  98597

by both first class and certified mail, return receipt requested on 05/11/12, proof of which is in the possession of the Trustee; and on 05/11/12 Grantor and Borrower were personally served with said written notice of default or the written notice of default was posted on a conspicuous place on the real property described in paragraph I above, and the Trustee has possession of proof of such service or posting.

VII.

The Trustee, whose name and address are set forth below, will provide in writing to anyone requesting it a statement of all costs and trustee's fees due at any time prior to the sale.

VIII.

The effect of the sale will be to deprive the Grantor and all those who hold by, through or under the Grantor of all their interest in the Property.

IX.

Anyone having any objection to the sale on any grounds whatsoever will be afforded an opportunity to be heard as to those objections if they bring a lawsuit to restrain the sale pursuant to RCW 61.24.130.  Failure to bring such a lawsuit may result in a waiver of any proper grounds for invalidating the Trustee's sale.

X.

NOTICE TO OCCUPANTS OR TENANTS - The purchaser at the Trustee's Sale is entitled to possession of the property on the 20th day following the sale, as against the Grantor under the Deed of Trust (the owner) and anyone having an interest junior to the Deed of Trust, including occupants who are not tenants.  After the 20th day following the sale the purchaser has the right to evict occupants who are not tenants by summary proceedings under Chapter 59.12 RCW.  For tenant-occupied property, the purchaser shall provide a tenant with written notice in accordance with RCW 61.24.060.

Branch :F7I,User :TZ01                    Comment:                        Station Id :WX0X

4389907  Page 4 of 4 04/30/2014 02:10 PM Thurston County WA

The trustee's rules of auction may be accessed at www.northwesttrustee.com and are incorporated by this reference.  You may also access sale status at www.northwesttrustee.com and www.USA-Foreclosure.com.

EFFECTIVE: 04/24/2014

Date Executed: 4/29/2014

Northwest Trustee Services, Inc., Trustee

By _____
Authorized Signature
13555 SE 36TH ST. SUITE 100
BELLEVUE, WA 98006
Contact: Nanci Lambert
(425) 586-1900

STATE OF WASHINGTON     )
                        ) ss.
COUNTY OF KING          )

Nanci Lambert

I certify that I know or have satisfactory evidence that _____ is the person who appeared before me, and said person acknowledged that (he/she) signed this instrument, on oath stated that (he/she) was authorized to execute the instrument and acknowledged it as the Assistant Vice President of Northwest Trustee Services, Inc. to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument.

Dated: 4/29/2014 _____

GABRIEL MOORE
STATE OF WASHINGTON
NOTARY PUBLIC
MY COMMISSION EXPIRES
03-08-16

NOTARY PUBLIC in and for the State of Washington, residing at KING COUNTY
My commission expires 03/08/2016

NORTHWEST TRUSTEE SERVICES, INC. 13555 SE 36TH ST. SUITE 100, BELLEVUE, WA 98006 PHONE (425) 586-1900 FAX (425) 586-1997

File No: 7042.26476
Borrower:  Bigelow, James and Carolyn

SERVING WA, OR, ID, CA, NV, AZ, MT

This is an attempt to collect a debt and any information obtained will be used for that purpose.

# EXHIBIT 7

**FeeDueINST, CounDue, Dom, DebtEd**

### U.S. Bankruptcy Court
### Western District of Washington (Tacoma)
### Bankruptcy Petition #: 14-45463-PBS

*Date filed:* 10/09/2014
*341 meeting:* 11/06/2014
*Deadline for filing claims:* 02/04/2015
*Deadline for filing claims (govt.):* 04/07/2015

*Assigned to:* Paul B. Snyder
Chapter 13
Voluntary
Asset

*Debtor*
**James Allan Bigelow**
10018 Cascadian Aveue Se
Yelm, WA 98597
THURSTON-WA
SSN / ITIN: xxx-xx-7291

represented by **James Allan Bigelow**
PRO SE

*Trustee*
**David M Howe**
1551 Broadway, Ste 600
Tacoma, WA 98402
253-572-6600

*US Trustee*
**United States Trustee**
700 Stewart St Ste 5103
Seattle, WA 98101
(206) 553-2000

