# EXHIBIT

# N

# SONJA L. LIGHTFOOT CEASE AND DESIST

STATE OF WASHINGTON
DEPARTMENT OF FINANCIAL INSTITUTIONS
CONSUMER SERVICES DIVISION

| | |
|---|---|
| IN THE MATTER OF INVESTIGATING the Loan Originator License Application under the Consumer Loan Act of Washington by:<br><br>SONJA L. LIGHTFOOT,<br>                                              Respondent. | C-11-0750-11-TD01<br><br>TEMPORARY ORDER TO CEASE AND DESIST |

THE STATE OF WASHINGTON TO:      SONJA L. LIGHTFOOT

COMES NOW the Director of the Washington State Department of Financial Institutions (Director), by and through his designee Deborah Bortner, Division Director, Division of Consumer Services (designee), and finding that the public is likely to be substantially injured by delay in issuing a cease and desist order, enters this temporary order to cease and desist pursuant to chapter 31.04 RCW, the Consumer Loan Act (Act), based on the following findings:

## I. FACTUAL FINDINGS

**1.1   Respondent Sonja L. Lightfoot (Lightfoot)** was licensed by the Department of Financial Institutions of the State of Washington (Department) to conduct business as a Mortgage Loan Originator on or about May 24, 2010, and continues to be licensed to date. Respondent Lightfoot is employed by Republic Mortgage Home Loans, LLC.

**1.2   Federal Indictment.** On or about August 4, 2011, Respondent Lightfoot was indicted by a federal grand jury for felony charges of Conspiracy and Wire Fraud (5 counts) alleged to have been committed between July 2004 and July 2008 while Respondent Lightfoot was employed as Senior Vice President of Residential Lending for Pierce Commercial Bank; a

TEMPORARY ORDER TO CEASE AND DESIST
C-11-0750-11-TD01
SONJA L. LIGHTFOOT

1

DEPARTMENT OF FINANCIAL INSTITUTIONS
150 Israel Rd SW
PO Box 41200
Olympia, WA 98504-1200

state-chartered bank located in Tacoma, Washington. According to the Indictment, all charges involve residential mortgage loans.

## II. GROUNDS FOR ENTRY OF ORDER

**2.1  Requirement to Demonstrate Financial Responsibility, Character, and General Fitness.** Pursuant to RCW 31.04.247(1)(e) and WAC 208-620-710(4)(a), the Director may deny a mortgage loan originator license if the applicant fails to demonstrate character and general fitness such as to command the confidence of the community and to warrant a belief that business will be operated honestly, fairly, and efficiently within the purposes of the Act. Pursuant to RCW 31.04.093(3)(c), the Director may revoke a license if a fact or condition exists that, if it had existed at the time of the original application for the license, clearly would have allowed the director to deny the application for the original license. Based upon the factual allegations set forth in Section I, Respondent Lightfoot fails to demonstrate character and general fitness such as to command the confidence of the community and to warrant a belief that business will be operated honestly, fairly, and efficiently within the purposes of the Act.

## III. AUTHORITY TO ISSUE TEMPORARY ORDER TO CEASE AND DESIST

**3.1  Authority to Issue Temporary Order to Cease and Desist.** Pursuant to RCW 31.04.093(7), whenever the director determines that the public is likely to be substantially injured by delay in issuing a cease and desist order, the director may immediately issue a temporary cease and desist order. The order may direct the licensee to discontinue any violation of this chapter, to take such affirmative action as is necessary to comply with this chapter, and may include a summary suspension of the licensee's license and may order the licensee to immediately cease the conduct of business under this chapter.

