1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19

**WRIGHT, FINLAY & ZAK, LLP**
Renee M. Parker, Esq., WSBA No. 36995
Lukasz I. Wozniak, Esq., WSBA No. 47290
4665 MacArthur Court, Suite 200
Newport Beach, CA  92660
Tel: (949) 610-7023; Fax: (949) 477-9200
rmparker@wrightlegal.net

Attorneys for GREEN TREE LOAN SERVICING LLC, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., WRIGHT, FINLAY & ZAK, LLP and RENEE M. PARKER, ESQ.

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON (TACOMA)

| | |
|---|---|
| JAMES A. BIGELOW | Case No. 3:14-cv-05798 BHS |
| Plaintiff, | **REQUEST FOR JUDICIAL NOTICE ON DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT BY DEFENDANTS GREEN TREE SERVICING LLC, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., WRIGHT, FINLAY & ZAK, LLP AND RENEE M. PARKER, ESQ** |
| vs. | |
| NORTHWEST TRUSTEE SERVICES, INC.; GREEN TREE SERVICING, LLC; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; WRIGHT, FINLAY & ZAK, LLP, TICOR TITLE COMPANY, NATIONWIDE TITLE INSURANCE COMPANY, RENEE PARKER, and DOE DEFENDANTS 1-20, | |
| Defendants. | Noting Date: April 10, 2015 |

20    Pursuant to ER 201, Defendants Attorneys for GREEN TREE LOAN SERVICING

21    LLC, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), WRIGHT,

22    FINLAY & ZAK, LLP and RENEE M. PARKER, ESQ (hereinafter "Defendants" collectively)

23    requests that the Court take judicial notice of the following documents submitted in support of

24    its MOTION TO STRIKE PLAINTIFF'S COMPLAINT FOR ANTI-SLAPP VIOLATIONS as

25    stated below.

26

27
28

DEFENDANTS' REQUEST FOR
JUDICIAL NOTICE
WFZ File No. 206-2014258

Renee M. Parker (SBN 36995)
Wright, Finlay, & Zak, LLP
4665 MacArthur Blvd., Suite 200
Newport Beach, CA 92660
PH: (949) 477-5050

1    Judicial notice is appropriate because Exhibits 2, 3, 4, 5 and 6 are matters of public

2  record according to Rule ER 803(14), (15) and RCW 5.44.040 as incorporated by Rule ER

3  803(8), and are true and correct copies of the documents filed by Plaintiff with the Complaint

4  on October 7, 2014 as Docket Item No. 1-1.  The Court may consider documents attached to the

5  complaint when assessing the merits of a motion to dismiss. *See Hal Roach Studios, Inc. v.*

6  *Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (as amended).

7    Plaintiffs also refer to the documents comprising Exhibits 1 and 7 throughout the

8  Complaint.  Documents whose contents are alleged in a complaint may be considered in ruling

9  on a CR 12(b)(6) motion to dismiss without converting the motion into a motion for summary

10  judgment pursuant to CR 56. *Rodriguez v. Loudeye Corp.*, 144 Wn. App. 709, 726 (2008) ("ER

11  201(b) authorizes the court to take judicial notice of a fact that is 'not subject to reasonable

12  dispute in that it is . . . capable of accurate and ready determination by resort to sources whose

13  accuracy cannot reasonably be questioned.'"); *Sebek v. City of Seattle*, 172 Wn. App. 273, 275

14  n.2 (2012) (same). Both documents contain admissible authentications via declarations by the

15  parties with knowledge of the documentation pursuant to Federal Rules of Evidence, Rule

16  901(b))(1).

17    Defendants requests that the Court take judicial notice of the following documents:

18    1.    Exhibit 1 is the Supplemental Declaration in Support of Counterclaim and Third

19  Party Complaint for Judicial Foreclosure as executed by Edward Born, which contains a true

20  and correct copy of the original Note dated April 24, 2007 as executed by James Bigelow and

21  Carolyn Bigelow, attached as Exhibit "A" thereto, except where personally identifying

22  information, such as the loan number, has been redacted for privacy.

23    2.    Exhibit 2 is a true and correct copy of the Deed of Trust dated April 24, 2007, as

24  filed by Plaintiff with the Complaint as Docket Item No. 1-1, and recorded in the office of the

25  Thurston County Auditor on April 27, 2007 as Instrument No. 3922368, except where

26  personally identifying information, such as the loan number, has been redacted for privacy.

27

28

| DEFENDANTS' REQUEST FOR | Renee M. Parker (SBN 36995) |
|---|---|
| JUDICIAL NOTICE | Wright, Finlay, & Zak, LLP |
| WFZ File No. 206-2014258 | 4665 MacArthur Blvd., Suite 200 |
| | Newport Beach, CA 92660 |
| 2 | PH: (949) 477-5050 |

3.      Exhibit 3 is a true and correct copy of the document entitled "Corporate Assignment of Deed of Trust" from Mortgage Electronic Registration Systems, Inc. as nominee for Pierce Commercial Bank, its Successors and Assigns, to Green Tree Servicing LLC, as filed by Plaintiff with the Complaint as Docket Item No. 1-1, and recorded on April 20, 2012 in the official records of the Thurston County Auditor as Instrument No. 4261697, except where personally identifying information, such as the loan number, has been redacted for privacy.

4.      Exhibit 4 is a true and correct copy of the document entitled "Appointment of Successor Trustee" naming Northwest Trustee Services, Inc. as the successor trustee, as filed by Plaintiff with the Complaint as Docket Item No. 1-1, and recorded on May 18, 2012 in the official records of the Thurston County Auditor as Instrument No. 4266605, except where personally identifying information, such as the loan number, has been redacted for privacy.

5.      Exhibit 5 is a true and correct copy of the document entitled "Notice of Default" dated May 10, 2012 as sent to James Bigelow aka James A. Bigelow and Carolyn Bigelow aka Carolyn G. Bigelow aka Carolyn G. Willey aka Carolyn G. Absell, as filed by Plaintiff with the Complaint as Docket Item No. 1-1, and except where personally identifying information, such as the loan number, has been redacted for privacy.

6.      Exhibit 6 is a true and correct copy of the document entitled "Notice of Trustee's Sale" dated April 29, 2014, as filed by Plaintiff with the Complaint as Docket Item No. 1-1, and recorded on April 30, 2014 in the official records of the Thurston County Auditor as Instrument No. 4389907, except where personally identifying information, such as the loan number, has been redacted for privacy.

7.      Exhibit 7 is true and correct copies of the certified copies, obtained from the Superior Court of Washington, Snohomish County, of the following documents:

a. Exhibit A are true and correct copies of the documents entitled "Summons" and "Petition for Dissolution of Marriage (PTDSS)" dated August 28, 2013 (sic), as filed with the Clerk of the Superior Court for the County of

DEFENDANTS' REQUEST FOR
JUDICIAL NOTICE
WFZ File No. 206-2014258

Renee M. Parker (SBN 36995)
Wright, Finlay, & Zak, LLP
4665 MacArthur Blvd., Suite 200
Newport Beach, CA 92660
PH: (949) 477-5050

3

Snohomish, by Carolyn Gayle Bigelow on August 26, 2013, and having the case number 13-2-02206-2, except where personally identifying information has been redacted for privacy;

b. Exhibit B is a true and correct copy of the document entitled "Joinder (JN)" dated July 9, 2014, as filed with the Clerk of the Superior Court for the County of Snohomish by James Allan Bigelow on July 9, 2014, and having the case number 13-2-02206-2, except where personally identifying information has been redacted for privacy;

c. Exhibit C is a true and correct copy of the document entitled "Findings of Fact and Conclusions of Law (Marriage) (FNFCL)" dated July 9, 2014, as filed with the Clerk of the Superior Court for the County of Snohomish by Carolyn Gayle Bigelow and James Allan Bigelow on July 9, 2014, and having the case number 13-2-02206-2, except where personally identifying information has been redacted for privacy;

d. Exhibit D is a true and correct copy of the document entitled "Decree of Dissolution (DOD)" dated July 9, 2014, as filed with the Clerk of the Superior Court for the County of Snohomish by James Allan Bigelow on July 9, 2014, and having the case number 13-2-02206-2, except where personally identifying information has been redacted for privacy.

Dated: March 19, 2015

Respectfully submitted,

WRIGHT, FINLAY, & ZAK, LLP

By: _____

Renee M. Parker, WSBA # 36995
Attorneys for Defendants,
GREEN TREE LOAN SERVICING LLC,
MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC., WRIGHT, FINLAY & ZAK,
LLP and RENEE M. PARKER, ESQ.

DEFENDANTS' REQUEST FOR
JUDICIAL NOTICE
WFZ File No. 206-2014258

Renee M. Parker (SBN 36995)
Wright, Finlay, & Zak, LLP
4665 MacArthur Blvd., Suite 200
Newport Beach, CA 92660
PH: (949) 477-5050

4

# EXHIBIT 1

1   **WRIGHT, FINLAY & ZAK, LLP**
    Renee M. Parker, Esq., WSBA No. 256851
2   Lukasz I. Wozniak, Esq., WSBA No. 47290
    4665 MacArthur Court, Suite 200
3   Newport Beach, CA  92660
    Tel: (949) 610-7023; Fax: (949) 477-9200
4   rmparker@wrightlegal.net

5
    Attorney for GREEN TREE LOAN SERVICING LLC
6

7               **UNITED STATES DISTRICT COURT**
            **WESTERN DISTRICT OF WASHINGTON (TACOMA)**
8

9   JAMES A. BIGELOW                          Case No. 3:14-cv-05798 BHS

10              Plaintiff,

11  vs.                                        **SUPPLEMENTAL DECLARATION**
                                               **IN SUPPORT OF COUNTERCLAIM**
12  NORTHWEST TRUSTEE SERVICES, INC.;          **AND THIRD PARTY COMPLAINT**
    GREEN TREE SERVICING, LLC; MORTGAGE        **FOR JUDICIAL FORECLOSURE**
13  ELECTRONIC REGISTRATION SYSTEMS,
    INC.; and DOE DEFENDANTS 1-20,
14

15              Defendants.

16  _____

17  GREEN TREE SERVICING, LLC,

18              Counter-Plaintiff,

19       vs.

20  JAMES A. BIGELOW and CAROLYN
    BIGELOW, husband and wife; and ALL
21  PERSONS OR PARTIES UNKNOWN
    CLAIMING ANY RIGHT, TITLE, ESTATE,
22  LIEN, OR INTEREST IN THE PROPERTY
    DESCRIBED IN THE COMPLAINT HEREIN,
23
                Counter-Defendants.
24

25

26  ///

27  ///

28

I, **Edward Born**_____, declare as follows:

1.       I am **Assistant Vice President**_____ for GREEN TREE LOAN SERVICING LLC ("GREEN TREE"). I am authorized to make this Affidavit for and on behalf of GREEN TREE.

2.       GREEN TREE maintains a computer database (the "Loan Records") of acts, transactions, payments, communications, escrow account activity, disbursements, events, and analyses (the "Loan Transactions") with respect to the mortgage loans which GREEN TREE services. The information described herein and referenced below is found in the business records of said servicing agent. The entries in those records are made at the time of the events and conditions they describe either by people with first-hand knowledge of those events and conditions or from information provided by people with such first-hand knowledge. Recording such information is a regular practice of the servicing agent's or Plaintiff's regularly conducted business activities. I have access to the Loan Records with respect to the subject loan, and have knowledge of how they are maintained. Based upon my review of those records I have gained knowledge of the facts set forth herein and, if called upon as a witness to testify, I could and would competently testify as to those facts under penalty of perjury.

3.       The Loan Records reflect that on or about April 24, 2007, Plaintiff James Bigelow ("Bigelow" herein) and spouse Carolyn Bigelow ("Borrowers" collectively) entered into an agreement with Pierce Commercial Bank for a loan in the principal amount of $233,899.00. This loan is memorialized by an "Interest Only Fixed Rate Note" executed on the same day (the "Note") and is secured by a Deed of Trust recorded with the Thurston County Auditor on April 27, 2007 as Instrument No. 3922368. A Corporate Assignment of Deed of Trust which conveyed, granted, sold, assigned transferred and/or set over the interest secured by the Deed of Trust to GREEN TREE was recorded with the Thurston County Auditor on April 20, 2012 as Instrument No. 4261697.