| Filing Date | # | Docket Text |
|---|---|---|
| 10/09/2014 | ○1 (4 pgs) | Chapter 13 Voluntary Petition . Statement of Financial Affairs due 10/23/2014. Schedules A-J due 10/23/2014. Chapter 13 Monthly and Disposable Income Form 22C Due 10/23/2014 Chapter 13 Plan due 10/23/2014. Summary of schedules due 10/23/2014. Incomplete Filings due by 10/23/2014. Government Proof of Claim due by 4/7/2015. Filed by James Allan Bigelow (IDB) Additional attachment (s) added on 10/9/2014 (Dodd-Barton, Inmaculada). (Entered: 10/09/2014 at 16:30:30) |
| 10/09/2014 | ○2 | Meeting of Creditors & Notice of Appointment of Interim Trustee David M Howe, with 341(a) meeting to be held on 11/06/2014 at 09:00 AM at Courtroom J, Union Station. Confirmation hearing to be held on 12/10/2014 at 01:00 PM at Judge Snyder's Courtroom H, |

## EXHIBIT 7

| | | |
|---|---|---|
| | | Union Station. Proof of Claim due by 02/04/2015. Objections for Discharge and Reaffirmation Agreements due by 01/05/2015. (Dodd-Barton, Inmaculada) (Entered: 10/09/2014 at 16:31:06) |
| 10/09/2014 | ❑ | Set Deadline. Chapter 13 Plan Status Report due by 06/04/2015. (admin) (Entered: 10/09/2014 at 16:53:02) |
| 10/09/2014 | ❑3 | Social Security Number(s) of Debtor(s) Submitted. PDF only viewable by court. Filed by James Allan Bigelow . (IDB) (Entered: 10/09/2014 at 16:54:44) |
| 10/09/2014 | ❑4 (1 pg) | Application to Pay Filing Fees in Installments . . Filed by James Allan Bigelow (IDB) (Entered: 10/09/2014 at 16:55:24) |
| 10/09/2014 | ❑5 | ORDER Granting Payment of Filing Fee in Installments: Entry of an order of discharge will be held in abeyance until filing fees are paid in full. Mark L. Hatcher, Clerk. Text only order . Final Installment Payment due by 2/6/2015. (IDB) (Entered: 10/09/2014 at 16:55:42) |
| 10/09/2014 | ❑6 (1 pg) | Notice of Deficient Filing . (IDB) (Entered: 10/09/2014 at 16:56:17) |
| 10/09/2014 | ❑7 (2 pgs) | 341 Meeting of Creditors Notice Sent to BNC for Mailing . (IDB) (Entered: 10/09/2014 at 16:56:48) |
| 10/10/2014 | ❑ | Receipt of Chapter 13 Installment Filing Fee - $100.00 by MT. Receipt Number 451199. (admin) (Entered: 10/10/2014 at 17:03:46) |
| 10/11/2014 | ❑8 (3 pgs) | BNC Certificate of Mailing - Meeting of Creditors (Related document(s)7 341 Meeting of Creditors Sent to BNC for Mailing). Notice Date 10/11/2014. (Admin.) (Entered: 10/11/2014 at 21:27:39) |
| 10/11/2014 | ❑9 (2 pgs) | BNC Certificate of Notice (Related document(s)6 Notice of Deficient Filing). Notice Date 10/11/2014. (Admin.) (Entered: 10/11/2014 at 21:27:39) |
| 10/13/2014 | ❑10 (5 pgs) | Debtor(s) Requirements to Send Documents to the Trustee. Sent to BNC for Mailing. (admin) (Entered: 10/13/2014 at 22:04:05) |
| 10/16/2014 | ❑11 (6 pgs) | BNC Certificate of Notice (Related document(s)10 Notice of Required Documents). Notice Date 10/16/2014. (Admin.) (Entered: 10/16/2014 at 21:39:54) |
| 10/21/2014 | ❑12 (1 pg) | Trustee Notice of *Deficiencies with Certificate of Service: Mailing of Plan to Creditors with Proof of Service filed with Court; Trustee Information Sheet; Bank Statements; Income Verification; Tax* |

| | | *Returns.* Filed by David M Howe on behalf of David M Howe. (Howe, David) (Entered: 10/21/2014 at 11:10:58) |
|---|---|---|

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 10/24/2014 17:36:01 | | | |
| **PACER Login:** | ▓▓▓▓▓▓ | **Client Code:** | 282-2014009 |
| **Description:** | Docket Report | **Search Criteria:** | 14-45463-PBS Fil or Ent: filed Doc From: 0 Doc To: 99999999 Term: included Links : included Headers: included Format: html Page counts for documents: included |
| **Billable Pages:** | 2 | **Cost:** | 0.20 |