TEMPORARY ORDER TO CEASE AND DESIST
C-11-0750-11-TD01
SONJA L. LIGHTFOOT

2

DEPARTMENT OF FINANCIAL INSTITUTIONS
150 Israel Rd SW
PO Box 41200
Olympia, WA 98504-1200

## IV. ORDER

Based on the above Factual Findings, Grounds for Entry of Order, and Authority to Issue Temporary Order to Cease and Desist, and pursuant to RCW 31.04.093(7) and RCW 31.04.165, the Director determines that Respondent Lightfoot fails to demonstrate character and general fitness such as to command the confidence of the community and to warrant a belief that her business will be operated honestly, fairly, and efficiently within the purposes of the Act, and that the public is likely to be substantially injured by a delay in entering a cease and desist order. Therefore, the Director ORDERS that:

4.1   Respondent Lightfoot's license to conduct business as a mortgage loan originator is summarily suspended.

4.2   Respondent Lightfoot shall immediately cease and desist from conducting any business under the Consumer Loan Act.

4.3   This order shall take effect immediately and shall remain in effect unless set aside, limited, or suspended in writing by an authorized court.

//
//
//
//
//
//
//
//
//

## NOTICE

PURSUANT TO CHAPTER 31.04 RCW, YOU ARE ENTITLED TO A HEARING WITHIN 14 DAYS OF REQUEST TO DETERMINE WHETHER THIS ORDER SHALL BECOME PERMANENT. IF YOU DESIRE A HEARING, THEN YOU MUST RETURN THE ATTACHED APPLICATION FOR ADJUDICATIVE HEARING INCORPORATED HEREIN BY THIS REFERENCE. <u>FAILURE TO COMPLETE AND RETURN THE APPLICATION FOR ADJUDICATIVE HEARING FORM SO THAT IT IS RECEIVED BY THE DEPARTMENT OF FINANCIAL INSTITUTIONS WITHIN 20 DAYS OF THE DATE THAT THIS ORDER WAS SERVED ON YOU WILL CONSTITUTE A DEFAULT AND WILL RESULT IN THE LOSS OF YOUR RIGHT TO A HEARING. SERVICE ON YOU IS DEFINED AS POSTING IN THE U.S. MAIL, POSTAGE PREPAID, TO YOUR LAST KNOWN ADDRESS. BE ADVISED THAT DEFAULT WILL RESULT IN THIS ORDER TO CEASE AND DESIST BECOMING PERMANENT ON THE 21ST DAY FOLLOWING SERVICE OF THIS ORDER UPON YOU.</u>

WITHIN TEN DAYS AFTER YOU HAVE BEEN SERVED WITH THIS TEMPORARY ORDER TO CEASE AND DESIST, YOU MAY APPLY TO THE SUPERIOR COURT IN THE COUNTY OF YOUR PRINCIPAL PLACE OF BUSINESS FOR AN INJUNCTION SETTING ASIDE, LIMITING, OR SUSPENDING THIS ORDER PENDING THE COMPLETION OF THE ADMINISTRATIVE PROCEEDINGS PURSUANT TO THIS NOTICE.

DATED this 22nd day of August, 2011.

DEBORAH BORTNER
Director
Division of Consumer Services
Department of Financial Institutions

TEMPORARY ORDER TO CEASE AND DESIST
C-11-0750-11-TD01
SONJA L. LIGHTFOOT

4

DEPARTMENT OF FINANCIAL INSTITUTIONS
150 Israel Rd SW
PO Box 41200
Olympia, WA 98504-1200

# EXHIBIT

# O

# FOUR INDICTED FOR CONSPIRACY AT PCB





NEWS

## United States Attorney Jenny A. Durkan
### Western District of Washington

**FOUR INDICTED FOR CONSPIRACY THAT RESULTED IN FAILURE OF TACOMA BANK**
*Leader of Conspiracy Arrested and Charged with 30 Counts Including Mail Fraud and Money Laundering*

FOR IMMEDIATE RELEASE                              August 5, 2011

Four former bank employees have been indicted by the grand jury in connection with fraudulent mortgage loans originated at the now defunct Pierce Commercial Bank. The lead defendant in the case, SHAWN L. PORTMANN, 39, was arrested this morning and will make his initial appearance in U.S. District Court in Tacoma at 3:00 today. PORTMANN, a former Senior Vice President and loan officer at the Bank, is charged in a 30 count indictment with conspiracy, false statements on loan applications, false statements to HUD, mail fraud, wire fraud, bank embezzlement, and transactional money laundering. Three other defendants are charged in the indictment: SONJA L. LIGHTFOOT, 52, the former Senior Vice President of Residential Lending at Pierce Commercial Bank; JEANETTE R. SALSI, 54, a former underwriter at Pierce Commercial Bank; and ADAM S. VOELKER, 38, a former loan processor at Pierce Commercial Bank from January 2005 until July 2006. Pierce Commercial Bank was closed by regulators in November 2010, in part because of mortgage lending losses.