4.       The Loan Records reflect that Borrowers defaulted under the terms of the Note and Deed of Trust with that monthly installment payment due for November 1, 2011.

5.      The Loan Records reflect that on or about <u>DECEMBER 1, 2011</u> the custodian of GREEN TREE obtained possession of the Note; the Note was and is still endorsed in blank. A true and correct copy of the Note, which is in possession of GREEN TREE or an agent thereof, is attached hereto as Exhibit "A".

6.      The Loan Records reflect that as of the date of execution of this document GREEN TREE, by and through its custodian, is still the legal holder of the Note and has not assigned or transferred the Note to any other person or entity.

7.      The Loan Records reflect that Green Tree was in possession of the Note when its Notice of Default was issued on May 10, 2012, when the Notice of Trustee's Sale was recorded on April 24, 2014, and also when the SUPPLEMENTAL DECLARATION IN SUPPORT OF COUNTERCLAIM AND THIRD PARTY COMPLAINT FOR JUDICIAL FORECLOSURE was filed with this Court.

8.      The Loan Records reflect that the Note would have been endorsed by Pierce Commercial Bank in or about May, 2007.

I hereby declare under the penalty of perjury under the laws of the State of Washington that the foregoing statement is true and correct.

DATED this 27th day of February, 2015, at Tempe, AZ.

Signature

Printed Name:      **Edward Born**

Title:      Assistant Vice President

# EXHIBIT A

MIN: ▮▮▮▮▮▮▮▮                          Loan Number: ▮▮▮▮▮

# INTEREST ONLY FIXED RATE NOTE

APRIL 24, 2007                PUYALLUP                    WASHINGTON
[Date]                         [City]                       [State]

10018 CASCADIAN AVENUE SE, YELM, WASHINGTON 98597
[Property Address]

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $ 233,899.00          (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is PIERCE COMMERCIAL BANK, A WASHINGTON CORPORATION

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of  6.875 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3. PAYMENTS**

(A) Time and Place of

I will make a payment every month. This payment will be for interest only for the first  120          months, and then will consist of principal and interest.

I will make my monthly payment on the  1st          day of each month beginning on JUNE 1, 2007

I will make these payments every month until I have paid all of the Principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest it will be applied to interest before Principal. If, on MAY 1, 2037

I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at  PO BOX 110488, TACOMA, WASHINGTON 98411

or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 1,340.05          for the first 120          months  of  this Note, and thereafter will be in the amount of U.S. $ 1,795.91          . The Note Holder will notify me prior to the date of change in monthly payment.

**4. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a prepayment if I have not made all the monthly payments due under the Note.

I may make a full prepayment or partial prepayments without paying a prepayment charge. The Note Holder will use my prepayments to reduce the amount of principal that I owe under this Note. However, the Note Holder may apply my prepayment to the accrued and unpaid interest on the prepayment amount, before applying my prepayment to reduce the principal amount of the Note. If I make a partial  prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes. However, if the partial prepayment is made during the period when my monthly payments consist only of interest, the amount of the monthly payment will decrease for the remainder of the term when my payments consist only of interest as well as during the time that my payments consist of principal and interest. If the partial prepayment is made during the period when my payments consist of principal and interest, the amount of my monthly payment will not decrease; however, the principal and the interest required under this Note will be paid prior to the Maturity Date.

**5. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

INTEREST ONLY Fixed Rate Note
FE-3166 (0506)                          Page 1 of 3

EXHIBIT A

6. **BORROWER'S FAILURE TO PAY AS REQUIRED**

(A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of  15       calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be   5.000 % of my overdue payment. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

7. **GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

8. **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

9. **WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

10. **UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

INTEREST ONLY Fixed Rate Note
FE-3166 (0506)                          Page 2 of 3                          Initials:

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
JAMES BIGELOW                   -Borrower

_____ (Seal)
CAROLYN BIGELOW                 -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

*[Sign Original Only]*

PAY TO THE ORDER OF
COUNTRYWIDE HOME LOANS, INC
WITHOUT RECOURSE
COUNTRYWIDE BANK, FSB
FKA COUNTRYWIDE BANK, N.A.

BY _____
     Laurie Meder
     LAURIE MEDER
     SENIOR VICE PRESIDENT

PAY TO THE ORDER OF

WITHOUT RECOURSE
COUNTRYWIDE HOME LOANS, INC.

BY: _____
     Michele Sjolander
     MICHELE SJOLANDER
     EXECUTIVE VICE PRESIDENT

PAY TO THE ORDER OF COUNTRYWIDE BANK,N.A., WITHOUT RECOURSE

PIERCE COMMERCIAL BANK

BY: _____
     Sonja L. Lightfoot
     SONJA L. LIGHTFOOT
ITS: SENIOR VICE PRESIDENT

INTEREST ONLY Fixed Rate Note
FE-3166 (0506)                    Page 3 of 3

# EXHIBIT 2

RECALL S.CA. FILE

After Recording Return To:
PIERCE COMMERCIAL BANK
PO BOX 110488
TACOMA, WASHINGTON 98411

———————————————— [Space Above This Line For Recording Data] ————————————————

Loan Number: 319102



## DEED OF TRUST

MIN:

Grantor(s) (Last name first, then first name and initial.):
1. BIGELOW, JAMES
2. BIGELOW, CAROLAN
3.
4.
5.
6.
☐ Additional names on page          of document.

Grantee(s) (Last name first, then first name and initials):
1. MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS)
2. Pierce Commercial Bank mers
3.
4.
5.
6. Trustee Chicago Title
☐ Additional names on page          of document.

Legal Description (abbreviated: i.e., lot, block, plat or section, township, range):
LOT 28 OF OAKRIDGE

Full legal description on page   3   of document.

Assessor's Property Tax Parcel(s) or Account Number(s): 65730002800

Reference Number(s) Assigned or Released:

☐ Additional references on page          of document.

Borrower Initials:

WASHINGTON--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3048 1/01 (02/01/07)                Page 1 of 16

DocMagic eForms 800-645-1362
www.docmagic.com

3922368                                Page 1 of 19
04/27/2007 03:24 PM          Deed Of Trust
Thurston County Washington
CHICAGO TITLE COMPANY

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A)   "Security Instrument" means this document, which is dated  APRIL 24, 2007 , together with all Riders to this document.
(B)   "Borrower" is   JAMES BIGELOW AND CAROLYN BIGELOW, HUSBAND AND WIFE

Borrower is the trustor under this Security Instrument.
(C)   "Lender" is   PIERCE COMMERCIAL BANK

Lender is a   WASHINGTON CORPORATION                                             organized
and existing under the laws of   WASHINGTON
Lender's address is    PO BOX 110488, TACOMA, WASHINGTON 98411

(D)   "Trustee" is   CHICAGO TITLE
3315 PACIFIC AVENUE SE D-1B, OLYMPIA, WASHINGTON 98501

(E)   "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F)   "Note" means the promissory note signed by Borrower and dated  APRIL 24, 2007 .
The Note states that Borrower owes Lender   TWO HUNDRED THIRTY-THREE THOUSAND EIGHT HUNDRED NINETY-NINE AND 00/100   Dollars (U.S. $ 233,899.00         ) plus interest.
Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than MAY 1, 2037                 .
(G)   "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(H)   "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(I)   "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | | |
|---|---|---|---|
| ☐ | Adjustable Rate Rider | ☒ | Planned Unit Development Rider |
| ☐ | Balloon Rider | ☐ | Biweekly Payment Rider |
| ☐ | 1-4 Family Rider | ☐ | Second Home Rider |
| ☐ | Condominium Rider | ☐ | Other(s) [specify] |

(J)   "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

Borrower Initials: _JB_ _CB_ ____ ____ ____ ____

WASHINGTON–Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3048 1/01 (02/01/07)                      Page 2 of 16

*DocMagic* ℰℱℴ𝓇𝓂𝓈 800-649-1362
www.docmagic.com

3922368
04/27/2007 05:54 PM   Deed of Trust   Page 2 of 19
Thurston County Washington
CHICAGO TITLE COMPANY

(K)   "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L)   "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M)   "Escrow Items" means those items that are described in Section 3.

(N)   "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O)   "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P)   "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q)   "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R)   "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

|  COUNTY | of | THURSTON  : |
| [Type of Recording Jurisdiction] | | [Name of Recording Jurisdiction] |

LOT 28 OF OAKRIDGE, ACCORDING TO THE PLAT THEREOF RECORDED MARCH 9, 2006 UNDER AUDITOR'S FILE NO. 3813776. IN THURSTON COUNTY, WASHINGTON.
A.P.N.: 65730002800

which currently has the address of      10018 CASCADIAN AVENUE SE
                                                                            [Street]

         YELM                                    , Washington 98597 ("Property Address"):
         [City]                                                     [Zip Code]

Borrower Initials: _____  _____  _____  _____  _____

WASHINGTON--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3048 1/01 (02/01/07)                    Page 3 of 16

DocMagic <i>eForms</i> 800-649-1362
www.docmagic.com

3922368                                      Page 3 of 19
04/27/2007 03:24 PM      Deed Of Trust
Thurston County Washington
CHICAGO TITLE COMPANY

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1.  Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.  Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

Borrower Initials:

WASHINGTON--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3048 1/01  (02/01/07)                        Page 4 of 16

DocMagic *EForms* 800-649-1362
www.docmagic.com

Page 4 of 19

3922368
04/27/2007 03:24 PM      Deed Of Trust
Thurston County Washington
CHICAGO TITLE COMPANY

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.    Funds for Escrow Items.  Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall

Borrower Initials: _____ _____

WASHINGTON--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3048 1/01  (02/01/07)                                   Page 5 of 16

DocMagic *eFonns* 800-349-1362
www.docmagic.com

3922366                                    Page 5 of 19
04/27/2007 03:54 PM    Deed Of Trust
Thurston County Washington
CHICAGO TITLE COMPANY

be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.   Charges; Liens.  Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any.  To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.   Property Insurance.  Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan.  The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably.  Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification.  Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense.  Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect.  Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of

Borrower Initials: _____  _____  _____  _____  _____  _____

WASHINGTON--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3048 1/01  (02/01/07)

*DocMagic eForms* 800-649-1362
www.docmagic.com

Page 6 of 16

3922368                                          Page 6 of 19
04/27/2007 02:24 PM    Deed Of Trust
Thurston County Washington
CHICAGO TITLE COMPANY

insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.  Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.  Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair

Borrower Initials: _____   _____   _____   _____   _____

WASHINGTON--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3048 1/01  (02/01/07)                                    Page 7 of 16

DocMagic *EFaestas* 800-649-1362
www.docmagic.com

3922368
04/27/2007 03:24 PM
Thurston County Washington     Deed of Trust     Page 7 of 19
CHICAGO TITLE COMPANY

the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.   Borrower's Loan Application.  Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.   Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10.  Mortgage Insurance.  If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage

Borrower Initials: _____

WASHINGTON--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3048 1/01  (02/01/07)                              Page 8 of 16

DocMagic *800-649-1362*
www.docmagic.com

Page 8 of 19

3922368
04/27/2007 03:24 PM
Thurston County Washington
CHICAGO TITLE COMPANY
Deed of Trust

substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a)  Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b)  Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11.  Assignment of Miscellaneous Proceeds; Forfeiture.  All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the

Borrower Initials: _____ _____ _____ _____ _____

3922368                              Page 9 of 19
03/27/2007 03:34 PM   Deed Of Trust
Thurston County Washington
CHICAGO TITLE COMPANY

repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12.  Borrower Not Released; Forbearance By Lender Not a Waiver.  Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original

Borrower Initials: _____  _____  _____  _____

WASHINGTON--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3048 1/01  (02/01/07)                    Page 10 of 16

DocMagic *800-649-1362*
www.docmagic.com

3922358
04/27/2007 03:24 PM   Deed Of Trust
Thurston County Washington
CHICAGO TITLE COMPANY

Page 10 of 19

Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13.  **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14.  **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15.  **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice

Borrower Initials: _____

3922368                                    Page 11 of 19
04/27/2007 03:24 PM                Deed of Trust
Thurston County Washington
CHICAGO TITLE COMPANY

required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16.  **Governing Law; Severability; Rules of Construction.**  This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located.  All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law.  Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract.  In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17.  **Borrower's Copy.**  Borrower shall be given one copy of the Note and of this Security Instrument.