"This conspiracy didn't just damage Pierce Commercial Bank. This activity helped pump up the housing bubble that artificially drove up valuations, and now leaves innocent families underwater on their mortgages," said U.S. Attorney Jenny A. Durkan. "Mr. Portmann and his co-conspirators are being held accountable for their criminal conduct that was fueled by greed. I commend the painstaking work by FBI, IRS-CI, HUD-OIG and U.S. Postal Inspection Service in bringing this case."

According to the indictment, between 2004 and 2008, PORTMANN and the other defendants conspired to submit false documents within various loan documents and applications. They falsified information about the borrowers' qualifications as well as about the value of the properties being purchased. Based on a review of a sample of loans, the co-conspirators caused more than 270 loans that contained false and fraudulent documents and information to be funded by Pierce Commercial Bank representing in excess of $45 million in loan proceeds. More than 100 of these loan files have defaulted, causing in excess of $10 million in loss to Pierce Commercial Bank, secondary investors, and HUD/FHA. The indictment details multiple false statements included in loan documents regarding an applicant's employment, income, and intention to reside in the property.

The indictment alleges that PORTMANN committed mail fraud affecting a financial institution when sending various documents through the mail to support the scheme. PORTMANN and LIGHTFOOT are charged with counts of wire fraud stemming from the sale of these mortgages on the secondary market to financial institutions such as Wells Fargo, Countrywide, IndyMac and J.P. Morgan Chase.

PORTMANN is charged with bank embezzlement for billing Pierce Commercial Bank for advertising that never occurred. PORTMANN set up two companies, The Principles, LLC and WM1, LLC. Using these companies PORTMANN billed Pierce Commercial Bank more than $150,000 for advertising that was never provided. PORTMANN used some of these funds to purchase a $68,000 BMW. That purchase is the basis for the transactional money laundering count.

"This investigation targets an unscrupulous goliath in the mortgage industry—someone who brokered thousands of loans with little regard for the ability of the borrowers to make good on the payments," said Laura M. Laughlin, Special Agent-in-Charge of the FBI Seattle office. "Fraudulent business practices on thousands of loans that Mr. Portmann and his co-conspirators pushed through unquestionably contributed to the larger housing market decline and the failure of Pierce Commercial Bank."

"Mortgage fraud has burdened our economy and caused an urgent reliance on the government, and ultimately the taxpayer, to bolster devastated communities," said Wayne North, Special Agent in Charge of

HUD's Office of Inspector General. "HUD OIG is deeply committed to working with our law enforcement partners in the continuing efforts to bring to justice those that seek to enrich themselves at the expense of our economic well-being."

"Mortgage fraud is a modern day plague throughout the country that has burdened lenders with bad loans and neighborhoods with abandoned and deteriorating properties," said Marcus Williams, the IRS Special Agent in Charge of the Pacific Northwest. "Washington residents can rest assured knowing that federal law enforcement takes mortgage fraud seriously since it played a major role in almost crippling our nation's banking system just a few years ago."

Pierce Commercial Bank received $6.8 million from Troubled Asset Relief Program (TARP) in January 2009. This money was never repaid.

False statements in loan applications, mail fraud affecting a financial institution, and bank embezzlement are punishable by up to 30 years in prison and a $1,000,000 fine. Wire fraud is punishable by up to 20 years in prison and a $250,000 fine. Conspiracy is punishable by up to five years in prison and a $250,000 fine. False statements to HUD are punishable by up to two years in prison and a $250,000 fine. Transactional money laundering is punishable by up to 10 years in prison and a $250,000 fine.