18.  **Transfer of the Property or a Beneficial Interest in Borrower.**  As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19.  **Borrower's Right to Reinstate After Acceleration.**  If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument.  Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.  Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no

Borrower Initials: _____  _____  _____

WASHINGTON--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3048 1/01  (02/01/07)

Page 12 of 16

DocMagic *eForms* 800-649-1362
www.docmagic.com

3922368                                     Page 12 of 19
04/27/2007 03:24 PM      Deed Of Trust
Thurston County Washington
CHICAGO TITLE COMPANY

acceleration had occurred.  However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20.  Sale of Note; Change of Loan Servicer; Notice of Grievance.  The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower.  A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law.  There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note.  If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing.  If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action.  If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph.  The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21.  Hazardous Substances.  As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property.  Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property.  The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property.  If Borrower learns, or is notified by any governmental

Borrower Initials:

WASHINGTON–Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3048 1/01  (02/01/07)                                     Page 13 of 16

DocMagic € Forms 800-649-1362
www.docmagic.com

Page 13 of 19

3922368
04/77/2007 03 24 PM        Deed Of Trust
Thurston County Washington
CHICAGO TITLE COMPANY

or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property at public auction at a date not less than 120 days in the future. The notice shall further inform Borrower of the right to reinstate after acceleration, the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale, and any other matters required to be included in the notice by Applicable Law. If the default is not cured on or before the date specified in the notice, Lender at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and/or any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee and Lender shall take such action regarding notice of sale and shall give such notices to Borrower and to other persons as Applicable Law may require. After the time required by Applicable Law and after publication of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of the Property for a period or periods permitted by Applicable Law by public announcement at the time and place fixed in the notice of sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it or to the clerk of the superior court of the county in which the sale took place.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs and the Trustee's fee for preparing the reconveyance.

24. Substitute Trustee. In accordance with Applicable Law, Lender may from time to time appoint a successor trustee to any Trustee appointed hereunder who has ceased to act. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

25. Use of Property. The Property is not used principally for agricultural purposes.

Borrower Initials:

WASHINGTON--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3048 1/01  (02/01/07)                              Page 14 of 16

DocMagic *eFormns* 800-649-1362
www.docmagic.com

3822368                                                 Page 14 of 19
04/27/2007 03 21 PM   Deed Of Trust
Thurston County Washington
CHICAGO TITLE COMPANY

26. Attorneys' Fees.  Lender shall be entitled to recover its reasonable attorneys' fees and costs in any action or proceeding to construe or enforce any term of this Security Instrument. The term "attorneys' fees," whenever used in this Security Instrument, shall include without limitation attorneys' fees incurred by Lender in any bankruptcy proceeding or on appeal.

ORAL AGREEMENTS OR ORAL COMMITMENTS TO LOAN MONEY, EXTEND CREDIT, OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT ARE NOT ENFORCEABLE UNDER WASHINGTON LAW.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)                    _____ (Seal)
JAMES BIGELOW            -Borrower        CAROLYN BIGELOW            -Borrower

_____ (Seal)                    _____ (Seal)
                        -Borrower                                  -Borrower

_____ (Seal)                    _____ (Seal)
                        -Borrower                                  -Borrower

_____                           _____
Witness                                           Witness

WASHINGTON--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS                    DocMagic eForms 800-649-1362
Form 3048 1/01 (02/01/07)                Page 15 of 16                 www.docmagic.com

3922368                                           Page 15 of 19
04/27/2007 03:24 PM     Deed Of Trust
Thurston County Washington
CHICAGO TITLE COMPANY

———————— [Space Below This Line For Acknowledgment] ————————

State of Washington                                }

County of __PIERCE_____      }

On this day personally appeared before me   JAMES EIGELOW AND CAROLYN

BIGELOW _____

_____

_____

to me known to be the individual or individuals described in and who executed the within and foregoing instrument, and acknowledged that he/she/they signed the same as his/her/their free and voluntary act and deed, for the uses and purposes therein mentioned.

Given under my hand and official seal this 25th day of April, 2007

Notary Public in and for the state of Washington, residing at: Puyallup

My commission expires: 8-1-07

WASHINGTON–Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3048 1/01  (02/01/07)                              Page 16 of 16

DocMagic €Forms 800-849-1362
www.docmagic.com

Page 16 of 19

3922368
04/27/2007 03:24 PM   Deed Of Trust
Thurston County Washington
CHICAGO TITLE COMPANY

# EXHIBIT 3

4261697                    Pages: 1
04/20/2012 08:34 AM ASSGN
Thurston County, Washington
NATIONWIDE TITLE CLEARING

When Recorded Return To:
Green Tree Servicing LLC
C/O NTC 2100 Alt. 19 North
Palm Harbor, FL 34683

## CORPORATE ASSIGNMENT OF DEED OF TRUST

Loan #▌▌▌▌▌▌▌

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS) AS NOMINEE FOR PIERCE COMMERCIAL BANK, ITS SUCCESSORS AND ASSIGNS, (ASSIGNOR), (MERS Address: P.O. Box 2026, Flint, Michigan 48501-2026) by these presents does convey, grant, sell, assign, transfer and set over the described Deed of Trust together with all interest secured thereby, all liens, and any rights due or to become due thereon to GREEN TREE SERVICING LLC, WHOSE ADDRESS IS 7360 SOUTH KYRENE ROAD, T314, TEMPE, AZ 85283 (800)643-0202, ITS SUCCESSORS OR ASSIGNS, (ASSIGNEE)

Said Deed of Trust is dated 04/24/2007 and executed by JAMES BIGELOW AND CAROLYN BIGELOW and recorded in Book page /Instr# 3922368 in the office of the Recorder of THURSTON County, WA.

LOT 28 OF OAKRIDGE
Parcel ID #: 65730002800

Dated this 19th day of April in the year 2012
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS) AS NOMINEE FOR PIERCE COMMERCIAL BANK, ITS SUCCESSORS AND ASSIGNS

DERRICK WHITE
ASST. SECRETARY

STATE OF FLORIDA        COUNTY OF PINELLAS
The foregoing instrument was acknowledged before me on this 19th day of April in the year 2012, by DERRICK WHITE as ASST. SECRETARY for MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS) AS NOMINEE FOR PIERCE COMMERCIAL BANK, ITS SUCCESSORS AND ASSIGNS, who, as such ASST. SECRETARY being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.

MIRANDA AVILA, NOTARY PUBLIC
Comm. Expires: 08/22/2014

Notary Public State of Florida
Miranda Avila
My Commission EE019065
Expires 08/22/2014

Document ▌▌▌▌▌ P.L. ▌▌▌▌▌▌ 19 North, Palm Harbor, FL 34683 (800)346-9152
GTSAV ▌▌▌▌MIN▌▌▌▌▌▌▌MERS PHONE 1-888-679-MERS

State of Washington } SS.
County of Thurston }

I, Mary Hall, Thurston County Auditor, do hereby certify
that the foregoing Instrument is a true and correct copy of the
document now on file or recorded in my office.
    In witness whereof, I hereunto set my hand and official seal
this _____ day of _____ 20 ___

                    Mary Hall, County Auditor

By_____ Deputy

# EXHIBIT 4

CERTIFIED BY FIRST AMERICAN TITLE
INSURANCE COMPANY TO BE A COPY
OF THE DOCUMENT RECORDED ON 05/18/2012
AS INSTRUMENT NO 4266605
IN BOOK                     PAGE
OFFICIAL RECORDS OF THURSTON

* After Recording Return to:
Nanci Lambert
Northwest Trustee Services, Inc.
P.O. Box 997
Bellevue, WA 98009-0997
68341707

## Appointment of Successor Trustee

**FIRST AN**

File No. 7042.26476

James Bigelow and Carolyn Bigelow, husband and wife is/are the grantor(s), Chicago Title is the trustee and Mortgage Electronic Registration Systems, Inc. as nominee for Pierce Commercial Bank is the beneficiary under that certain deed of trust dated 04/24/07 and recorded on 04/27/07 under Thurston County, Washington Auditor's File No. 3922368.

The present beneficiary under said deed of trust appoints Northwest Trustee Services, Inc., a Washington corporation, whose address is P.O. Box 997, Bellevue, WA 98009-0997, as successor trustee under the deed of trust with all powers of the original trustee.

Green Tree Servicing LLC

By _____

STATE OF _South Dakota_
COUNTY OF _Pennington_ )ss

I certify that I know or have satisfactory evidence that _David S Peter_ is the person who appeared before me, and said person acknowledged that (he/she) signed this instrument, on oath stated that (he/she) was authorized to execute the instrument and acknowledged it as the _AVP_ of _Green Tree Servicing LLC_ to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument.

Dated: _5-14-12_

_____
Notary Public in and for the State of _South Dakota_
Residing at _Pennington County_
My appointment expires _____

NORTHWEST TRUSTEE SERVICES, INC.            Client:   Green Tree Servicing LLC
P.O. BOX 997                                 Borrower: Bigelow, James and Carolyn
BELLEVUE, WA 98009-0997
425-586-1900     FAX 425-586-1997



# EXHIBIT 5

# Notice of Default

**To:**

| | |
|---|---|
| James Bigelow aka James A. Bigelow<br>10018 Cascadian Avenue Southeast<br>Yelm, WA 98597 | Carolyn Bigelow aka Carolyn G. Bigelow<br>aka Carolyn G. Willey aka Carolyn G. Asbell<br>10018 Cascadian Avenue Southeast<br>Yelm, WA 98597 |

Regarding the real property "Property" located at:

**Property Address:**
10018 Cascadian Avenue Southeast
Yelm, WA 98597

**If you are the owner of this property and you occupy it as your residence, you should take care to protect your interest in your home. This notice of default (your failure to pay or otherwise perform) is the first step in a process that could result in you losing your home. You should carefully review your options. For example:**

**Can you pay and stop the foreclosure process?**
**Do you dispute the failure to pay?**
**Can you sell your property to preserve your equity?**
**Are you able to refinance this loan or obligation with a new loan or obligation from another lender with payments, terms, and fees that are more affordable?**
**Do you qualify for any government or private homeowner assistance programs?**
**Do you know if filing for bankruptcy is an option? What are the pros and cons of doing so?**

**Do not ignore this notice; because if you do nothing, you could lose your home at a foreclosure sale. (No foreclosure sale can be held any sooner than ninety days after a notice of sale is issued and a notice of sale cannot be issued until thirty days after this notice.) Also, if you do nothing to pay what you owe, be careful of people who claim they can help you. There are many individuals and businesses that watch for the notices of sale in order to unfairly profit as a result of borrowers' distress.**

**You may feel you need help understanding what to do. There are a number of professional resources available, including home loan counselors and attorneys, who may assist you. Many legal services are lower-cost or even free, depending on your ability to pay. If you desire legal help in understanding your options or handling this default, you may obtain a referral (at no charge) by contacting the county bar association in the county where your home is located. These legal referral services also provide information about lower-cost or free legal services for those who qualify.  You may contact the Department of Financial Institutions or the statewide civil legal aid hotline for possible assistance or referrals.**

**A)  Property description:**

Lot 28 of Oakridge, according to the plat thereof recorded March 9, 2006 under Auditor's File No. 3813776. In Thurston County, Washington.

**B)  Deed of Trust information:**  Thurston County Auditor's File No.: 3922368;  Recording Date:  04/27/07

**C)  Declaration of payment default:**  The beneficiary declares you in default for failing to make payments as required by your note and deed of trust.