The charges contained in the indictment are only allegations. A person is presumed innocent unless and until he or she is proven guilty beyond a reasonable doubt in a court of law.

The case is being investigated by the FBI, the HUD Office of Inspector General (HUD-OIG), Internal Revenue Service Office of Criminal Investigation (IRS-CI) and the United States Postal Inspection Service. The case is being prosecuted by Assistant United States Attorneys Brian Werner and Arlen Storm.

This indictment is brought in connection with President Barack Obama's Financial Fraud Enforcement Task Force. President Obama established the interagency Financial Fraud Enforcement Task Force to wage an aggressive, coordinated and proactive effort to investigate and prosecute financial crimes. The task force includes representatives from a broad range of federal agencies, regulatory authorities, inspectors general, and state and local law enforcement who, working together, bring to bear a powerful array of criminal and civil enforcement resources. The task force is working to improve efforts across the federal executive branch, and with state and local partners, to investigate and prosecute significant financial crimes, ensure just and effective punishment for those who perpetrate financial crimes, combat discrimination in the lending and financial markets, and recover proceeds for victims of financial crimes.

Return to Top


UNITED STATES ATTORNEYS' OFFICES
HOMEPAGE


UNITED STATES ATTORNEYS' OFFICES
BRIEFING ROOM

JUSTICE 101


Community Outreach

Engaging in outreach in order to prevent crime, respond to community needs, and promote good citizenship.

VWA
VICTIM WITNESS ASSISTANCE

Making sure that victims of federal crimes are treated with compassion, fairness and respect

PROJECT SAFE NEIGHBORHOODS
★★★★★
Our nation-wide commitment to reducing gun crime in America

OFICINAS DE LOS FISCALES DE LOS ESTADOS UNIDOS
EN ESPAÑOL

STAY CONNECTED


Twitter

WESTERN DISTRICT of WASHINGTON
700 Stewart Street Suite 5220 - Seattle, WA 98101-1271

| HOME | ABOUT | MEET THE U.S. ATTORNEY | NEWS | DIVISIONS | PROGRAMS | JOBS | CONTACT |
|---|---|---|---|---|---|---|---|
| | Our District | | | Org Chart | Community Outreach | Attorneys Support | |
| | FAQ | | | Civil | PSC | Law Students | |
| | Getting Here | | | Criminal | PSN | Students | |

JUSTICE.GOV/USAO
Site Map            Justice.gov
Accessibility       USA.gov
FOIA                En Espanol
Privacy Policy
Legal Policies & Disclaimers

2 of 3                                                                                     11/12/2014 4:44 AM

# EXHIBIT

# Q

# MERS TERMS AND CONDITIONS



**TERMS AND CONDITIONS**

1. MERS, which shall include MERSCORP, Inc. and Mortgage Electronic Registration Systems, Inc., and the Member shall abide by these Terms and Conditions, the Rules and Procedures (collectively, the "Governing Documents"), copies of which will be supplied upon request. The Governing Documents shall be a part of the terms and conditions of every transaction that the Member may make or have with MERS or the MERS® System either directly or through a third party. The Member shall be bound by any amendment to any of the Governing Documents.

2. The Member, at its own expense, shall promptly, or as soon as practicable, cause MERS to appear in the appropriate public records as the mortgagee of record with respect to each mortgage loan that the Member registers on the MERS® System. MERS shall serve as mortgagee of record with respect to all such mortgage loans solely as a nominee, in an administrative capacity, for the beneficial owner or owners thereof from time to time. MERS shall have no rights whatsoever to any payments made on account of such mortgage loans, to any servicing rights related to such mortgage loans, or to any mortgaged properties securing such mortgage loans. MERS agrees not to assert any rights (other than rights specified in the Governing Documents) with respect to such mortgage loans or mortgaged properties. References herein to "mortgage(s)" and "mortgagee of record" shall include deed(s) of trust and beneficiary under a deed of trust and any other form of security instrument under applicable state law.

3. MERS shall at all times comply with the instructions of the holder of mortgage loan promissory notes. In the absence of contrary instructions from the note holder, MERS shall comply with instructions from the Servicer shown on the MERS® System in accordance with the Rules and Procedures of MERS.