**D)  Itemized account of the arrears:**

*2 of 5*

| | |
|---|---|
| Delinquent monthly payments beginning with the 11/01/11 installment. | $11,619.37 |
| Late charges: | $0.00 |
| Lender's Fees and Costs | $226.00 |
| Trustee's fees | $475.00 |
| Costs | |
|     Title report (estimate) | $946.08 |
|     Recording | $15.00 |
|     Certified mail | $20.00 |
|     Posting | $70.00 |
|     Sale Costs | $0.00 |
| **Total arrears and costs due today** | **$13,371.45** |

**E)  Itemized account of all other specific charges, costs or fees that grantor or borrower is or may be obliged to pay to reinstate the deed of trust before the recording of the notice of sale.**

| | |
|---|---|
| Additional monthly payment | $1,659.91 |
| Additional late charge | |

**F)  <u>Amount required to cure payment defaults before notice of sale recorded:</u>       $15,110.77**
**In addition, grantor or borrower must timely cure all other defaults before the note and deed of trust are deemed reinstated.**

*Payments and late charges continue to accrue and additional advances may be made. <u>The sums stated above are estimates only.</u> Before attempting to reinstate the loan, call us at 425-586-1900 to learn the exact amounts of monetary defaults and actions required to cure possible other defaults.*

**G)  Effect of failure to cure:**  Failure to cure all alleged defaults within 30 days of mailing/personal service of this notice may lead to recordation, transmittal and publication of a notice of sale and the Property may be sold at public auction no less than 120 days from the date of this notice.

**H)  Effect of recording, transmitting and publication of the notice of sale:**  The effect of the recordation, transmittal and publication of the notice of sale will be to (i) increase the costs and fees and (ii) publicize the default and advertise the Property for sale.

**I)  Effect of sale of the Property:**  The Trustee's sale of the Property will deprive the borrower, grantor and any successor in interest of all their interest in the Property.

**J)  Recourse to courts:**  The borrower, grantor, any guarantor or any successor in interest has recourse to the courts pursuant to RCW 61.24.130 to contest the default(s) on any proper ground.

**K)  Contact Information for Note Owner and Loan Servicer.**

The owner of the note is Federal National Mortgage Association (Fannie Mae), whose address is:

Fannie Mae
3900 Wisconsin Avenue
Washington DC  20016

The loan servicer for this loan is Green Tree Servicing LLC, whose address and telephone number are:

7360 South Kyrene Road, T-208
Tempe, AZ  85283

877-337-4141

*3 of 5*

**L) Notice pursuant to the Federal Fair Debt Collection Practices Act:** IF YOU HAVE RECEIVED A DISCHARGE OF THE DEBT REFERENCED HEREIN IN A BANKRUPTCY PROCEEDING, THIS LETTER IS NOT AN ATTEMPT TO IMPOSE PERSONAL LIABILITY UPON YOU FOR PAYMENT OF THAT DEBT. IN THE EVENT YOU HAVE RECEIVED A BANKRUPTCY DISCHARGE, ANY ACTION TO ENFORCE THE DEBT WILL BE TAKEN AGAINST THE PROPERTY ONLY. If you are the consumer who originally contracted the debt or if you assumed the debt, then you are notified that:

1. As of the date of this notice you owe $245,934.21. Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check. For further information, write to the address provided in Section 6 below or call us at 425-586-1900.
2. The creditor to whom the debt is owed Green Tree Servicing LLC.
3. Unless within 30 days after receipt of this notice you dispute the debt or any portion of it, we will assume the debt to be valid. The Fair Debt Collection Practices Act does not require that we wait until 30 days from the date you receive this letter before initiating foreclosure proceedings.
4. If you notify us within 30 days after receipt of this notice that you dispute the debt or any part of it, we will request that the creditor obtain verification of the debt and mail it to you.
5. If you request within 30 days after receipt of this notice, we will request that the creditor provide you with the name and address of the original creditor, if different from the current creditor.
6. Written requests should be addressed to Northwest Trustee Services, Inc., Post Office Box 997, Bellevue, WA 98009-0997.

**Dated: May 10, 2012**                    Green Tree Servicing LLC
                                           By Northwest Trustee Services, Inc., its duly authorized agent


**This is an attempt to collect a debt and any information obtained will be used for that purpose.**


**NORTHWEST TRUSTEE SERVICES, INC.**
**P.O. BOX 997**
**BELLEVUE, WA 98009-0997**                **File No:** 7042.26476
                                           **Matter:** Bigelow, James and Carolyn
                                           **Client:** Green Tree Servicing LLC


**NANCI LAMBERT**
**425-586-1900**
**FAX 425-586-1997**

4 of 5

**BENEFICIARY OR AUTHORIZED AGENT DECLARATION PURSUANT TO
CHAPTER 61.24 RCW (SSHB 1362)
AND "FORECLOSURE LOSS" MITIGATION FORM**

Borrower(s):        Bigelow, James and Carolyn
Beneficiary:         Green Tree Servicing LLC
Loan Servicer:     Green Tree Servicing LLC
Property:             10018 CASCADIAN AVENUE SE, YELM, WA 98597
Loan No.:            68341707

**The undersigned beneficiary or authorized agent for the beneficiary hereby represents and declares under the penalty of perjury that [check the applicable box and fill in any blanks so that the trustee can insert, on the beneficiary's behalf, the applicable declaration in the notice of default required under chapter 61.24 RCW]:**



> **[X] (1) The beneficiary or beneficiary's authorized agent has contacted the borrower under, and has complied with, RCW 61.24.031 (contact provision to "assess the borrower's financial ability to pay the debt secured by the deed of trust and explore options for the borrower to avoid foreclosure") and the borrower did not request a meeting.**

> **[ ] (2) The beneficiary or beneficiary's authorized agent has contacted the borrower as required under RCWW 61.24.031 and the borrower or the borrower's designated representative requested a meeting.  A meeting was held in compliance with RCW 61.24.031.**

> **[ ] (3) The beneficiary or beneficiary's authorized agent has exercised due diligence to contact the borrower as required in RCW 61.24.031(5)**

> **[ ] (4) The borrower has surrendered the secured property as evidenced by either a letter confirming the surrender or by delivery of the keys to the secured property to the beneficiary, the beneficiary's authorized agent or to the trustee.**

> **[ ] (5) Under RCW 61.24.031, the beneficiary or the beneficiary's authorized agent has verified information that, on or before the date of this declaration, the borrower(s) has filed for bankruptcy, and the bankruptcy stay remains in place, or the borrower has filed for bankruptcy and the bankruptcy court has granted relief from the bankruptcy stay allowing the enforcement of the deed of trust.**

**I declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.**

Dated: 5-4-12

Place of Signature: Rapid City, SD

Green Tree Servicing LLC
(Beneficiary's or Authorized Agent's Name)

By: SueSpratt
(Signature)

SueSpratt
(Authorized Signer's Printed Name)

Foreclosure Specialist
(Authorized Signer's Title)

BIGELOW, JAMES AND CAROLYN

# EXHIBIT 6

**4389907**                     **Pages: 4**
04/30/2014 02:10 PM NTS
Thurston County, Washington
FIRST AMERICAN NATIONAL DEFAULT SEATTLE

After Recording, Return to:
Nanci Lambert
Northwest Trustee Services, INC.
P.O. Box 997
Bellevue, WA 98009-0997

File No.:       7042.26476
Grantors:       Northwest Trustee Services, Inc.
                Green Tree Servicing LLC
Grantee:        James Bigelow and Carolyn Bigelow, husband and wife
Ref to DOT Auditor File No.: 3922368
Tax Parcel ID No.: 65730002800
Abbreviated Legal: Lot 28 of Oakridge, Auditor's File No. 3813776, Thurston Co., WA

Notice of Trustee's Sale
Pursuant to the Revised Code of Washington 61.24, et seq.

THIS NOTICE IS THE FINAL STEP BEFORE THE FORECLOSURE SALE OF YOUR
HOME

You have only 20 DAYS from the recording date of this notice to pursue mediation.

DO NOT DELAY.  CONTACT A HOUSING COUNSELOR OR AN ATTORNEY LICENSED IN
WASHINGTON NOW to assess your situation and refer you to mediation if you are eligible and it may help
you save your home.  See below for safe sources of help.

SEEKING ASSISTANCE

Housing counselors and legal assistance may be available at little or no cost to you.  If you would like assistance
in determining your rights and opportunities to keep your house, you may contact the following:

The statewide foreclosure hotline for assistance and referral to housing counselors recommended by the Housing
Finance Commission Telephone: Toll-free: 1-877-894-HOME (1-877-894-4663).  Web site:
http://www.dfi.wa.gov/consumers/homeownership/post_purchase_counselors_foreclosure.htm
 The United States Department of Housing and Urban Development Telephone: Toll-free: 1-800-569-4287.  Web
site:
http://www.hud.gov/offices/hsg/sfh/hcc/fc/index.cfm?webListAction=search&searchstate=WA&filterSvc=dfc
 The statewide civil legal aid hotline for assistance and referrals to other housing counselors and attorneys
Telephone: Toll-free: 1-800-606-4819.  Web site: http://nwjustice.org/what-clear.
                                      I.

On August 29, 2014, at 10:00 AM. near the directory in front of the Thurston County Courthouse, 2000
Lakeridge Drive S.W. in the City of Olympia, State of Washington, the undersigned Trustee (subject to any
conditions imposed by the Trustee) will sell at public auction to the highest and best bidder, payable at time of
sale, the following described real property "Property", situated in the County(ies) of Thurston, State of
Washington:

Lot 28 of Oakridge, according to the plat thereof recorded March 9, 2006 under Auditor's File No. 3813776. In Thurston County, Washington.

Commonly known as:   10018 Cascadian Avenue Southeast
Yelm, WA 98597

which is subject to that certain Deed of Trust dated 04/24/07, recorded on 04/27/07, under Auditor's File No. 3922368, records of Thurston County, Washington, from James Bigelow and Carolyn Bigelow, husband and wife, as Grantor, to Chicago Title, as Trustee, to secure an obligation "Obligation" in favor of Mortgage Electronic Registration Systems, Inc. as nominee for Pierce Commercial Bank, as Beneficiary, the beneficial interest in which was assigned by Mortgage Electronic Registration Systems, Inc. (MERS) as nominee for Pierce Commercial Bank, its successors and assigns to Green Tree Servicing LLC, under an Assignment/Successive Assignments recorded under Auditor's File No. 4261697.

*The Tax Parcel ID number and Abbreviated Legal Description are provided solely to comply with the recording statutes and are not intended to supplement, amend or supersede the Property's full legal description provided herein.

II.

No action commenced by the Beneficiary of the Deed of Trust is now pending to seek satisfaction of the Obligation in any Court by reason of the Grantor's or Borrower's default on the Obligation secured by the Deed of Trust.

III.

The Beneficiary alleges default of the Deed of Trust for failure to pay the following amounts now in arrears and/or other defaults:

|  |  | Amount due to reinstate as of 04/24/2014 |
|---|---|---|
| Monthly Payments |  | $47,915.25 |
| Late Charges |  | $0.00 |
| Lender's Fees & Costs |  | $442.97 |
| Total Arrearage | $48,358.22 |  |
| Trustee's Expenses (Itemization) |  |  |
| Trustee's Fee |  | $200.00 |
| Total Costs | $200.00 |  |
| Total Amount Due: |  | $48,558.22 |

IV.

The sum owing on the Obligation is:  Principal Balance of $233,899.00, together with interest as provided in the note or other instrument evidencing the Obligation from 11/01/11, and such other costs and fees as are due under the Obligation, and as are provided by statute.

V.

The Property will be sold to satisfy the expense of sale and the Obligation as provided by statute.  The sale will be made without representation or warranty, express or implied regarding title, possession, encumbrances or condition of the Property on August 29, 2014. The default(s) referred to in paragraph III, together with any

subsequent payments, late charges, advances costs and fees thereafter due, must be cured by 08/18/14 (11 days before the sale date), to cause a discontinuance of the sale. The sale will be discontinued and terminated if at any time before 08/18/14 (11 days before the sale date), the default(s) as set forth in paragraph III, together with any subsequent payments, late charges, advances, costs and fees thereafter due, is/are cured and the Trustee's fees and costs are paid. The sale may be terminated any time after 08/18/14 (11 days before the sale date), and before the sale by the Borrower, Grantor, any Guarantor or the holder of any recorded junior lien or encumbrance paying the entire balance of principal and interest secured by the Deed of Trust, plus costs, fees, and advances, if any made pursuant to the terms of the obligation and/or Deed of Trust, and curing all other defaults.