4. No rights or obligations of the Member with respect to any data or information supplied to MERS by or on behalf of the Member shall be altered or affected in any manner by the provision of such data or information to MERS (except as otherwise specifically provided in these Terms and Conditions or the Rules of Membership).

5. If the Member uses MERS as Original Mortgagee (MOM) on the security instrument, the loan must be registered on the MERS® System within 10 days of the Note Date.

6. MERS and the Member agree that: (i) the MERS® System is not a vehicle for creating or transferring beneficial interests in mortgage loans, (ii) transfers of servicing interests reflected on the MERS® System are subject to the consent of the beneficial owner of the mortgage loans, and (iii) membership in MERS or use of the MERS® System shall not modify or supersede any agreement between or among the Members having interests in mortgage loans registered on the MERS® System.

7. If the Member has a third-party register loans (the "Registrar") on the MERS® System on behalf of the Member, the Registrar shall not be deemed an agent of MERS. The Registrar shall be solely an agent for the Member, and MERS is only giving consent to the Member to use a Registrar to enter information on the MERS® System on behalf of the Member. The Member agrees that MERS is not liable to the Member for any errors and omissions, negligence, breach of confidentiality, breach of the Rules and Procedures, or willful misconduct of the Registrar, or any employee, director, officer, agent or affiliate of the Registrar in performing its services to the Member.

8. The Member shall promptly pay to MERS the compensation due it for transactions registered on the MERS® System and other services rendered to the Member based on the then current MERS fee schedules, which may change from time to time. The Member shall promptly pay to MERS any interest and penalties on delinquent fee payments at the rate set by MERS from time to time. MERS shall have the authority to impose reasonable penalties and fines on Members for breach of the Governing Documents, and the Member shall promptly pay such fines in accordance with the terms of their imposition.

9. MERS shall indemnify and hold harmless the Member, and any employee, director, officer, agent or affiliate of the Member ("Member Party"), from and against any and all third-party claims, losses, penalties, fines, forfeitures, reasonable attorney fees and related costs, judgments, and any other costs, fees and expenses ("indemnified Payments") that the Member Party may sustain directly from the negligence, errors and omissions, breach of confidentiality, breach of the Terms and Conditions, breach of the Rules and Procedures, or willful misconduct of MERS, or any employee, director, officer, agent or affiliate of MERS ("MERS Indemnified Claim"). Notwithstanding the foregoing, MERS shall not be liable or responsible under the terms of this Paragraph for any losses or claims

VC10052000VA

resulting from the actions or omissions of any person other than an employee, director, officer (who is also an employee of MERS), agent or affiliate of MERS.

The Member shall indemnify and hold harmless MERS, and any employee, director, officer, agent or affiliate of MERS ("MERS Party"), for any Indemnified Payments which do not result from a MERS Indemnified Claim and which such MERS Party incurs (i) from the negligence, errors and omissions, breach of confidentiality, breach of the Terms and Conditions, Rules and Procedures, or willful misconduct of a Member Party, (ii) with respect to a transaction on the MERS® System initiated by such Member, or (iii) as a result of compliance by MERS with instructions given by the Member, or its designee, as beneficial owner, servicer or secured party shown on the MERS® System ("Member Indemnified Claim").

MERS shall promptly notify the Member if a claim is made by a third party against either MERS or the Member with respect to any mortgage loan registered on the MERS® System in which the Member is shown on the MERS® System as beneficial owner, servicer or secured party in accordance with the Rules and Procedures. The Member shall promptly notify MERS if a claim is made against the Member that may be subject to the indemnification provisions of this Paragraph.

The obligations of MERS and the Member under this Paragraph shall survive the termination of the Member's use of the MERS® System.

10. MERS and the Member shall maintain appropriate insurance coverage that shall include an errors and omissions insurance policy and a fidelity bond. MERS shall not be required to maintain coverage for persons who may be appointed at the request of the Member as certifying officers of MERS. The Member's policies shall protect and insure MERS against losses in connection with the release or satisfaction of a mortgage loan without having obtained payment in full of the indebtedness secured thereby. Upon request, MERS or the Member shall cause to be delivered to the other a certified true copy of such errors and omissions insurance policy and fidelity bond.