## VI.

A written notice of default was transmitted by the Beneficiary or Trustee to the Borrower and Grantor at the following address(es):

### NAME AND ADDRESS

James Bigelow aka James A. Bigelow          Carolyn Bigelow aka Carolyn G. Bigelow
10018 Cascadian Avenue Southeast            aka Carolyn G. Willey aka Carolyn G. Asbell
Yelm, WA 98597                              10018 Cascadian Avenue Southeast
                                            Yelm, WA 98597

by both first class and certified mail, return receipt requested on 05/11/12, proof of which is in the possession of the Trustee; and on 05/11/12 Grantor and Borrower were personally served with said written notice of default or the written notice of default was posted on a conspicuous place on the real property described in paragraph I above, and the Trustee has possession of proof of such service or posting.

## VII.

The Trustee, whose name and address are set forth below, will provide in writing to anyone requesting it a statement of all costs and trustee's fees due at any time prior to the sale.

## VIII.

The effect of the sale will be to deprive the Grantor and all those who hold by, through or under the Grantor of all their interest in the Property.

## IX.

Anyone having any objection to the sale on any grounds whatsoever will be afforded an opportunity to be heard as to those objections if they bring a lawsuit to restrain the sale pursuant to RCW 61.24.130. Failure to bring such a lawsuit may result in a waiver of any proper grounds for invalidating the Trustee's sale.

## X.

NOTICE TO OCCUPANTS OR TENANTS - The purchaser at the Trustee's Sale is entitled to possession of the property on the 20th day following the sale, as against the Grantor under the Deed of Trust (the owner) and anyone having an interest junior to the Deed of Trust, including occupants who are not tenants. After the 20th day following the sale the purchaser has the right to evict occupants who are not tenants by summary proceedings under Chapter 59.12 RCW. For tenant-occupied property, the purchaser shall provide a tenant with written notice in accordance with RCW 61.24.060.

**The trustee's rules of auction may be accessed at www.northwesttrustee.com and are incorporated by this reference.  You may also access sale status at www.northwesttrustee.com and www.USA-Foreclosure.com.**

**EFFECTIVE: 04/24/2014**

Date Executed: 4/29/2014

Northwest Trustee Services, Inc., Trustee

By

Authorized Signature

13555 SE 36TH ST. SUITE 100

BELLEVUE, WA 98006

Contact:  Nanci Lambert

(425) 586-1900

STATE OF WASHINGTON )

) ss.

COUNTY OF KING )

Nanci Lambert

I certify that I know or have satisfactory evidence that _____ is the person who appeared before me, and said person acknowledged that (he/she) signed this instrument, on oath stated that (he/she) was authorized to execute the instrument and acknowledged it as the Assistant Vice President of Northwest Trustee Services, Inc. to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument.

Dated: 4/29/2014

GABRIEL MOORE

STATE OF WASHINGTON

NOTARY PUBLIC

MY COMMISSION EXPIRES

03-08-16

NOTARY PUBLIC in and for the State of Washington, residing at KING COUNTY

My commission expires 03 / 08 / 2016

NORTHWEST TRUSTEE SERVICES, INC. 13555 SE 36TH ST. SUITE 100, BELLEVUE, WA 98006 PHONE (425) 586-1900 FAX (425) 586-1997

File No: 7042.26476

Borrower: Bigelow, James and Carolyn

SERVING WA, OR, ID, CA, NV, AZ, MT

This is an attempt to collect a debt and any information obtained will be used for that purpose.

# EXHIBIT 7

# EXHIBIT A



**FILED**

2013 AUG 26 PM 2: 15

SONYA KRASKI
COUNTY CLERK
SNOHOMISH CO. WASH

CL16213818

*CERTIFIED COPY*

## Superior Court of Washington
## County of

[✓] In re the Marriage of:
[ ] In re the Domestic Partnership of:

CAROLYN GAYLE BIGELOW

                                 Petitioner,

and

JAMES ALLAN BIGELOW

                                Respondent.

No. 13 3 02206 2

**Summons
(SM)**

*NO FEE*

## To the Respondent:

1.    The petitioner has started an action in the above court requesting:

        [✓]    that your marriage be dissolved.
        [ ]    that your domestic partnership be dissolved.
        [ ]    a legal separation.
        [ ]    that the validity of your marriage be determined.
        [ ]    that the validity of your domestic partnership be determined.

    Additional requests, if any, are stated in the petition, a copy of which is attached to this summons.

2.    You must respond to this summons and petition by serving a copy of your written response on the person signing this summons and by filing the original with the clerk of the court. If you do not serve your written response within 20 days (or 60 days if you are served outside of the state of Washington) after the date this summons was served on you, exclusive of the day of service, the court may enter an order of default against you, and the court may, without further notice to you, enter a decree and approve or provide for the relief requested in the petition. In the case of a dissolution of marriage or domestic partnership, the court will not enter the final decree until at least 90 days after filing and service. If you serve a notice of appearance on the undersigned person, you are entitled to notice before an order of default or a decree may be entered.

3.    Your written response to the summons and petition must be on form:

        [ ]    WPF DR 01.0300, Response to Petition (Marriage).

3

[ ]     WPF DR 01.0305, Response to Petition (Registered Domestic Partnership).

4.      This form may be obtained by contacting the clerk of the court at the address below, by contacting the Administrative Office of the Courts at (360) 705-5328, or from the Internet at the Washington State Courts homepage:

        **http://www.courts.wa.gov/forms**

5.      If this action has not been filed with the court, you may demand that the petitioner file this action with the court. If you do so, the demand must be in writing and must be served upon the person signing this summons. Within 14 days after you serve the demand, the petitioner must file this action with the court, or the service on you of this summons and petition will be void.

6.      If you wish to seek the advice of an attorney in this matter, you should do so promptly so that your written response, if any, may be served on time.

7.      One method of serving a copy of your response on the petitioner is to send it by certified mail with return receipt requested.

This summons is issued pursuant to RCW 4.28.100 and Superior Court Civil Rule 4.1 of the state of Washington.

Dated: _August 28, 2013_ _____

_____
Signature of Petitioner or Lawyer/WSBA No.

_Carolyn Gayle Bigelow_
Print or Type Name

**File original of your response with the clerk of the court at:**

_____

_____
(Name of Court)

_____
(Address)

_____

**Serve a copy of your response on:**

[X] Petitioner (you may list an address that is not your residential address where you agree to accept legal documents. <u>Any</u> <u>time</u> this address changes while this action is pending, you must notify the opposing parties in writing and file an updated Confidential Information Form (WPF DRPSCU 09.0200) with the court clerk.)

[ ] Petitioner's Lawyer
_Carolyn G. Bigelow_
(Name)
_20912 W. Richmond Road_
(Address)
_Bothell, WA. 98021_

_Summons (SM) - Page 2 of 2_
_WPF DR 01.0200 Mandatory (6/2008) - CR 4.1_

# Superior Court of Washington
# County of

In re the Marriage of:

*CAROLYN GAYLE BIGELOW*

Petitioner,

and

*JAMES ALLAN BIGELOW*

Respondent.

No. **13 3 02206 2**

**Petition for Dissolution of Marriage (PTDSS)**

**Para. 1.12: check box if petition is attached for:**
[ ] Order for protection DV (PTORPRT)
[ ] Order for protection UH (PTORAH)

## I. Basis

**1.1  Identification of Petitioner**

Name (first/last) *CAROLYN GAYLE BIGELOW*, Birth date *3/1/1949*

Last known residence (county and state only) *SNOHOMISH COUNTY, WA*.

**1.2  Identification of Respondent**

Name (first/last) *JAMES ALLEN BIGELOW*, Birth date *2/2/1954*

Last known residence (county and state only) *THURSTON COUNTY, WA*.

**1.3  Children of the Marriage Dependent Upon Either or Both Spouses**

[X]  Does not apply.  There are no children dependent upon either or both spouses.

[ ]  The petitioner and respondent are both the legal (biological or adoptive) parents of the following dependent children:

Name (first/last) _____ Age _____

Name (first/last) _____ Age _____

Name (first/last) _____ Age _____

*Pet for Disso of Marriage (PTDSS) - Page 1 of 10*
*WPF DR 01.0100 Mandatory (12/2012) - RCW 26.09.020*

Name (first/last) _____ Age _____

Name (first/last) _____ Age _____

Name (first/last) _____ Age _____

[ ] The petitioner is and the respondent is not the legal parent of the following dependent children:

Name (first/last) _____ Age _____

Name (first/last) _____ Age _____

[ ] The respondent is and the petitioner is not the legal parent of the following dependent children:

Name (first/last) _____ Age _____

Name (first/last) _____ Age _____

## 1.4 Allegation Regarding Marriage

This marriage is irretrievably broken.

## 1.5 Date and Place of Marriage

The parties were married on (date) _SEPTEMBER 18, 1982_____ at (city and state) _EDMONDS, WASHINGTON_ .

[ ] The parties had previously entered into a Washington State registered domestic partnership on (date) _____ .

[ ] Other:

## 1.6 Separation

[ ] Petitioner and respondent are not separated.
[X] Petitioner and respondent separated on (date) _AuGusT 2, 2013_____ .
This is the date (check all that apply):
[ ] the parties moved into separate residences.
[ ] the parties divided their assets and liabilities.
[ ] petitioner filed this petition.
[ ] both parties agreed is the date of separation.
[X] other: PETITIONER MOVED OUT OF FAMILY HOME

## 1.7 Jurisdiction

This court has jurisdiction over the marriage.

[X] This court has jurisdiction over the respondent because:
    [X] the respondent is currently residing in Washington.
    [X] the petitioner and respondent lived in Washington during their marriage and the petitioner continues to reside, or be a member of the armed forces stationed, in this state.
    [ ] the petitioner and respondent may have conceived a child while within Washington.
    [ ] Other:

[ ] This court does not have jurisdiction over the respondent.

## 1.8   Property

There is community or separate property owned by the parties. The court should make a fair and equitable division of all the property.

[ ] The division of property should be determined by the court at a later date.
[X] The petitioner's recommendation for the division of property is set forth below.

    [X] The petitioner should be awarded the parties' interest in the following property:

- ½ INTEREST IN HOME LOCATED AT 10018 CASCADIAN AVE SE, YELM, WA 98597 (THURSTON Co) WHICH IS CURRENTLY IN FORECLOSURE
- PROPERTY CURRENTLY IN PETITIONERS POSSESSION, INCLUDING BUT NOT LIMITED TO: CHINA CABINET, CURIO CABINET, SECRETARY, SEWING MACHINE STAND, 1 DRESSER, 2 NIGHT STANDS, OFFICE/SCRAPING TABLE, FILE CABINET, KITCHEN TABLE & 4 CHAIRS, 2 FLOOR LAMPS, WASH BASIN, 5 SHELVES, V's OF DISHES, EVERYDAY SILVERWARE, VITAMIX, FOOD PROCESSOR, HAND MIXER, STEAMER, POPCORN POPPER, 2 SKILLETS, PERSONAL CLOTHING, 3 TVs, VCR, CURTAINS & COMFORTER IN MASTER BEDROOM, AND 2005 HONDA ODESSY VAN
- NOT CURRENTLY IN PETITIONER'S POSSESSION: FAMILY PICTURES, SCRAPBOOK SUPPLIES, 6 PAIR WOMAN'S SHOES, AND ANY PERSONAL CLOTHING LEFT BEHIND.