In the event of any loss of principal or interest on a mortgage loan or any Indemnified Payments for which reimbursement is received from a fidelity bond or any errors and omissions insurance policy or other insurance policy, the proceeds from any such bond or insurance shall be held in trust for and be promptly paid to the Member who is shown as the servicer on the MERS® System on behalf of the beneficial owner unless otherwise requested by the beneficial owner.

11. Any notice or other communication which is required or permitted to be given or made to MERS pursuant to any provision of the Governing Documents shall be given or made in writing and shall be sent by nationally recognized overnight courier, or facsimile followed by delivery of the original via first class mail, addressed as follows: MERS, Corporate Secretary, 1818 Library Street, Suite 300, Reston, VA 20190.

12. These Terms and Conditions and all transactions effected by the Member with MERS shall be governed by and construed in accordance with the laws of the Commonwealth of Virginia without regard to its choice of law provisions.

13. Neither the Member nor MERS shall institute a proceeding before any tribunal to resolve any controversy or claim arising out of or relating to these Terms and Conditions, Rules and Procedures, or the breach, termination or invalidity thereof (a "Dispute), before such party has sought to resolve the Dispute through direct negotiation with the other party. If the Dispute is not resolved within thirty (30) days after a written demand for direct negotiation, the parties shall attempt to resolve the Dispute through mediation. If the parties do not promptly agree on a mediator, either party may request the then chief judge of the Circuit Court of Fairfax County, Virginia to appoint a mediator. All mediation proceedings hereunder shall be held in Washington, D.C. If the mediator is unable to facilitate a settlement of the Dispute within a reasonable period of time, as determined by the mediator, the mediator shall issue a written statement to the parties to that effect and the aggrieved party may then seek relief in accordance with the arbitration provisions of this Paragraph. The fees and expenses of the mediator shall be paid by the party initiating the Dispute.

In the event that the Member and MERS are not able to resolve a Dispute in accordance with the mediation provisions of this Paragraph, such Dispute shall be settled by binding arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof; provided, however, that the place of arbitration shall be Washington, DC, and fees and expenses for the arbitration proceedings shall be paid by the party initiating arbitration.

# EXHIBIT

# S

# SIGNATURE COMPARISONS

4261697
04/20/2012 08:34 AM ASSGN
Thurston County, Washington
NATIONWIDE TITLE CLEARING

Pages: 1

When Recorded Return To:
Green Tree Servicing LLC
C/O NTC 2100 Alt. 19 North
Palm Harbor, FL 34683

## CORPORATE ASSIGNMENT OF DEED OF TRUST
Loan #: 68341707

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS) AS NOMINEE FOR PIERCE COMMERCIAL BANK, ITS SUCCESSORS AND ASSIGNS, (ASSIGNOR), (MERS Address: P.O. Box 2026, Flint, Michigan 48501-2026) by these presents does convey, grant, sell, assign, transfer and set over the described Deed of Trust together with all interest secured thereby, all liens, and any rights due or to become due thereon to GREEN TREE SERVICING LLC, WHOSE ADDRESS IS 7360 SOUTH KYRENE ROAD, T314, TEMPE, AZ 85283 (800)643-0202, ITS SUCCESSORS OR ASSIGNS, (ASSIGNEE)

Said Deed of Trust is dated 04/24/2007 and executed by JAMES BIGELOW AND CAROLYN BIGELOW and recorded in Book page /Instr# 3922368 in the office of the Recorder of THURSTON County, WA.
LOT 28 OF OAKRIDGE
Parcel ID #: 65730002800

Dated this 19th day of April in the year 2012
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS) AS NOMINEE FOR PIERCE COMMERCIAL BANK, ITS SUCCESSORS AND ASSIGNS

DERRICK WHITE
ASST. SECRETARY

STATE OF FLORIDA    COUNTY OF PINELLAS
The foregoing instrument was acknowledged before me on this 19th day of April in the year 2012, by DERRICK WHITE as ASST. SECRETARY for MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS) AS NOMINEE FOR PIERCE COMMERCIAL BANK, ITS SUCCESSORS AND ASSIGNS, who, as such ASST. SECRETARY being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.