    [X] The respondent should be awarded the parties' interest in the following property:

- ½ INTEREST IN HOME LOCATED AT 10018 CASCADIAN AVE SE, YELM, WA 98597 (THURSTON G) WHICH IS CURRENTLY IN FORECLOSURE
- PROPERTY CURRENTLY IN RESPONDENT'S POSSESSION: 2 RECLINING LEATHER LOVESEATS, 1 RECLINING LEATHER ROCKER, 2 END TABLES & LAMPS, BUFFET, DESK, FILE DRAWER, HIDE-A-BED COUCH, OVER-SIZED CHAIR, TV & DVD, 1 FREEZER, 2 REFRIGERATORS, WASHER, DRYER, 3 STORAGE CABINETS, DINING ROOM TABLE & 6 CHAIRS, KING SIZE BED & FRAME, 3 TWIN BEDS, 5 DRESSERS, ½ OF DISHES, ENTERTAINING SILVERWARE, ALL KITCHEN EQUIPMENT & SUPPLIES, POWER & MISC. WORK TOOLS INCLUDING ELECTRIC SAW & DRILLS, GARDENING/LANDSCAPING EQUIPMENT/TOOLS/SUPPLIES, LAWN MOWER, WEED EATER, DUST COLLECTION SYSTEM, AND 1987 TOYOTA 2 DOOR TRUCK

[]     Other:

## 1.9   Debts and Liabilities

[]     The parties have no debts and liabilities.

[✓]     The parties have debts and liabilities. The court should make a fair and equitable division of all debts and liabilities.

     []     The division of debts and liabilities should be determined by the court at a later date.

     [✓]     The petitioner's recommendation for the division of debts and liabilities is set forth below.

        [✓]     The petitioner should be ordered to pay the following debts and liabilities to the following creditors:

           ½ Balance of Greentree Mortgage
           ½ Balance of 2nd Mortgage - Wells Fargo
           ½ Trendwest Monthly Fee & Maintenance Fee
           Credit One
           Juniper
           ½ Pacific Slope - Home Owners Association Fee
           ½ Villa del Palmar Cabo
           ½ All medical bills incurred prior to separation on Aug. 2, 2013.

        [✓]     The respondent should be ordered to pay the following debts and liabilities to the following creditors:

           ½ Balance of Greentree Mortgage
           ½ Balance of 2nd Mortgage - Wells Fargo
           ½ Trendwest Monthly Fee & Maintenance Fee
           ½ Pacific Slope - Home Owners Association Fee
           ½ Villa del Palmar Cabo
           ½ All medical bills incurred prior to separation on Aug. 2, 2013
           Insurance Policies: Pemco Auto, Mega First Choice, & Combined Insurance
           Policies, Kirby Fee,
           Kirby Vacuum
           All Household Utility & Maintenance including but not limited to Phone, Water,

[✓]     Each party should pay their debts incurred since separation.    Electric, Cable,

[✓]     Other:                                         Internet, Alarm, Heat Pump Maintenance

          Home located at 10018 Cascadian Ave SE, Yelm, WA 98597   & Verizon Contract
          (Thurston Co.) not to be modified w/ 1st & 2nd mortgages
          nor short-sale, cash for keys, deed-in-lieu, or any other
          workout option at any time without written, signed,
          dated, and notarized signatures of both Carolyn Gayle
          Bigelow, Petitioner, and Tracy Allen Bigelow, Respondent.
          Foreclosure sale may be pursued by either party.

## 1.10   Maintenance

    []     Maintenance should not be ordered.

[✓]     There is a need for maintenance as follows: *$1,000 PER MONTH PAYABLE THROUGH THE COURT ON THE 1ST OF EACH MONTH BEGINNING ON SEPTEMBER 1ST CONTINUING FOR 5 YEARS OR UNTIL PETITIONER IS ABLE TO BE GAINFULLY EMPLOYED.*

[ ]     Other:

## 1.11   Continuing Restraining Order

[ ]     Does not apply.

[ ]     A continuing restraining order should be entered which restrains or enjoins the [ ] petitioner [ ] respondent from disturbing the peace of the other party.

[ ]     A continuing restraining order should be entered which restrains or enjoins the [ ] petitioner [ ] respondent from going onto the grounds of or entering the home, work place or school of the other party or the day care or school of the following children:

_____

[ ]     A continuing restraining order should be entered which restrains or enjoins the [ ] petitioner [ ] respondent from knowingly coming within or knowingly remaining within (distance) _____ of the home, work place or school of the other party or the day care or school of these children:

_____

Other: _____

[ ]     A continuing restraining order should be entered which restrains or enjoins (name) _____ from molesting, assaulting, harassing, or stalking (name) _____. (If the court orders this relief, the restrained person will be prohibited from possessing a firearm or ammunition under federal law for the duration of the order. An exception exists for law enforcement officers and military personnel when carrying department/government-issued firearms. 18 U.S.C. § 925(a)(1).)

[ ]     Other:

## 1.12   Protection Order

[ ]     Does not apply.

[ ]     There is a protection order between the parties filed in case number _____, court _____, which expires on (date) _____.

[ ]     The court should grant the [ ] domestic violence [ ] antiharassment petition for order for protection:
[ ] attached to this petition.

[ ] filed separately under [ ] this case number [ ] case number _____.

**If you need immediate protection, contact the clerk/court for RCW 26.50 Domestic Violence forms or RCW 10.14 Antiharassment forms.**

## 1.13   Pregnancy

[ ]      Neither spouse is pregnant.

[ ]      (Name) _____ is pregnant.  **Note:  Under RCW 26.26.116, the other spouse is the presumed parent.  If petitioner or respondent believes the other spouse is not the parent, this presumption may be challenged up to four years after the birth of the child or as otherwise provided in RCW 26.26.500 through 26.26.625.**

[ ]      Other:

## 1.14   Jurisdiction Over the Children

[ ]      Does not apply because there are no dependent children.

[ ]      This court has jurisdiction over the children for the reasons set forth below:

[ ]      This court has exclusive continuing jurisdiction. The court has previously made a child custody, parenting plan, residential schedule or visitation determination in this matter and retains jurisdiction under RCW 26.27.211.

[ ]      This state is the home state of the children because:

  [ ]      the children lived in Washington with a parent or a person acting as a parent for at least six consecutive months immediately preceding the commencement of this proceeding.

  [ ]      the children are less than six months old and have lived in Washington with a parent or a person acting as parent since birth.

  [ ]      any absences from Washington have been only temporary.

  [ ]      Washington was the home state of the children within six months before the commencement of this proceeding and the children are absent from the state but a parent or person acting as a parent continued to live in this state.

[ ]      The children and the parents or the children and at least one parent or person acting as a parent have significant connection with the state other than mere physical presence; and substantial evidence is available in this state concerning the children's care, protection, training and personal relationships, and

  [ ]      the children have no home state elsewhere.

  [ ]      the children's home state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under RCW 26.27.261 or .271.

[ ]     All courts in the children's home state have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the children under RCW 26.27.261 or .271.

[ ]     No other state has jurisdiction.

[ ]     This court has temporary emergency jurisdiction over this proceeding because the children are present in this state and the children have been abandoned or it is necessary in an emergency to protect the children because the children, or a sibling or parent of the children is subjected to or threatened with abuse. RCW 26.27.231.

    [ ]     There is a previous custody determination that is entitled to be enforced under this chapter or a child custody proceeding has been commenced in a court of a state having jurisdiction under RCW 26.27.201 through 26.27.221. The requirements of RCW 26.27.231(3) apply to this matter. This state's jurisdiction over the children shall last until (date) _____.

    [ ]     There is no previous custody determination that is entitled to be enforced under this chapter and a child custody proceeding has not been commenced in a court of a state having jurisdiction under RCW 26.27.201 through 26.27.221. If an action is not filed in (potential home state) _____ by the time the child has been in Washington for six months, (date) _____, then Washington's jurisdiction will be final and continuing.

[ ]     Other:

## 1.15   Child Support and Parenting Plan for Dependent Children

[ ]     The parties have no dependent children.
[ ]     A parenting plan and an order of child support pursuant to the Washington State child support statutes should be entered for the following children who are dependent upon both parties:

Names of Children

The petitioner's proposed parenting plan for the children listed above:

[ ]     is attached and is incorporated by reference as part of this Petition.
[ ]     will be filed and served at a later date pursuant to RCW 26.09.181.

(The following information is required only for those children who are included in the petitioner's proposed parenting plan.)

During the last five years, the children have lived:

[ ]    in no place other than the state of Washington and with no person other than the petitioner or the respondent.

[ ]    in the following places with the following persons (list each place the children lived, including the state of Washington, the dates the children lived there and the names of the persons with whom the children lived. The present addresses of those persons must be listed in the required Confidential Information Form):

Claims to custody or visitation:

[ ]    The petitioner does not know of any person other than the respondent who has physical custody of, or claims to have custody or visitation rights to, the children.

[ ]    The following persons have physical custody of, or claim to have custody or visitation rights to the children (list their names and the children concerned below and list their present addresses in the Confidential Information Form. Do not list the responding party):

Involvement in any other proceeding concerning the children:

[ ]    The petitioner has not been involved in any other proceeding regarding the children.

[ ]    The petitioner has been involved in the following proceedings regarding the children (list the court, the case number, and the date of the judgment or order):

Other legal proceedings concerning the children:

[ ]    The petitioner does not know of any other legal proceedings concerning the children.

[ ]    The petitioner knows of the following legal proceedings that concern the children (list the children concerned, the court, the case number, and the kind of proceeding):

**1.16   Other**

## II.  Relief Requested

The petitioner **requests** the court to enter a decree of dissolution and to grant the relief below:

[✓]   Provide reasonable maintenance for the [✓] petitioner [ ] respondent.

[ ]   Approve the petitioner's proposed parenting plan for the dependent children listed in paragraph 1.15.

[ ]   Determine support for the dependent children listed in paragraph 1.15 pursuant to the Washington State child support statutes.

[ ]   Approve the separation contract or prenuptial agreement.

[✓]   Divide the property and liabilities.

[ ]   Change name of respondent to (first, middle, last): _____.

[✓]   Change name of petitioner to (first, middle, last): _Carolyn  Gayle Willey_.

[ ]   Enter a domestic violence protection order.

[ ]   Enter an antiharassment protection order.

[ ]   Enter a continuing restraining order.

[ ]   Order payment of day care expenses for the children listed in paragraph 1.15.

[ ]   Award the tax exemptions for the dependent children listed in paragraph 1.15 as follows:

[✓]   Order payment of attorney fees, other professional fees and costs.

[ ]   Other:

Dated: _August 28, 2013_ _____

_____
Signature of Petitioner or Lawyer/WSBA No.

_Carolyn  Gayle Willey_
Print Name

I declare under penalty of perjury under the laws of the state of Washington that the foregoing is true and correct.

Signed at (city) _Bothell_____, (state) _WA_____ on (date) _August 28, 2013_ .

_____
Signature of Petitioner

_Carolyn  Gayle Bigelow_
Print Name

*Pet for Disso of Marriage (PTDSS) - Page 9 of 10*
*WPF DR 01.0100 Mandatory (12/2012) - RCW 26.09.020*

**[ ]    Joinder**

I, the respondent, join in the petition.  I understand that by joining in the petition, a decree or judgment and order may be entered in accordance with the relief requested in the petition, unless prior to the entry of the decree or judgment and order, a response is filed and served.

    [ ] I waive notice of entry of the decree.

    [ ] I demand notice of all further proceedings in this matter.  Further notice should be sent to the following address (you may list an address that is not your residential address where you agree to accept legal documents):

    _____

Any time this address changes while this action is pending, you must notify the opposing parties in writing and file an updated Confidential Information Form (WPF DRPSCU 09.0200) with the court clerk.

Dated: _____        _____

                                          Signature of Respondent

                                          _____

                                          Print Name



STATE OF WASHINGTON
COUNTY OF SNOHOMISH  } ss.

I, SONYA KRASKI, Clerk of the above entitled Court,
do hereby certify that the foregoing instrument is a true
and correct copy of the original now on file in my office.
In witness whereof, I hereunto set my hand and the
Seal of the said    MAR 1 6 2015
Court this_____day of_____, 20____
SONYA  KRASKI, County Clerk
                                            Deputy

`

# EXHIBIT B

# CERTIFIED COPY

**FILED**

2014 JUL -9 PM 3: 54

SONYA KRASKI
COUNTY CLERK
SNOHOMISH CO. WAS.



**CL16785046**

## Superior Court of Washington
## County of Snohomish

In re:

*CAROLYN GAYLE BIGELOW*
                              Petitioner,

and

*JAMES ALLAN BIGELOW*  Respondent.