MIRANDA AVILA, NOTARY PUBLIC
Comm. Expires: 08/22/2014

Notary Public State of Florida
Miranda Avila
My Commission EE019083
Expires 08/22/2014

Document Prepared By: E.Lance/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152
GTSAV 15974594 MIN 100331400002191021 MERS PHONE 1-888-679-MERS EFRMWA1

*15974594*

```
                                              2012-06079
                                        RECORDER JOHN SCIORTINO
                                        POTTAWATTAMIE COUNTY, IA
                                   FILE TIME: 04/30/2012 11:05:01 AM
                                          REC: 5.00AUD: T TAX:
                                            RMA: 1.00ECM: 1.00
```

When Recorded Return To:
Green Tree Servicing LLC
C/O NTC 2100 Alt. 19 North
Palm Harbor, FL 34683

Loan #: 89976585

Prepared By: E.Lance/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152

## ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ('MERS'), (ASSIGNOR), (MERS Address: P.O. Box 2026, Flint, Michigan 48501-2026)** by these presents does convey, grant, sell, assign, transfer and set over the described Mortgage together with all interest secured thereby, all liens, and any rights due or to become due thereon to **GREEN TREE SERVICING LLC, WHOSE ADDRESS IS 7360 SOUTH KYRENE ROAD, T314, TEMPE, AZ 85283 (800)643-0202, ITS SUCCESSORS OR ASSIGNS, (ASSIGNEE).**

Said Mortgage dated 06/06/2008, executed by **CHAD ROBERT DENNLER (grantee)** to **SHELBY COUNTY STATE BANK (grantor)** and recorded in Book 2008, Page 008533, or Document #   in the office of the Recorder of POTTAWATTAMIE, Iowa.

IN WITNESS WHEREOF, this Assignment is executed this 26th day of April in the year 2012.
**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ('MERS')**

_____
DERRICK WHITE
ASST. SECRETARY

STATE OF FLORIDA       COUNTY OF PINELLAS
The foregoing instrument was acknowledged before me on this 26th day of April in the year 2012, by DERRICK WHITE as ASST. SECRETARY for MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ('MERS'), who, as such ASST. SECRETARY being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.

_____
MIRANDA AVILA, NOTARY PUBLIC
Comm. Expires: 08/22/2014

Notary Public State of Florida
Miranda Avila
My Commission EE019063
Expires 08/22/2014

GTSAV 16172071   MIN 100344500011435346   MERS PHONE 1-888-679-MERS   EFRMIA1

*16172071*

Pottawattamie County, IA
Recorder John Sciortino     **2011-008545**
Book-Page: 2011-008545
File Time: 07/06/2011 @ 10:09:31 AM
Rec-$5.00 Aud-$0.00 RMA-$1.00 ECM-$1.00
Current Transfer Tax Paid: $0.00

R Fee 5.00

A Fee ____

T Tax ____

**COMPARED**

When Recorded Return To:
CitiMortgage, Inc.
C/O NTC 2100 Alt. 19 North
Palm Harbor, FL 34683

RETURN ENVELOPE

CMI Loan #: 2005687394
Investor #: 200988326

Prepared by: E. Lance/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152

## ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR BNC NATIONAL BANK, ITS SUCCESSORS AND ASSIGNS, (ASSIGNOR),** (MERS Address: P.O. Box 2026, Flint, Michigan 48501-2026) by these presents does convey, grant, sell, assign, transfer and set over the described mortgage together with the certain note(s) described therein together with all interest secured thereby, all liens, and any rights due or to become due thereon to **CITIMORTGAGE, INC., WHOSE ADDRESS IS 1000 TECHNOLOGY DRIVE, O'FALLON, MO 63368 (636)261-2484, ITS SUCCESSORS OR ASSIGNS, (ASSIGNEE).**

Said mortgage dated 09/25/2008, executed by **LISA G FLEMING (grantee)** to **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC (grantor)** and recorded in Book 2008, Page 014196 or Document # in the office of the Recorder of POTTAWATTAMIE, Iowa.