No. 13 3 02206 2

**Joinder
(JN)**

**1.      Joinder**

I have read the petition and join in it.  I understand that by joining in the petition, a decree or judgment and order may be entered in accordance with the relief requested in the petition, unless prior to the entry of the decree or judgment and order a response is filed and served.

**2.      Notice of Further Proceedings**

[X]    I waive notice of entry of the decree.
[ ]    I demand notice of all further proceedings in this matter.  Further notice should be sent to the following service address:  [You may list an address that is not your residential address where you agree to accept legal documents.]

_____



<u>Any time</u> this address changes while this action is pending, you must notify the opposing parties in writing and file an updated Confidential Information Form (WPF DRPSCU 09.0200) with the court clerk.

**3.      Other**

Dated: 7/9/14

_____
Signature of Joining Party

*JAMES A. BIGELOW*
Print or Type Name

*Joinder (JN) - Page 1 of 1*
*WPF DRPSCU 01.0330 (6/2006)*

17



STATE OF WASHINGTON
COUNTY OF SNOHOMISH } ss.

   I, SONYA KRASKI, Clerk of the above entitled Court,
do hereby certify that the foregoing instrument is a true
and correct copy of the original now on file in my office.
   In witness whereof, I hereunto set my hand and the
Seal of the said        MAR 1 6 2015

Court this _____ day of _____, 20_____
                           SONYA KRASKI, County Clerk

M. T_____ Deputy

# EXHIBIT C

# *CERTIFIED COPY*

FILED

2014 JUL -9 P 3: 54

SONYA KRASKI
COUNTY CLERK
SNOHOMISH CO. WA.



**CL16785044**

## Superior Court of Washington
## County of    SNOHOMISH

In re the Marriage of:

*Carolyn G. Bigelow*
                                    Petitioner,

and

*James A. Bigelow*
                                    Respondent.

No. 13 3 02206 2

**Findings of Fact and
Conclusions of Law
(Marriage)
(FNFCL)**

## I. Basis for Findings

The findings are based on:

[X]    agreement.
[ ]    an order of default signed by the court on this date or dated _____.
[ ]    trial.  The following people attended:

    [X]    Petitioner.
    [ ]    Petitioner's Lawyer.
    [X]    Respondent.
    [ ]    Respondent's Lawyer.
    [ ]    Other:

## II. Findings of Fact

Upon the basis of the court records, the court *Finds*:

### 2.1    Residency of Petitioner

The Petitioner

    [X]    is a resident of the state of Washington.
    [ ]    is not a resident of the state of Washington.
    [ ]    is a member of the armed forces and has been stationed in this state for at least 90 days.

ORIGINAL

14

**2.2    Notice to the Respondent**

The respondent

[ ]       appeared, responded or joined in the petition.
[X]      was served in the following manner: *PERSONAL*

**2.3    Basis of Personal Jurisdiction Over the Respondent**

[ ]       There are no facts to establish personal jurisdiction over the respondent.
[X]      The facts below establish personal jurisdiction over the respondent.

      [X]      The respondent is currently residing in Washington.
      [X]      The parties lived in Washington during their marriage and the petitioner
             continues to reside, or be a member of the armed forces stationed, in this state.
      [ ]       The parties may have conceived a child while within Washington.
      [ ]       Other:

**2.4    Date and Place of Marriage**

The parties were married on (date) *9/18/82*                    at
(city and state only) *EDMONDS, WA.*                    .

    [ ]       The parties had previously entered into a Washington State registered domestic
        partnership on (date) _____ .

[ ]     Other:

**2.5    Status of the Parties**

Petitioner and respondent separated on (date) *8/2/2013*                    .

**2.6    Status of Marriage**

[X]      The marriage is irretrievably broken and at least 90 days have elapsed since the date the
      petition was filed and since the date the summons was served or the respondent joined.
[ ]       The petitioner wishes to be legally separated.
[ ]       The petitioner is petitioning for a declaration concerning the invalidity of the marriage.
      The court *finds* the following facts concerning the validity of the marriage:

**2.7    Separation Contract or Prenuptial Agreement**

[X]   There is no written separation contract or prenuptial agreement.
[ ]   A written separation contract or prenuptial agreement was executed on
      (date) _____ and is incorporated herein.

    [ ]    The separation contract or prenuptial agreement should be approved.
    [ ]    The separation contract or prenuptial agreement should not be approved because:

[ ]   Other:

**2.8    Community Property**

[ ]   The parties do not have real or personal community property.
[ ]   The parties have real or personal community property as set forth in Exhibit _____. This
      exhibit is attached or filed and incorporated by reference as part of these findings.
[ ]   The parties have real or personal community property as set forth in the separation
      contract or prenuptial agreement referenced above.
[X]   The parties have the following real or personal community property:

    *10018 CASCADIAN AVE. S.E. YELM, WA. 98597*

[ ]   Other:

**2.9    Separate Property**

[X]   The petitioner has no real or personal separate property.
[X]   The respondent has no real or personal separate property.
[ ]   The parties have separate property as set forth in the separation contract or prenuptial
      agreement referenced above.
[ ]   The petitioner has real or personal separate property as set forth in Exhibit _____. This
      exhibit is attached or filed and incorporated by reference as part of these findings.

[ ]   The respondent has real or personal separate property as set forth in Exhibit _____.   This exhibit is attached or filed and incorporated by reference as part of these findings.

[ ]   The petitioner has the following real or personal separate property:

[ ]   The respondent has the following real or personal separate property:

[ ]   Other:

## 2.10   Community Liabilities

[ ]   There are no known community liabilities.
[ ]   The parties have incurred community liabilities as set forth in Exhibit _____.   This exhibit is attached or filed and incorporated by reference as part of these findings.
[ ]   The parties have community liabilities as set forth in the separation contract or prenuptial agreement referenced above.
[X]   The parties have incurred the following community liabilities:

| Creditor | Amount |
|---|---|
| GREEN TREE SERVICES | 233,899.00 |
| WELLS FARGO | 14,000.00 |

[ ]   Other:

## 2.11   Separate Liabilities

[X]   The petitioner has no known separate liabilities.

[X]   The respondent has no known separate liabilities.
[ ]   The petitioner has incurred separate liabilities as set forth in Exhibit _____.   This exhibit is attached or filed and incorporated by reference as part of these findings.
[ ]   The parties have separate liabilities as set forth in the separation contract or prenuptial agreement referenced above.
[ ]   The respondent has incurred separate liabilities as set forth in Exhibit _____.   This exhibit is attached or filed and incorporated by reference as part of these findings.

[ ]   The petitioner has incurred the following separate liabilities:

| Creditor | Amount |
|----------|--------|

[ ]   The respondent has incurred the following separate liabilities:

| Creditor | Amount |
|----------|--------|

[ ]   Other:

## 2.12   Maintenance

[X]   Maintenance was not requested.
[ ]   Maintenance shall be paid as set forth in the separation contract or prenuptial agreement referenced above.
[ ]   Maintenance should not be ordered because:

[ ]   Maintenance should be ordered because:

[ ]   Other:

## 2.13   Continuing Restraining Order

[X]   Does not apply.

*Fndngs of Fact and Concl of Law (FNFCL) – Page 5 of 10*
*WPF DR 04.0300 Mandatory (12/2012) – CR 52; RCW 26.09.030; .070(3)*

[ ]    A continuing restraining order against the [ ] petitioner [ ] respondent [ ] both parties is necessary because:

[ ]    Other:

## 2.14   Protection Order

[X]    Does not apply.
[ ]    The [ ] domestic violence [ ] antiharassment Order for Protection signed by the court on this date or dated _____, is approved and incorporated as part of these findings.

## 2.15   Fees and Costs

[X]    There is no award of fees or costs.
[ ]    Attorney fees, other professional fees and costs shall be paid as set forth in the separation contract or prenuptial agreement referenced above.
[ ]    The [ ] petitioner [ ] respondent has the need for the payment of fees and costs and the other spouse has the ability to pay these fees and costs. The [ ] petitioner [ ] respondent has incurred reasonable attorney fees and costs in the amount of $_____.
[ ]    Other:

## 2.16   Pregnancy

[X]    Neither spouse is pregnant.
[ ]    (Name) _____ is pregnant. **Note: Under RCW 26.26.116, the other spouse is the presumed parent. If petitioner or respondent believes the other spouse is not the parent, this presumption may be challenged up to four years after the birth of the child or as otherwise provided in RCW 26.26.500 through 26.26.625.**

[ ]    Other:

## 2.17   Dependent Children

[X]    The parties have no dependent children of this marriage.
[ ]    The children listed below are dependent upon either or both spouses.

| Name of Child | Age | Parent's Name | Parent's Name |
| --- | --- | --- | --- |

[ ]      Other:

## 2.18   Jurisdiction Over the Children

[X]      Does not apply because there are no dependent children.
[ ]      This court does not have jurisdiction over the children.
[ ]      This court has jurisdiction over the children for the reasons set forth below:

    [ ]      This court has exclusive continuing jurisdiction. The court has previously made a child custody, parenting plan, residential schedule or visitation determination in this matter and retains jurisdiction under RCW 26.27.211.

    [ ]      This state is the home state of the children because:

        [ ]      the children lived in Washington with a parent or a person acting as a parent for at least six consecutive months immediately preceding the commencement of this proceeding.
        [ ]      the children are less than six months old and have lived in Washington with a parent or a person acting as parent since birth.
        [ ]      any absences from Washington have been only temporary.
        [ ]      Washington was the home state of the children within six months before the commencement of this proceeding and the children are absent from the state but a parent or person acting as a parent continued to live in this state.

    [ ]      The children and the parents or the children and at least one parent or person acting as a parent, have significant connection with the state other than mere physical presence; and substantial evidence is available in this state concerning the children's care, protection, training and personal relationships; and

        [ ]      the children have no home state elsewhere.
        [ ]      the children's home state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under RCW 6.27.261 or .271.

    [ ]      All courts in the children's home state have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the children under RCW 26.27.261 or .271.

    [ ]      No other state has jurisdiction.

    [ ]      This court has temporary emergency jurisdiction over this proceeding because the children are present in this state and the children have been abandoned or it is necessary in an emergency to protect the children because the children, or a

sibling or parent of the children is subjected to or threatened with abuse. RCW 26.27.231.

[ ]     There is a previous custody determination that is entitled to be enforced under this chapter or a child custody proceeding has been commenced in a court of a state having jurisdiction under RCW 26.27.201 through 26.27.221. The requirements of RCW 26.27.231(3) apply to this matter. This state's jurisdiction over the children shall last until (date) _____.

[ ]     There is no previous custody determination that is entitled to be enforced under this chapter and a child custody proceeding has not been commenced in a court of a state having jurisdiction under RCW 26.27.201 through 26.27.221. If an action is not filed in (potential home state) _____ by the time the child has been in Washington for six months, (date) _____, then Washington's jurisdiction will be final and continuing.

[ ]   Other:


## 2.19   Parenting Plan

[X]   Does not apply.
[ ]   The parenting plan signed by the court on this date or dated _____, is approved and incorporated as part of these findings.

        [ ]     This parenting plan is the result of an agreement of the parties.
        [ ]     Other:


## 2.20   Child Support

[X]   Does not apply.
[ ]   There are children in need of support and child support should be set pursuant to the Washington State Child Support Schedule. The Order of Child Support signed by the court on this date or dated _____, and the child support worksheet, which has been approved by the court, are incorporated by reference in these findings.
[ ]   Other:


## 2.21   Other

### III.   Conclusions of Law

The court makes the following conclusions of law from the foregoing findings of fact:

### 3.1   Jurisdiction

[X]   The court has jurisdiction to enter a decree in this matter.
[ ]   Other:

### 3.2   Granting a Decree

[X]   The parties should be granted a decree.
[ ]   Other:

### 3.3   Pregnancy

[X]   Does not apply.
[ ]   (Name) _____ is pregnant. Any challenge to the other spouse's presumed
      parentage shall be initiated by: 1) signing and filing a valid denial of paternity and a
      valid acknowledgement of paternity under RCW 26.26.300 through 26.26.375; or, 2) a
      proceeding to determine the parentage of the unborn child under RCW 26.26.500 through
      26.26.625.