Dated this 21st day of June in the year 2011.
**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR BNC NATIONAL BANK, ITS SUCCESSORS AND ASSIGNS**

By: _____
DERRICK WHITE
VICE PRESIDENT

STATE OF FLORIDA
COUNTY OF PINELLAS

The foregoing instrument was acknowledged before me this 21st day of June in the year 2011, by DERRICK WHITE as VICE PRESIDENT for MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR BNC NATIONAL BANK, ITS SUCCESSORS AND ASSIGNS, who, as such VICE PRESIDENT being authorized so to do, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.

_____
MIRANDA AVILA
Notary Public - State of FLORIDA
Commission expires: 08/22/2014

Notary Public, State of Florida
Miranda Avila
My Commission EE019063
Expires 08/22/2014

CGMAS 14342455 -- CJ3137120  MIN 100141300300001544 MERS PHONE 1-888-679-MERS

*14342455*

form5/FRMIA1

R Fee 5.00 ✓

A Fee ____

T Tax ____

Pottawattamie County, IA **2011-011304**
Recorder John Sciortino
Book-Page: 2011-011304
File Time: 09/06/2011 @ 10:35:54 AM
Rec-$5.00 Aud-$0.00 RMA-$1.00 ECM-$1.00
Current Transfer Tax Paid: $0.00

**COMPARED**

When Recorded Return To:
CitiMortgage, Inc.
C/O NTC 2100 Alt. 19 North
Palm Harbor, FL 34683

RETURN ENVELOPE

Citi L#: 2003680012
FNMA L#: 1701669041
Seterus L#: 19125058

Prepared by: E. Lance/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152

## ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ('MERS') AS NOMINEE FOR CITIMORTGAGE, INC., ITS SUCCESSORS AND ASSIGNS, (ASSIGNOR), (MERS Address: P.O. Box 2026, Flint, Michigan 48501-2026)** by these presents does convey, grant, sell, assign, transfer and set over the described mortgage together with the certain note(s) described therein together with all interest secured thereby, all liens, and any rights due or to become due thereon to **CITIMORTGAGE, INC., WHOSE ADDRESS IS 1000 TECHNOLOGY DRIVE, O'FALLON, MO 63368 (800)283-7918, ITS SUCCESSORS OR ASSIGNS, (ASSIGNEE).**

Said mortgage dated 06/15/2006, executed by **NICKOLAS COLLINS AND LISA M COLLINS (grantee)** to **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC AS NOMINEE FOR CITIMORTGAGE, INC. (grantor)** and recorded in Book 106, Page 24827 or Document # 024898 in the office of the Recorder of POTTAWATTAMIE, Iowa.

Dated on 08/23/2011 (MM/DD/YYYY).
**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ('MERS') AS NOMINEE FOR CITIMORTGAGE, INC., ITS SUCCESSORS AND ASSIGNS**

By: _____
**DERRICK WHITE**
**VICE PRESIDENT**

STATE OF FLORIDA
COUNTY OF PINELLAS

The foregoing instrument was acknowledged before me on 08/23/2011 (MM/DD/YYYY), by DERRICK WHITE as VICE PRESIDENT for MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ('MERS') AS NOMINEE FOR CITIMORTGAGE, INC., ITS SUCCESSORS AND ASSIGNS, who, as such VICE PRESIDENT being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.

_____
MIRANDA AVILA
Notary Public - State of FLORIDA
Commission expires: 08/22/2014

Notary Public, State of Florida
Miranda Avila
My Commission EE019063
Expires 08/22/2014

CIMAS 14644437 (Prop Addr: 3100 AVENUE F COUNCIL BLUFFS, IA 515011928) -@ LBPS CJ3233873 MIN 100011520036800128 MERS PHONE 1-888-679-MERS

*14644437*

form5/FRMIA1