### 3.4   Disposition

The court should determine the marital status of the parties, make provision for a parenting plan
for any minor children of the marriage, make provision for the support of any minor child of the
marriage entitled to support, consider or approve provision for maintenance of either spouse,
make provision for the disposition of property and liabilities of the parties, make provision for the
allocation of the children as federal tax exemptions, make provision for any necessary continuing
restraining orders, and make provision for the change of name of any party. The distribution of
property and liabilities as set forth in the decree is fair and equitable.

### 3.5 Continuing Restraining Order

[X] Does not apply.
[ ] A continuing restraining order should be entered.

### 3.6 Protection Order

[X] Does not apply.
[ ] A [ ] domestic violence [ ] antiharassment Order for Protection should be entered.

### 3.7 Attorney Fees and Costs

[X] Does not apply.
[ ] Attorney fees, other professional fees and costs should be paid.

### 3.8 Other

Dated: _7/9/14_____          _____
                                          ~~Judge~~/Commissioner *Pro Tem*

                                          Approved for entry:
                                          Notice of presentation waived:

Presented by:

_____          _____
Signature of Party or Lawyer/WSBA No.     Signature of Party or Lawyer/WSBA No.

Caroline B. Bigelow      7/9/16           7/9/14  James A. Bigelow
Print or Type Name         Date           Print or Type Name         Date



STATE OF WASHINGTON } ss.
COUNTY OF SNOHOMISH

   I, SONYA KRASKI,  Clerk of the above entitled Court,
do hereby certify that the foregoing instrument is a true
and correct copy of the original now on file in my office.
   In witness whereof, I  hereunto set my hand and the
Seal of the said
Court this_____day of MAR 1 6 2015, 20_____
          SONYA  KRASKI, County Clerk

                                   Deputy

-

# EXHIBIT D

***CERTIFIED COPY***

FILED

2014 JUL -9 PM 3: 54

SONYA KRASKI
COUNTY CLERK
SNOHOMISH CO. WA



CL16785045

## Superior Court of Washington
## County of SNOHOMISH

In re the Marriage of:

*Carolyn G. Bigelow*

Petitioner,

and

*James A. Bigelow*

Respondent.

No. *153 022062*

[✓] **Decree of Dissolution (DCD)**
[ ] **Decree of Legal Separation (DCLGSP)**
[ ] **Declaration Concerning Validity (DCINMG) (Marriage)**

[ ] Clerk's action required
[ ] Law Enforcement Notification, ¶ 3.8

### I. Judgment Summaries

#### 1.1 Real Property Judgment Summary:

[ ] Does not apply.   [✓] Real Property Judgment Summary is set forth below:

| Name of Grantor: | Name of Grantee: |
|---|---|
| Assessor's property tax parcel or account number: | |
| Or | |

| Legal description of the property awarded (including lot, block, plat, or section, township, range, county and state): |
|---|
| *10018 Cascadian Ave. SE    Yelm, WA    98597* |

| | See Page _____ | for full legal description |
|---|---|---|

#### 1.2 Money Judgment Summary:

[✓] Does not apply.   [ ]   Judgment Summary is set forth below.

A. Judgment creditor _____
B. Judgment debtor _____
C. Principal judgment amount                              $ _____
D. Interest to date of judgment                            $ _____
E. Attorney fees                                                    $ _____
F. Costs                                                                 $ _____
G. Other recovery amount                                    $ _____
H. Principal judgment shall bear interest at _____ % per annum

Decree (DCD) (DCLGSP) (DCINMG) - Page 1 of 7
WPF DR 04.0400 Mandatory (12/2012) - RCW 26.09.030; .040; .070 (3)

ORIGINAL

CLOSED

*15*

I. Attorney fees, costs and other recovery amounts shall bear interest at _____ % per annum
J. Attorney for judgment creditor      _____
K. Attorney for judgment debtor      _____
L. Other:

## *End of Summaries*

## II. Basis

Findings of Fact and Conclusions of Law have been entered in this case.

## III. Decree

### *It Is decreed* that:

### 3.1   Status of the Marriage

[X]   The marriage of the parties is dissolved.
[ ]   The petitioner and respondent are legally separated.
[ ]   The marriage of the parties is invalid.
[ ]   The marriage of the parties is valid.

### 3.2   Property to be Awarded the Petitioner

[ ]   The petitioner is awarded as separate property the property set forth in Exhibit _____. This exhibit is attached or filed and incorporated by reference as part of this decree.

[ ]   The petitioner is awarded as separate property the property set forth in the separation contract or prenuptial agreement executed by the parties on (date) _____.
The separation contract or prenuptial agreement is incorporated by reference as part of this Decree. The prenuptial agreement or, pursuant to RCW 26.09.070(5), the separation contract [ ] is [ ] is not filed with the court.

[X]   The petitioner is awarded as separate property the following property (list real estate, furniture, vehicles, pensions, insurance, bank accounts, etc.):

50% proceed of sale of residence

[ ]   Other:

**3.3     Property to be Awarded to the Respondent**

[ ]     The respondent is awarded as separate property the property set forth in Exhibit _____.
This exhibit is attached or filed and incorporated by reference as part of this decree.

[ ]     The respondent is awarded as separate property the property set forth in the separation
contract or prenuptial agreement referenced above.

[X]    The respondent is awarded as separate property the following property (list real estate,
furniture, vehicles, pensions, insurance, bank accounts, etc.):

50% of procced of Sale of residence

[ ]     Other:

**3.4     Liabilities to be Paid by the Petitioner**

[ ]     Does not apply.

[ ]     The petitioner shall pay the community or separate liabilities set forth in Exhibit _____.
This exhibit is attached or filed and incorporated by reference as part of this decree.

[ ]     The petitioner shall pay the community or separate liabilities as set forth in the separation
contract or prenuptial agreement referenced above.

[X]    The petitioner shall pay the following community or separate liabilities:

<u>Creditor</u>                                                           <u>Amount</u>

50% of Mortage 2nd                          60.00 per mo.
TrendWest Account is closed
if house is foreclosed on I am responsible
for 1/2 of fees.

[ ]     Other:

Unless otherwise provided herein, the petitioner shall pay all liabilities incurred by the petitioner since the date of separation.

**3.5    Liabilities to be Paid by the Respondent**

[ ]    Does not apply.

[ ]    The respondent shall pay the community or separate liabilities set forth in Exhibit _____. This exhibit is attached or filed and incorporated by reference as part of this decree.

[ ]    The respondent shall pay the community or separate liabilities as set forth in the separation contract or prenuptial agreement referenced above.

[X]    The respondent shall pay the following community or separate liabilities:

Creditor                                                                        Amount

— 50% of 2ND Mortage of Sale of residence

— RESPONSIBLE FOR MODIFICATION OF 1ST MORTGAGE AND THE PAYMENTS 100%

— IF WE ARE FORCLOSED ON I AM RESPONSIBLE FOR 1/2 OF ANY FEE's.

— TREND WEST ACCOUNT IS CLOSED.

[ ]    Other:

Unless otherwise provided herein, the respondent shall pay all liabilities incurred by the respondent since the date of separation.

**3.6    Hold Harmless Provision**

[X]    Each party shall hold the other party harmless from any collection action relating to separate or community liabilities set forth above, including reasonable attorney's fees and costs incurred in defending against any attempts to collect an obligation of the other party.

[ ]    Other:

**3.7    Maintenance**

[X]    Does not apply.

[ ]    The [ ] petitioner [ ] respondent shall pay maintenance as set forth in Exhibit _____. This exhibit is attached or filed and incorporated by reference as part of this decree.

[ ]    Maintenance shall be paid as set forth in the separation contract or prenuptial agreement referenced above.

[ ]    The [ ] petitioner [ ] respondent shall pay $ _____ maintenance. Maintenance shall be paid [ ] weekly [ ] semi-monthly [ ] monthly. The first maintenance payment shall be due on (date) _____.

The obligation to pay future maintenance is terminated upon the death of either party or the remarriage of the party receiving maintenance unless otherwise specified below:

Payments shall be made:

    [ ]   directly to the other spouse.
    [ ]   to the Washington State Child Support Registry (only available if child support is ordered).
    [ ]   to the clerk of this court as trustee for remittance to the other spouse (only available if there are no dependent children).

[ ]   If a maintenance payment is more than 15 days past due and the total of such past due payments is equal to or greater than $100, or if the obligor requests a withdrawal of accumulated contributions from the Department of Retirement Systems, the obligee may seek a mandatory benefits assignment order under Chapter 41.50 RCW without prior notice to the obligor.

[ ]   The Department of Retirement Systems may make a direct payment of all or part of a withdrawal of accumulated contributions pursuant to RCW 41.50.550(3).

[ ]   Other:

## 3.8   Restraining Order

[X]   No temporary personal restraining orders have been entered under this cause number.

[ ]   All **temporary Restraining Order(s)** signed by the court under this cause number are terminated. **Clerk's Action.** The clerk of the court shall forward a copy of this order, on or before the next judicial day to: _____ law enforcement agency where **the protected person** resides which shall enter this order into any computer-based criminal intelligence system available in this state used by law enforcement agencies to list outstanding warrants.

[ ]   The parties shall comply with the final Restraining Order signed by the court on this date or dated _____, under this cause number. The Restraining Order signed by the court is approved and incorporated as part of this decree.

## 3.9   Protection Order

[X]   Does not apply.
[ ]   The parties shall comply with the [ ] domestic violence [ ] antiharassment Order for Protection signed by the court on this date or dated _____, in this cause number. The Order for Protection signed by the court is approved and incorporated as part of this decree.

## 3.10   Jurisdiction Over the Children

[X]   Does not apply because there are no dependent children.

[ ]   The court has jurisdiction over the children as set forth in the Findings of Fact and
      Conclusions of Law.

## 3.11   Parenting Plan

[X]   Does not apply.
[ ]   The parties shall comply with the Parenting Plan signed by the court on this date
      or dated _____. The Parenting Plan signed by the court is
      approved and incorporated as part of this decree.

## 3.12   Child Support

[X]   Does not apply.
[ ]   Child support shall be paid in accordance with the Order of Child Support signed by the
      court on this date or dated _____. This order is incorporated as part
      of this decree.

## 3.13   Attorney Fees, Other Professional Fees and Costs

[X]   Does not apply.
[ ]   Attorney fees, other professional fees and costs shall be paid as set forth in the separation
      contract or prenuptial agreement referenced above.
[ ]   Attorney fees, other professional fees and costs shall be paid as follows:

## 3.14   Name Changes

[ ]   Does not apply.
[ ]   The respondent's name shall be changed to
      (first, middle, last name) _____.
[X]   The petitioner's name shall be changed to
      (first, middle, last name) *Carolyn Gayle Willey*

## 3.15   Other

Dated: _7/9/14_____                    _____
                                               ~~Judge~~/Commissioner *Pro Tem*

*Decree (DCD) (DCLGSP) (DCINMG) - Page 6 of 7*
*WPF DR 04.0400 Mandatory (12/2012) - RCW 26.09.030; .040; .070 (3)*

Petitioner or petitioner's lawyer:
A signature below is actual notice of this order.
[X] Presented by:
[ ] Approved for entry:
[ ] Notice for presentation waived:

_____
Signature of Petitioner or Lawyer/WSBA No.

Carolyn G. Bigelow          7/9/14
Print or Type Name          Date

Respondent or respondent's lawyer:
A signature below is actual notice of this order.
[ ] Presented by:
[X] Approved for entry:
[ ] Notice for presentation waived:

_____
Signature of Respondent or Lawyer/WSBA No.

James A. Bigelow          7/9/14
Print or Type Name          Date





STATE OF WASHINGTON
COUNTY OF SNOHOMISH     } ss.

    I, SONYA KRASKI, Clerk of the above entitled Court,
do hereby certify that the foregoing instrument is a true
and correct copy of the original now on file in my office.
    In witness whereof, I hereunto set my hand and the
Seal of the said

Court this_____day of **MAR 1 6 2015**, 20_____

SONYA KRASKI, County Clerk

_____ Deputy