**WRIGHT, FINLAY & ZAK, LLP**
Renee M. Parker, Esq., WSBA No. 36995
Ryan M. Carson, Esq., WSBA No. 41057
Washington Office:
3600 15th Ave W, Suite 200
Seattle, WA 98119
Main Office:
4665 MacArthur Court, Suite 200
Newport Beach, CA  92660
Tel: (949) 610-7023; Fax: (949) 477-9200
rmparker@wrightlegal.net

Attorney for DITECH FINANCIAL LLC as successor in interest to GREEN TREE LOAN SERVICING LLC, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., WRIGHT, FINLAY & ZAK, LLP and RENEE M. PARKER, ESQ.

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON (TACOMA)**

| | |
|---|---|
| JAMES A. BIGELOW<br><br>                    Plaintiff,<br><br>vs.<br><br>NORTHWEST TRUSTEE SERVICES, INC.; GREEN TREE SERVICING, LLC; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; WRIGHT, FINLAY & ZAK, LLP, TICOR TITLE COMPANY, NATIONWIDE TITLE INSURANCE COMPANY, RENEE PARKER, AND DOE DEFENDANTS 1-20,<br><br>                    Defendants. | Case No.: 3:14-cv-05798 BHS<br><br><br>**MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS GREEN TREE SERVICING LLC, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., WRIGHT, FINLAY & ZAK, LLP AND RENEE PARKER**<br><br>Noting Date: June 24, 2016 |

I.     RELIEF REQUESTED

        DITECH FINANCIAL LLC as successor in interest to GREEN TREE LOAN SERVICING LLC, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., WRIGHT, FINLAY & ZAK, LLP  and RENEE M. PARKER, ESQ. (erroneously sued as Renee Parker) (hereafter, "Defendants" collectively), by and through its counsel of record, Renee M. Parker of

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
(3:14-cv-05798 BHS)

1

Wright, Finlay & Zak, LLP
3600 15th Ave. W, Suite 200
Seattle, WA 98119

1  Wright, Finlay & Zak, LLP, hereby bring this Motion for Summary Judgment on the grounds that

2  there is no triable issue of material fact in this matter and that the Defendants are entitled to

3  judgment as a matter of law.

II.   IDENTIFICATION OF PARTIES AND STATEMENT OF FACTS

**A. <u>IDENTIFICATION OF PARTIES AND PROPERTY</u>**

6      JAMES BIGELOW ("Plaintiff" singularly) is the sole Plaintiff in the instant litigation.

7  The Subject Property, defined below, is owned by Plaintiff and non-party CAROLYN BIGELOW

8  (hereinafter "Borrowers" collectively).

9      The real property at issue is commonly known as 10018 CASCADIAN AVENUE SE,

10  YELM, WASHINGTON 98597 ("Subject Property"), and legally described in the Deed of Trust.

11      DITECH FINANCIAL LLC as successor in interest to GREEN TREE LOAN

12  SERVICING LLC (hereinafter "Green Tree" collectively) services the Loan on behalf of the

13  Federal National Mortgage Association ("Fannie Mae"), and is the holder of the Note. Green Tree

14  is the assignee of the Deed of Trust. Green Tree and Ditech Financial LLC ("Ditech") are both

15  Delaware limited liability corporations currently registered with the Washington Secretary of

16  State to conduct business in Washington State under UBI No. 602302513.  Fannie Mae is a

17  federally chartered corporation having a principal office in Washington, DC.

18      MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), a

19  Delaware corporation with its principal place of business in Virginia, is identified as the original

20  beneficiary under the Deed of Trust as nominee for  the original lender, lender's successors and/or

21  assigns. MERS does not "conduct business" in the State of Washington pursuant to RCW

22  23B.15.010(2)(g)–(h).

23      Wright Finlay and Zak, LLP ("WFZ") is the law firm representing Ditech, Green Tree and

24  MERS, and Renee M. Parker ("Parker") is its attorney of record in this action. Parker is licensed

25  as an attorney under Washington State Bar Association No. 36995.

26  //

27  //

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
(3:14-cv-05798 BHS)

2

Wright, Finlay & Zak, LLP
3600 15th Ave. W, Suite 200
Seattle, WA 98119

## B. <u>STATEMENT OF FACTS</u>

On or about April 25, 2007 the Borrowers executed a promissory note in the amount of $233,899.00 in favor of Pierce Commercial Bank.  ("Note") A true and correct copy of the original Note is attached as **Exhibit "A"** to the Declaration of Ditech Financial LLC as Successor in Interest to Green Servicing LLC in Support of Motion for Summary Judgment ("Green Tree Declaration"). Pierce Commercial Bank is a failed bank, and was closed on November 5, 2010; the Federal Deposit Insurance Corporation ("FDIC") was named as receiver.[1]

The Note is secured by a Deed of Trust encumbering the Subject Property, and to which MERS was identified as the beneficiary in a nominee capacity for the lender and lender's successors and assigns; the Deed of Trust was recorded with the Thurston County Auditor on April 27, 2007 as Instrument No. 3922368.[2]   The Note and Deed of Trust are collectively referenced herein as the "Loan."

The Loan was transferred to Green Tree on or about December 1, 2011.[3] The Corporate Assignment of Deed of Trust ("Assignment") was recorded with the Thurston County Auditor on April 20, 2012 as Instrument No. 4261697.[4] Green Tree appointed NWTS as successor trustee on or about May 14, 2012; an Appointment of Successor Trustee was recorded on or about May 18, 2012.[5]

Ditech merged with Green Tree on or about September 2, 2015 and Ditech was the surviving corporation.[6] Green Tree and Ditech were both owned by Walter Investment Management Corp. prior to this merger.[7]  Ditech, as successor in interest to Green Tree, currently holds the Note and also services of the Loan on behalf of Fannie Mae.[8]

---

[1] https://www.fdic.gov/bank/individual/failed/piercecommercial.html.  See also, SAC (Dkt. 44) at ¶ 52.
[2] Request for Judicial Notice ¶ 1, Ex. 1 (hereinafter "RJN")
[3] Green Tree Decl. at ¶ 8.
[4] RJN at ¶ 2, Ex. 2.
[5] RJN at ¶ 3, Ex. 3.
[6] Green Tree Decl. at ¶ 2.
[7] Id. at ¶ 3.
[8] Id. at ¶¶ 11-12.

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
(3:14-cv-05798 BHS)

3

Wright, Finlay & Zak, LLP
3600 15th Ave. W, Suite 200
Seattle, WA 98119

Beginning with the payment due November 1, 2011, Borrowers failed to perform monthly payment obligations and defaulted under the Loan.[9]   A Notice of Default was sent to the Borrowers on or about May 10, 2012,[10] but Borrowers failed to cure the default.   A Notice of Trustee's Sale, setting a sale date of August 29, 2014, was recorded April 30, 2014 as Instrument No. 4389907.[11]

On or around Oct. 7, 2014 Plaintiff James A. Bigelow ("Plaintiff") filed a "Verified Complaint"[12] against Defendants Green Tree and MERS alleging: (1) violation of the Fair Debt Collection Practices Act ("FDCPA"); (2) violation of the Washington Deeds of Trust Act ("DTA"); and (3) violation of the Washington Consumer Protection Act ("CPA") (hereinafter referenced as the "Complaint").[13]   Plaintiff also filed an ex parte motion for a Temporary Restraining Order ("TRO") to stop a scheduled foreclosure sale.[14]   Plaintiff's TRO was denied October 7, 2014.[15]   Defendants respectfully requests this Court take judicial notice of all documents filed by Plaintiff under penalty of perjury.

On Nov. 13, 2014 Plaintiff filed an "Amended Verified Complaint" in which Plaintiff made essentially the same allegations against the same parties. Defendants filed a Motion to Dismiss Plaintiff's Amended Complaint ("First Dismissal Motion") on December 2, 2014[16] Defendants respectfully requests this Court take judicial notice of all documents filed by Defendants in this case to date. Defendants First Dismissal Motion was granted with leave to amend,[17] and plaintiff was ordered to join Carolyn Bigelow to the litigation.[18]   Dkt. 35 at ¶ 2.

---

[9] Id. at ¶ 7.
[10] RJN at ¶ 4, Ex. 4
[11] RJN at ¶ 5, Ex. 5.
[12] In his Complaint, Plaintiff clearly and plainly admits to executing the Note at issue.  See Docket No. 1 at ¶ 11. Later versions of Plaintiff's Complaint state he "allegedly" executed the Note.  See, Docket Nos. 11 and 44.
[13] Docket No. 1.
[14] Docket No. 2.
[15] Docket No. 3.
[16] Docket Nos. 15-17.
[17] Docket No. 35.
[18] Docket 35 at 2.

4                    Wright, Finlay & Zak, LLP
3600 15th Ave. W, Suite 200
Seattle, WA 98119

1    Without joining Carolyn Bigelow to the litigation **in defiance of this Court's order to do**

2    **so**, Plaintiff filed a Second Amended Complaint on February 23, 2015[19] (hereinafter "SAC"), in

3    which Plaintiff alleged against Defendants: (1) Violation of the FDCPA; (2) Violation of the CPA;

4    (3) Slander of Title; and (4) Infliction of Emotional Distress.  In this complaint Plaintiff also added

5    Defendants' attorney of record and her law firm as defendants in the litigation based on the sole

6    allegation that "Parker filed her own version of an alleged Promissory Note," that "Parker never

7    had possession of Plaintiff's alleged original Note" and that there was no "stamp affixed to it from

8    TTC certifying this Note to be a copy of the original Note."[20]

9    Defendants filed its Motion to Dismiss Plaintiff's Second Amended Complaint ("Second

10   Dismissal Motion") March 20, 2015.[21]   The Second Dismissal Motion was granted in part and

11   denied in part; the CPA and IIED claims survived as to all Defendants, and the additional FDCPA

12   claim also remained as to Green Tree.[22]

13   WFZ and Parker also successfully moved to strike plaintiff's SAC for Anti-SLAPP

14   Violations ("Anti-SLAPP Motion").[23] However, plaintiff sought reconsideration based on case

15   law, available to him prior, involving actions with a jury trial, and the order granting the Anti-

16   SLAPP motion was vacated.[24]   In addition, plaintiff has consistently refused to cooperate with

17   Defendants' discovery attempts - including repeated non-appearances for depositions scheduled by

18   Defendants, and filing excessive motions.[25]

19   ### III.  EVIDENCE RELIED UPON

20   This Motion is based upon the records and pleadings filed herein, the Request for Judicial

21   Notice and the Declarations of Green Tree and Renee M. Parker, together with the exhibits

22   attached thereto filed with this Motion.

23

---

24   [19] Docket 44.
     [20] Docket 44 at ¶¶ 165-66, 169-70.
25   [21] Docket 65-66.
     [22] Docket 92.
26   [23] Docket 60.
     [24] Docket 105.
27   [25] Defendants' Motion for Terminating Sanctions is still pending before this Court. Docket No. 124, 127, 129.

IV.  ISSUE PRESENTED

Whether summary judgment is appropriate where, as here, there are no disputed material facts and the Defendants are entitled to judgment as a matter of law.

V.   AUTHORITY AND ARGUMENT

**A.   STANDARD OF REVIEW ON SUMMARY JUDGMENT**

Summary judgment is appropriate where the "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FRCP 56(a).  A fact is material if it may affect the outcome of litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  Summary judgment is available in one of two ways: the moving party may "(1) set out its version of the facts and allege that there is no genuine issue based on those facts; or (2) point out to the court that the nonmoving party lacks sufficient evidence to support its case." *Seybold v. Neu*, 105 Wash. App. 666, 677, 19 P.3d 1068 (2001) (citations omitted) (cited with approval in *Fiedler v. VA*, No. C06-5708 RBL, 2008 U.S. Dist. LEXIS 4048, at *4-5, 2008 WL 80236 (W.D. Wash. Jan. 7, 2008) ("summary judgment should be granted where the non-moving party fails to offer evidence from which a reasonable jury could return a verdict in its favor.")).

Once a moving party meets its burden to show there is no genuine issue as to any material fact, the nonmoving party must set forth specific facts rebutting the moving party's contention and disclosing that a genuine issue of material fact exists. *Liberty Lobby*, 477 U.S. at 256 ("The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a jury verdict. Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case" summary judgment should be granted. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed.2d 265 (1986). "Under Washington law, statements of ultimate facts, conclusions of fact, and conclusory

| DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (3:14-cv-05798 BHS) | 6 | Wright, Finlay & Zak, LLP 3600 15th Ave. W, Suite 200 Seattle, WA 98119 |

1  statements of fact are insufficient for summary judgment purposes." *Ballen v. City of Redmond*,

2  466 F.3d 736, 745 (9th Cir. 2006) (citing *Grimm v. Univ. of Puget Sound*, 110 Wn.2d 355, 753

3  P.2d 355 (1988)).

4  ## PLAINTIFF FAILED TO EXHAUST THE ADMINISTRATIVE CLAIMS PROCESS OF FIRREA AND IS BARRED FROM ADJUDICATING HIS CLAIM HERE

5    Plaintiff failed-to comply with congressionally mandated administrative claims process

6  because Plaintiff's claims are explicitly premised on and related to the assets of the original lender,

7  Pierce Commercial Bank. The Financial Institutions Reform, Recovery, and Enforcement Act of

8  1989 ("FIRREA") requires that any claims (i) relating to any act or omission of a failed bank or the

9  FDIC, or (ii) for payments from, or a determination of rights with respect to the assets of a failed

10  bank or the FDIC be brought through FIRREA's administrative claims process before any court

11  can obtain subject matter jurisdiction over those claims. 12 U.S.C. § 1821(d)(13)(D). The Ninth

12  Circuit has consistently held that the failure to exhaust FIRREA's administrative claims process is

13  a bar to jurisdiction: "Section 1821(d)(13)(D) strips all courts of jurisdiction over claims made

14  outside the administrative procedures of section 1821." *Henderson v. Bank of New England*, 986 F.

15  2d 319, 320 (9th Cir. 1993); *McCarthy v. FDIC*, 348 F.3d 1075, 1081 (9th Cir. 2004) (Claimants

16  "must exhaust administrative requirements of § 1821(d), no jurisdiction exists over its action.")

17    Here, plaintiff's claims focus in part on the acts and omissions of Pierce Commercial Bank.

18  For example, Plaintiff alleges that "[p]ursuant to the alleged Note, any provision that requires

19  action of the [lender] requires the action of PCB [Pierce Commercial Bank] and not the note

20  holder….PCB is and always will be the [only] entity that the Plaintiff has borrowed money

21  from."[26] "At no time relevant has the true and lawful owner ever declared Plaintiff to be in

22  default."[27]  Thus, Plaintiff's claims are barred by 12 U.S.C. §1821(d)(13)(D)(ii) absent exhaustion

23  of FIRREA's administrative remedies.

24    Plaintiff also cannot avoid the requirements of FIRREA by stating claims solely against

25  Green Tree or MERS because courts have also held that the plain language of FIRREA broadly

26

27  [26] Docket No. 44 at ¶ 30
 [27] Id. at ¶ 110.

---

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (3:14-cv-05798 BHS)

7

Wright, Finlay & Zak, LLP 3600 15th Ave. W, Suite 200 Seattle, WA 98119

applies to: (a) "any claim relating to any act" of the failed bank or the FDIC as receiver, even if the FDIC and the failed bank are not named as defendants; and (b) any "action seeking a determination of rights with respect to the assets of any depository institution for which the Corporation has been appointed receiver," even if the assets are no longer in the possession of the FDIC, which is the case here. 12 U.S.C. § 1821(d)(13)(D); *See Village of Oakwood v. State Bank and Trust Co.*, 539 F.3d 373, 386 (6th Cir. 2008) (holding that claims against purchaser of failed bank assets from FDIC were barred by 12 U.S.C. § 1821(d)(13)(D)(ii) as "directly related to or omissions of the FDIC as the receiver of [the failed bank]"); *Am. First Fed, Inc. v. Lake Forest Park, Inc.*, 198 F.3d 1259, 1263 n.3 (11th Cir. 1999) ("AFF, having purchased the note from the RTC, stands in the shoes of the RTC and acquires its protected status under FIRREA. Thus, if Lake Forest is barred [by Section 1821(d)] from asserting this claim against the RTC, it is similarly barred from asserting it against AFF.").  As is the case here, in *Benson v. JPMorgan Chase Bank, NA.*, 673 F.3d 1207, 1214 (9th Cir. 2012), the Court held FIRREA's jurisdictional bar applies to claims asserted against a purchasing bank when the claim is based on the conduct of the failed institution.

Here, Plaintiff's claims are governed by FIRREA. Regardless of whom Plaintiff names as a defendant, his claims relate to alleged acts and omissions of the original lender, a failed bank; thus, since Plaintiff never participated in FIRREA's administrative claims process, this court lacks jurisdiction over these claims.

## C.   PLAINTIFF FAILED TO JOIN A NECESSARY PARTY DESPITE A COURT ORDER TO DO SO, AND PLAINTIFF IS UNABLE TO JOIN THE PARTY NOW

Despite an Order from this Court entered on January 29, 2015[28] Plaintiff failed to join Carolyn Bigelow to this litigation,[29] and the deadline passed on April 21, 2016.[30] FRCP 19(a)(1) requires a person be joined to the litigation if:

> in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest

---

[28] Docket No. 35 at ¶ 2.
[29] See, e.g., Docket No. 92 at 9 ("The only showing that has been made is Bigelow's refusal to follow an explicit Court order, which carries its own remedies.").
[30] Docket No. 115

1

2

> relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

3

4

5    If a person has not been joined, the court shall order that the person be made a party either as a

6    plaintiff, a defendant, or an involuntary plaintiff. FRCP 19(a)(2). In order to dismiss for failure to

7    join a necessary party, the Court must find that the party is indispensable, the party may not be

8    joined, and the case cannot proceed "in equity and good conscience" without that party. *EEOC v.*

9    *Peabody W. Coal Co.*, 400 F.3d 774, 779-80 (9th Cir. 2005). Litigation may be dismissed where an

10   indispensable party cannot be joined. FRCP 12(b)(7).

11          First, Carolyn Bigelow is indispensable because: (1) James Bigelow and Carolyn Bigelow

12   are co-obligors under the Note and Deed of Trust, (2) Carolyn Bigelow specifically retained a one-

13   half interest in the Subject Property in the dissolution of her marriage from James Bigelow, and (3)

14   Carolyn Bigelow sought to prohibit James Bigelow from taking any action with respect to the

15   Subject Property without the express, written (and notarized) consent of both Carolyn and James

16   Bigelow.[31]

17          Second, any decision of this Court in favor of Plaintiff would unfairly dispose of an action

18   in the absence of Carolyn Bigelow, who is contractually entitled to any profit and/or contractually

19   obligated to pay 50% of all fees related to foreclosure.[32]

20          Third, this Court ordered Plaintiff to join Carolyn Bigelow to the present litigation, and

21   Plaintiff was allowed to amend the Complaint with the specific purpose of joining her.[33]  Plaintiff

22   attempted to avoid compliance with the order by filing his "Note to the Court,"[34] wherein Plaintiff

23   glibly explains his inability' to join Carolyn Bigelow due to their divorce, without further

24

---

25   [31] See RJN at ¶ 6(a) Ex. 6-A, 6-D at ¶¶ 3.2, 3.3 3.4, and 3.5
26   [32] See RJN Ex. 6-D in which both Carolyn and James Bigelow retained the right to claim 50% proceeds from sale of the Subject Property, or in the alternative, each retained 50% liability for any fees related to foreclosure.
     [33] Docket No. 35 at 5-6.
27   [34] Docket No. 47.

---

1  explanation (and with knowledge that Carolyn Bigelow expressly retained her right to be involved

2  with monetary disposition of the Subject Property).[35]

3        Fourth, Carolyn Bigelow has an interest in this litigation, and "resolving the action in [her]

4  absence may leave [Defendants] subject to inconsistent obligations because of that interest." *Salt

5  River Project Agr. Imp. And Power Dist. V. Lee*, 672 F.3d 1176, 1179 (9th Cir. 2014).  A ruling in

6  this case, without inclusion of Carolyn Bigelow, leaves Defendants "subject to a substantial risk of

7  incurring double, multiple, or otherwise inconsistent obligations" by proceeding without her. *Id.*;

8  *see also* FRCP 19(a)(1)(B)(ii).

9        The deadline to add Carolyn Bigelow passed on April 21, 2016.[36]  Plaintiff had an entire

10 year to add Carolyn Bigelow before this deadline, but explicitly refused to do so.[37]  Accordingly,

11 Plaintiff's case must be dismissed with prejudice due to Plaintiff's failure, and blatant refusal, to

12 join Carolyn Bigelow as a party to this action as ordered.

13    **C.    PLAINTIFF'S "PER SE CONSUMER PROTECTION ACT" CLAIM FAILS**

14       In support of the alleged "per se" CPA violation Plaintiff offers only the following

15 rationale: (1) MERS was a named beneficiary on the Deed of Trust, which rendered the document

16 unenforceable in its entirety SAC ¶¶ 19-20, 43-44, 50, 78-79; (2) MERS is not a party to the Note

17 SAC ¶ 19; and (3) the Note does not bear dated endorsements SAC ¶¶ 33. Plaintiff claims these

18 issues alone caused all other documents executed at a later time to be invalid. SAC ¶¶ 55, 108.

19       The "purpose of the Consumer Protection Act [is] to protect the public from acts or

20 practices which are injurious to consumers and not to provide an additional remedy for private

21 wrongs which do not affect the public generally." *Lightfoot v. Macdonald*, 86 Wash. 2d 331, 333,

22 544 P.2d 88 (1976).  "Acts performed in good faith under an arguable interpretation of existing law

23 do not constitute unfair conduct violative of the consumer protection law." *Perry v. Island Sav. &*

24 *Loan Ass'n,* 101 Wash. 2d 795, 810, 684 P.2d 1281 (1984).

25 ─────────────────
26 [35] RJN at ¶ 6, Ex. 6.
   [36] Docket No. 115.
27 [37] Docket No. 47.

─────────────────

1. **Plaintiff's CPA Claim is Barred by the Statute of Limitations.**

Plaintiff's CPA claim is barred by a four-year limitations period. RCW 19.86.120 ("Any action to enforce a claim for damages under RCW 19.86.090 shall be forever barred unless commenced within four years after the cause of action accrues.").  Because Plaintiff's claim stems from inclusion of MERS on the Deed of Trust, the statute of limitations on his CPA claim began to accrue when the Deed of Trust was executed; <u>not</u> when foreclosure is commenced. *Cf. Wescott v. Wells Fargo Bank, N.A.*, 862 F.Supp.2d 1111, 1118 (W.D. Wash. 2012) ("Plaintiff's CPA claim accrued on or before December 27, 2006, when the loan transaction closed.") In *Zhong v. Quality Loan Svc. Corp. of Washington*, the court rejected a borrower's claim she did not learn of the alleged misrepresentations (such as listing MERS as a beneficiary) until foreclosure was initiated.. No. C13-0814-JLR, 2013 U.S. Dist. LEXIS 145916, 2013 WL 5530583, *4 (W.D. Wash. October 7, 2013) (citing and *Green v. A.P.C.,* 136 Wash.2d 87, 960 P.2d 912, 915 (1998).  Rather, the court reasoned the borrower could have learned of these facts at any time simply by reading her loan papers. *Id*.  This case is identical as Bigelow has had ample opportunity to read his loan papers and to bring the action within the statutory time frame.  Failing such a simple task, his claims fail.

2. **Plaintiff's "Per Se" Claims Fail on their merits.**

Plaintiff improperly claims that Defendants violated the CPA based on unfounded and unsupported allegations that Defendants committed a "per se violation" of the statute. SAC ¶ 221. Plaintiff makes three vague statements to support this contention:

> 1) "It is impossible to frame definitions which embrace all unfair practices. There is no limit to human inventiveness in this field. Even if all known unfair practices were specifically defined and prohibited, it would be at once necessary to begin all over again. If congress were to adopt the method of definition it would undertake an endless task.  It is also practically impossible to define unfair practices so that the definition will fit business of every sort in every part of this country." SAC, ¶ 220;

> 2) Violation occurred "through misrepresentations, fraud, and/or irregularities in the nonjudicial foreclosure proceedings, restricting and inhibiting Plaintiff's ability to locate the party accountable and with authority to correct the foreclosure irregularities, and pursuing a course of conduct that involves the preparation of false and misleading documents and actions and relying upon such documents and/or

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
(3:14-cv-05798 BHS)

11

Wright, Finlay & Zak, LLP
3600 15th Ave. W, Suite 200
Seattle, WA 98119

1

2

actions that they knew or should have known to be false, misleading and that had the capacity to deceive a substantial portion of the public."  SAC, ¶ 222; and

3

4

3) Defendants "engaged in these unfair and deceptive practices as part of a normal course of business and commerce. Such practices are likely to be repeated, affecting the citizens of the State of Washington"  SAC, ¶ 223.

5

6

7

8

9

10

11

12

13

None of these claims have merit.  To establish a "per se" violation of the CPA, Plaintiff must prove: "(1) the existence of a *pertinent statute*; (2) its violation; (3) that such violation was the proximate cause of damages sustained; and (4) that they were within the class of people the statute sought to protect." *Dempsey v. Joe Pignataro Chevrolet, Inc.*, 22 Wn. App. 384, 393, 589 P.2d 1265 (1979) (emphasis added).  Only the Washington Legislature can establish a *per se* CPA violation, and it can do so only by making a specific legislative declaration to that effect. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash. 2d 778, 787-791, 719 P.2d 531 (1986). ("it has become clear that the Legislature, not this court, is the appropriate body to establish … a per se unfair trade practice").

14

15

16

17

18

19

Plaintiff failed to allege the existence of, or an actual violation of any statute that constitutes a per se violation of the CPA; As to Defendants Plaintiff circuitously references "§ 19.86 *et seq.*" as the statute Defendants are alleged to have violated SAC, ¶¶ 1, 222.  Plaintiff cannot create a per se CPA claim by merely (and ambiguously) citing violation of the statute that promulgates and defines a CPA claim, and support this contention by merely reciting the facts of a foreclosure process. He was required to plead something more.

20

21

22

23

24

25

26

27

Moreover, Plaintiff is required to show a causal link between an alleged violation of the CPA and the injury suffered. *See*, *Schmidt v. Cornerstone Invest., Inc.,* 115 Wash. 2d 148, 167, 795 P.2d 1143 (1990).  "[T]he term 'proximate cause' means a cause which in direct sequence unbroken by any superseding cause, produces the injury [or] event complained of and without which such injury [or] event would not have happened." *Schnall v. AT&T Wireless Servs., Inc.*, 171 Wash.2d 260, 278, 259 P.3d 129 (2011) (quoting 6 Wash. Practice: Washington Pattern Jury Instructions; Civil 15.01 at 181 (5th ed.2005). To show the causal link, Plaintiff is required to

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
(3:14-cv-05798 BHS)

12

Wright, Finlay & Zak, LLP
3600 15th Ave. W, Suite 200
Seattle, WA 98119

1   prove that but-for Defendants' actions Plaintiff would not have suffered any injury. *Indoor*

2   *Billboard v. Integra Telecom*, 162 Wash.2d 59, 84 (2007). Without demonstration of direct harm a

3   CPA claim fails. *Frias v. Asset Foreclosure Svcs., Inc.*, 957 F. Supp. 2d 1264, 1270 (W.D. Wash.

4   2013), See also *Guijosa v. Wal-Mart Stores, Inc.*, 144 Wash. 2d 907, 917, 32 P.3d 250 (2001).

5   **Plaintiff's only injuries stem from the Borrowers' abject failure to tender monthly**

6   **installment payments, and nothing more. This is not injury that can be attributed to**

7   **Defendants.** Plaintiff does not and cannot prove any existence of confusion over the party to

8   whom loan payments were to be paid such that default would occur, and in fact Exhibits C, E, G,

9   I, K, L, and M to the SAC demonstrate Plaintiff was consistently instructed as to both ownership

10  of the Loan *and* where payments were to be sent.  Plaintiff does not show he tendered payments to

11  Green Tree or to any other entity that were not credited,[38] and does not provide evidence that

12  another party has claimed any right to payment on the Loan or initiated foreclosure. In fact,

13  Plaintiff filed documents in the Superior Court of Snohomish County affirming Plaintiff's

14  knowledge that Green Tree had the right to enforce the Note and Deed of Trust as owner of the

15  Loan, and also that Plaintiff knew the Subject Property was in danger of foreclosure.[39]  Plaintiff

16  also cannot show that MERS caused injury.

17       I can't find any but-for causal relationship between what MERS did and didn't do
18       and the harm that wasn't suffered. Because even if the filing of foreclosure actions
         is an injury, and I don't think the showing has been made that there was any injury
19       here,[40] I'll point out that it's also clear that MERS didn't initiate those foreclosure
         proceedings, lend money, make representations to plaintiff, send plaintiff any
20       default notice or initiate the foreclosure. MERS may have greased the wheels for
         other people, but I don't think that is enough for causation to injury … if you can't
21       make the showing under prong four injury, it's impossible to make the showing
         under prong five causation.
22

23  *Bain v. Metropolitan Mortg. Grp., Inc.*, 2013 WL 6193887, *6 (Wash. Super. Ct. 2013).  *See also*,

24

---

25  [38] Plaintiff claims he tendered payments to Green Tree, SAC, ¶ 145, but the record shows Plaintiff never did.  Docket
    No. 92 at ¶ 29 ("It is undisputed that Bigelow failed to make his November 1, 2011 payment).

26  [39] See RJN at ¶ 6, Ex. 6-C at ¶ 2.10 ("The parties have the following community liabilities: Creditor Green Tree
    Services, Amount $233,899.00"); Ex. 6-D at ¶ 3.5 ("Responsible for modification of 1st mortgage and the payments
    100% … If we are foreclosed on I am responsible for 1/2 of any fee's [sic].")

27  [40] This Court held that Plaintiff did not suffer any injury arising from acts related to foreclosure. Dkt. 92 at Pg. 8.

---

DEFENDANTS' MOTION FOR                          13                    Wright, Finlay & Zak, LLP
SUMMARY JUDGMENT                                                     3600 15th Ave. W, Suite 200
(3:14-cv-05798 BHS)                                                 Seattle, WA 98119

1   *Hangman Ridge*, 105 Wash. 2d at 780 (Plaintiffs must demonstrate that MERS took some unfair

2   or deceptive act in trade or commerce that caused an identifiable injury).

3         In addition, Plaintiff cannot establish a per se claim because he failed to show Defendants

4   engaged in deceptive conduct.  MERS made no misrepresentations or misstatements to Plaintiff or

5   Carolyn Bigelow. To the contrary, MERS fully described its role to the Borrowers through the

6   very contract documents they signed. MERS did not engage in any conduct that was unfair,

7   deceptive or misleading.  Everything was fully disclosed and agreed to by the Borrowers. Even if,

8   *arguendo*, the Court ruled that MERS incorrectly concluded that it was a legal beneficiary under

9   Washington deeds of trust, MERS fully disclosed its role to James and Carolyn Bigelow and did

10   not affirmatively misrepresent or knowingly misstate anything to them.

11         To the extent Plaintiff alleges the per se violation may stem from fraud, the SAC does not

12   plead *any* act of fraud with particularity, and does not name the parties that committed each

13   alleged act along with how and when each act was committed.  *See*, *In re GlenFed, Inc. Sec.*

14   *Litigation*, 42 F.3d 1541, 1547 n.7 (9th Cir. 1994).  "Under Washington law, a plaintiff claiming

15   fraud must establish a number of elements, and must plead the fraud claim with particularity. A

16   plaintiff alleging negligent misrepresentation must similarly prove falsity, as well as reasonable

17   reliance, causation, and damages, by clear, cogent, and convincing evidence." *McAfee v. Select*

18   *Portfolio Servicing, Inc.,* ---Wn. App.---, 2016 Wash. App. LEXIS 392, at *13 (Mar. 7, 2016)

19   (internal citations omitted). To the extent Plaintiff lumped the defendants together in alleging

20   fraud, Plaintiff was also required to differentiate and inform each defendant of their role in

21   committing the act.  *Swartz v. KPMG LLP*, 476 F.3d 756, 765-765 (9th Cir. 2007).

22         The CPA is not designed to protect borrowers who fail to perform under the terms of the

23   Note and Deed of Trust from any and all foreclosure, without more.  Plaintiff willfully failed to

24   tender payments on the Loan for several years, and foreclosure of the Subject Property would be

25   the expected outcome of this failure to pay. As a result this claim fails.

26   //

27   //

### 3. Plaintiff's "Consumer Protection Act" Claim Fails

#### a. The Assignment was a valid Instrument

Plaintiff cannot prove the required elements to survive summary judgment on his CPA claim. "To successfully bring an action under the CPA, a plaintiff must prove five elements: '(1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; [and] (5) causation.'" *Johnson v. Camp Auto., Inc.*, 148 Wn. App. 181, 185, 199 P.3d 491 (2009). "The failure to establish any of the elements is fatal to a CPA claim." *Schnall*, 171 Wash.2d at 278 (citing *Holiday Resort Cmty. Ass'n v. Echo Lake Assocs., LLC*, 134 Wn. App. 210, 226 (2006)).

Plaintiff alleges MERS' execution of the Assignment creates an actionable CPA injury due to recordation of fraudulent documents in public record.[41] This argument fails for five reasons. First, the Assignment in this case is not deceptive because MERS was acting at the direction of the noteholder, and Green Tree was in actual possession of the Note when the Assignment was executed.[42] *Cf. Massey v. BAC Home Loans Servicing LP*, NO. C12-1314JLR, 2013 U.S. Dist. LEXIS 180472, 2013 WL 6825309 (W.D. Wash. 2013); *Estribor v. Mountain States Mortgage*, No. C13-5297 BHS, 2013 WL 6499535 at *3, 2013 U.S. Dist. LEXIS 174312 (W.D. Wash. Dec. 11, 2013) ("there is no standard set out in *Bain* for an action against MERS when MERS is acting as a nominee. In the absence of a case directly on point or *per se* violation of a statute, [plaintiff] bears the burden of showing an unfair or deceptive act. On this issue, the Court is not convinced that MERS's assignment of the Deed of Trust was unfair, deceptive, or in violation of public interest.").

Second, unlike the assignment at issue in *Bain*—which suggested MERS was acting as beneficiary in its own right, rather than as a limited agent for a principal, *see* 175 Wash. 2d at 116-17, the assignment in this case disclosed that MERS was acting as an agent for a principal.

Third, Plaintiff's Deed of Trust contains the following provision:

---

[41] SAC, ¶¶ 42-44, 46-57
[42] Green Tree Declaration, ¶ 10

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
(3:14-cv-05798 BHS)

15

Wright, Finlay & Zak, LLP
3600 15th Ave. W, Suite 200
Seattle, WA 98119

"Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and cancelling this Security Instrument."[43]

*See Estribor*, 2013 U.S. Dist. LEXIS 174312 at *8 ("The Deed of Trust clearly states MERS is a nominee for the lender and lender's successors and assigns. It is unclear how actions within that capacity are unfair or deceptive."). This means that MERS had authority under the Deed of Trust to execute the Assignment—with Plaintiff's express agreement.

Fourth, the Assignment is only a formality and recordation of an Assignment is not necessary or sufficient to confer standing to foreclose; the security follows the Note, not the other way around. *Fidelity & Dep. Co. v. Ticor Title Ins.*, 88 Wn. App. 64, 68, 943 P.2d 710 (1997); *see also*, *Carpenter v. Longan*, 83 U.S. 271, 275, 21 L. Ed. 313 (1872).  "[T]he fact that MERS is listed as a beneficiary of the deed of trust is not relevant to the outcome of this case…by virtue of being in possession of the note, U.S. Bank is the lawful owner. Its right to receive payment on the note does not depend upon any assignment of the note." *Upkoma v. U.S. Bank Nat. Ass'n*, No: 12-CV-0184-TOR, 2013 WL 1934172 at *3 (E.D. Wash, May 9, 2013).

Fifth, transfer of the Note also transferred the security interest, and an assignment is not even necessary to establish Green Tree's status as beneficiary.  Cf. Stoebuck & Weaver, § 18.20 at 340 ("From these basic principles, it follows that a transfer of the obligation [here, the Note], by assignment, negotiation, transfer, or whatever form of transfer is sufficient to transfer it, should carry the mortgage along with it.  This is indeed the universal result in American law."); *see also Fidelity & Deposit v. Ticor*, 88 Wn. App. 64, 68-69, 943 P.2d 710 (1997); *Price v. N. Bond & Mortg. Co.*, 161 Wash. 690, 695, 297 P. 786 (1931).  Defendant Green Tree was in possession of the "bearer" Note when the Assignment was executed, its Notice of Default was issued, and when

---

[43] RJN at ¶ 1, Ex. 1 at 3, ¶ 1.

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
(3:14-cv-05798 BHS)

16

Wright, Finlay & Zak, LLP
3600 15th Ave. W, Suite 200
Seattle, WA 98119

1   the Notice of Trustee's Sale was recorded.[44]   Thus, Green Tree was the legal beneficiary

2   notwithstanding the Assignment, and at all times relevant to this case was empowered to enforce

3   the Note through foreclosure.

4                    **b.MERS is empowered to act as the Lender's agent.**

5        In addition, MERS can act as an agent for the holder of a note. *Bain*, 175 Wn.2d at 106.

6   An agent can execute an Assignment when it is within its scope of duties.  *Id*.  "MERS was

7   authorized as the lender's nominee to assign the deed to Wells Fargo, which held the note.

8   Following that assignment, beneficiary Wells Fargo, not MERS, appointed a successor trustee.

9   These transactions complied with the terms of RCW 61.24.010(2) and the deed of trust." *Id*.  A

10   "nominee is one who holds bare legal title to property for the benefit of another." *Fourth Inv. LP*

11   *v. United States*, 720 F.3d 1058, 1066 (9th Cir. 2013).  Washington courts have approved of the

12   role of a nominee for over a century. *E.g. McAfee v. Select Portfolio Servicing, Inc.,* ---Wn. App.--

13   -, 2016 Wash. App. LEXIS 392, at *13 (Mar. 7, 2016) , *Anderson Buick Co. v. Cook*, 7 Wn.2d

14   632, 641-42, 110 P.2d 857 (1941) (mortgage valid even where mortgagee "held bare legal title"

15   for real property in interest); *Carr v. Cohn*, 44 Wash. 586, 588, 87 P. 926 (1906) (nominee can

16   bring quiet title action on deed).

17        When the beneficial ownership in a mortgage loan is sold from one MERS® System

18   member to another, MERS automatically becomes nominee (agent) for the new note owner in

19   regards to a deed of trust. The status of MERS' role as nominee/agent for the then current note

20   owner is not affected by the status of the original lender named in the MERS deed of trust, MERS

21   remains the beneficiary of record on the deed of trust and continues to act as nominee for the new

22   beneficial owner, regardless of whether the prior owner was no longer in business. *See*, *Kiah v.*

23   *Aurora Loan Serv., LLC*,  No. 10-40161-FDS, 2010 U.S. Dist. LEXIS 121252 *12, 2010 WL

24   4781849 (D. Mass. Nov. 16, 2010) ("dissolution of [lender] would not and could not prevent

25   [noteholder] from obtaining an assignment of the mortgage from MERS, both as a matter of law

26

27   [44] Green Tree Decl. at ¶ 10.

DEFENDANTS' MOTION FOR       17       Wright, Finlay & Zak, LLP
SUMMARY JUDGMENT               3600 15th Ave. W, Suite 200
(3:14-cv-05798 BHS)                 Seattle, WA 98119

1    and according to the arrangement that existed between MERS and [noteholder] as a 'successor

2    and assign'").  *See also*, Restatement (Third) Property § 5.4 cmt. E ("Courts should be vigorous in

3    seeking to find such [agency] relationship").

4            MERS was the nominee for Pierce Commercial Bank and its successors and/or assigns in

5    interest, and had a limited agency relationship. Plaintiff's Deed of Trust contained a provision

6    allowing MERS to act on behalf of Pierce Commercial Bank and any successors to Pierce

7    Commercial Bank.[45]   Here the execution of the Assignment was within the scope of MERS'

8    duties pursuant to the Deed of Trust executed by the Borrowers.

9                    *C.  Green Tree can be a noteholder if Fannie Mae is the owner of the loan.*

10   Plaintiff essentially claims that ownership of the Note by Fannie Mae vitiates any acts that were

11   taken by Green Tree.  See SAC, ¶¶ 119, 131 142, 156, 158.  Case law has consistently held that the

12   holder and owner need <u>not</u> be the same party:  *Cf. Cameron v. Acceptance Capital Mortg. Corp.*,

13   No. C13-1707 RSM, 2013 U.S. Dist. LEXIS 151134, 2013 WL 5664706 (W.D. Wash. 2013)

14   ("Flagstar [the lender] derived its appointment authority as the *holder* of the endorsed Note, a

15   position that is not undermined by the fact that Fannie Mae also had an ownership interest in the

16   Note at the time the appointment was made … 'even if Fannie Mae has an interest in Plaintiffs'

17   loan, Flagstar has the authority to enforce' the indorsed Note that it held in its possession."); *see*

18   *also Coble v. SunTrust Mortgage Inc.*, No. C13-1878-JCC, 2014 U.S. Dist. LEXIS 23921 at *10

19   (W.D. Wash. Feb. 18, 2014) ("Plaintiff also suggests that the holder of the note must be the owner

20   of the obligation-but this argument has been rejected by courts"); *Massey v. BAC Home Loans*

21   *Servicing LP*, No. 12–cv–1314–JLR, 2013 U.S. Dist. LEXIS 180472, 2013 WL 6825309 at *5

22   (W.D. Wash. Dec.23, 2013) (citing cases); *Rouse v. Walls Fargo Bank, N.A.*, No. 13–cv–5706–

23   RBL, 2013 U.S. Dist. LEXIS 144013, 2013 WL 5488817 at *5 (W.D. Wash. Oct. 2, 2013)

24   ("[C]ourts have uniformly rejected claims that only the 'owner' of the note may enforce it.")).

25

26   _____

27   [45] RJN at ¶ 1,  Ex. 1 at 3.

_____
DEFENDANTS' MOTION FOR                    18                  Wright, Finlay & Zak, LLP
SUMMARY JUDGMENT                                             3600 15th Ave. W, Suite 200
(3:14-cv-05798 BHS)                                          Seattle, WA 98119

1

*D.  The original note is bearer paper and Green Tree was the holder.*

2

Plaintiff's Complaint alleges violation of the FDCPA and CPA because Green Tree could

3

not hold or enforce the Note.[46] First, case law already established that a fundamental issue is

4

whether the party initiating foreclosure is the holder of the Note or an agent thereof.  *See Bain*,

5

175 Wn.2d at 89 ("The plaintiffs argue that our interpretation of the deed of trust act should be

6

guided by these UCC definitions and thus a beneficiary must either actually possess the

7

promissory note or be the payee…We agree.").   When a negotiable instrument is indorsed in

8

blank, it "becomes payable to bearer and may be negotiated by transfer of possession alone …."

9

RCW 62A.3-205(b).  RCW § 62A.1-201(20) defines a holder as being "the person in possession

10

if the instrument is payable to bearer or, in the case of an instrument payable to an identified

11

person, if the identified person is in possession."  See also RCW 62A.1-201(5).  Pursuant to RCW

12

62A.3-301 the "Person entitled to enforce" an instrument means (i) the holder of the instrument .."

13

A person may be a person entitled to enforce the instrument even though the person is not the

14

owner of the instrument or is in wrongful possession of the instrument."  RCW § 62A.1-201(20)

15

defines a holder as being "the person in possession if the instrument is payable to bearer …."

16

The Note is endorsed in blank.[47]  Green Tree was in possession of the Note, was entitled

17

to enforce the Note, and did not transfer or assign the Note to any other party or entity at any time

18

during the period at issue.[48]

19

Second, Plaintiff's challenge to the endorsement of Sonja L. Lightfoot being invalidated

20

by questionable business practices, SAC, ¶¶ 33-34,) lacks merit.[49]  It is Green Tree's knowledge

21

and belief that Lightfoot endorsed the Note in or about May, 2007.[50]  Endorsement of the Note by

22

Lightfoot occurred prior to imposition of the TRO in Ex. N of the Complaint, which reflects an

23

---

24

[46] SAC, ¶¶ 31-32.

[47] Green Tree Declaration, ¶ 8.

[48] Green Tree Declaration, ¶¶ 8-9.

25

[49] *See also* the Press Release from the U.S. Attorney's Office 1/15/2013: http://www.fbi.gov/seattle/press-

26

releases/2013/mortgage-fraud-co-schemers-sentenced-in-case-that-crippled-pierce-commercial-bank, which also states that the identified fraudulent loans had to be repurchased by PCB; that did not occur here.

[50] Green Tree Declaration, ¶ 13.

27

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
(3:14-cv-05798 BHS)

19

Wright, Finlay & Zak, LLP
3600 15th Ave. W, Suite 200
Seattle, WA 98119

August 22, 2011 date. Also, the acts that subjected Lightfoot to criminal prosecution did not involve endorsements to Notes.  Defendants respectfully request this Court take judicial notice of Case No. 3:11-cr-05394-BHS as filed in the Western District of Washington ("Criminal Case"). The activities at issue with Lightfoot involved allegations of loan origination, and more specifically, assisting prospective borrowers in falsifying loan applications to the extent loans would be underwritten for otherwise ineligible borrowers, and the subsequent sale of these loans on the secondary market (Criminal Case, Document No. 4 "Indictment", ¶¶ 14-15, 26-27.  See also *Plea Agreement* entered as Docket Item No. 117).

Lastly, Plaintiff makes the unsupported allegation that MERS "never [has] anything to do with the note" and references Exhibits "Q" and "P." SAC, ¶ 20.  Defendants admit that MERS is not a party to the Note and does not take possession of original loan documents. MERS is not a mortgage loan originator, lender or servicer; MERS' role is to act as record beneficiary on deeds of trust as nominee (agent) for the beneficial owner of the mortgage loan secured by the MERS deed of trust.  MERS was the nominee for Pierce Commercial Bank and its successors and/or assigns in interest, and had a limited agency relationship with each note-holder since origination. Plaintiff's own Deed of Trust supports this: "Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and cancelling this Security Instrument."[51]  Moreover, MERS is an agent and can act as an agent for the holder of a note.  *Bain*, 175 Wn.2d at 106; *Zhong*, 2013 WL 5530583, *3.  MERS executed an Assignment to Green Tree Servicing, LLC,[52] and Green Tree executed the Appointment of Successor Trustee.[53]  MERS is not a named entity in the Note, never claimed

---

[51] See RJN at ¶ 1, Ex. 1.
[52] RJN at ¶ 2, Ex. 2
[53] RJN at ¶ 3, Ex. 3

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
(3:14-cv-05798 BHS)

20

Wright, Finlay & Zak, LLP
3600 15th Ave. W, Suite 200
Seattle, WA 98119

1   possession or ownership of the Note to Plaintiff or any other party, and did not act beyond its

2   contractual scope of authority.

3               *E.  Plaintiff's robo-signing allegations are baseless.*

4               Plaintiff claims Defendants used "computerized signatures" on the Assignment but fails to

5   prove this occurred, that Plaintiff has standing to challenge the Assignment, or that he suffered

6   any harm as a result. "Plaintiffs argue that they have been injured by the alleged improper signing

7   of reconveyance documents …. Plaintiffs point the Court to no Washington state authority to

8   support those legal conclusions. …Absent some legal or expert authority supporting their claim,

9   Plaintiffs' assertion that the allegedly robo-signed documents interfere with their chain of title is

10  entirely speculative."   *Reid v. Countrywide Bank, N.A.*, No. C13-0099-JCC, 2013 U.S. Dist.

11  LEXIS 185460 (W.D. Wash. Nov. 1, 2013).  Additionally,

12          Plaintiff's second argument relates to so-called "robo-signing" of the documents
        used to initiate foreclosure proceedings. Even assuming for the sake of argument
13      that the assignments in question were fraudulently executed, Plaintiff, as a third
        party, lacks standing to challenge them. ... Defendants are entitled to summary
14      judgment on these claims.

15  *Upkoma,* 2013 WL 1934172 at *4. (internal citations omitted).

16          Here Plaintiff's alleged "harm" is that, for some unknown reason he "relied" upon the

17  "alleged copy … of the Assignment but now feels that he has been misled." SAC, ¶ 70. That is

18  not enough to establish a CPA violation.

19      **4.  Plaintiff's "Emotional Distress" Claim Fails**

20          Plaintiff claims "infliction of emotional distress" in the Complaint, but fails to plead the

21  specific type alleged to have been inflicted, the specific acts that led to this claim, and the

22  resulting damages.  The Court has determined that Plaintiff's claim is for intentional infliction of

23  emotional distress.[54] IIED is also known as the tort of outrage. *Vawter v. Quality Loan Serv.*

24  *Corp.*, 707 F. Supp. 2d 1115, 1127 (W.D. Wash. 2010).

25

26

27  [54] See Docket no. 92 at 3:1-2 ("Bigelow asserts causes of action for violation of the FDCPA, DTA, CPA, slander of
    title, and intentional infliction of emotional distress ('IIED').

1   On an outrage claim, Plaintiff is required to prove "three elements: (1) extreme and

2   outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual result

3   to plaintiff of severe emotional distress." *Vawter.*, 707 F. Supp. 2d at 1128.  "The tort of outrage

4   does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other

5   trivialities." *Anderson v. City of Bellevue*, 862 F. Supp. 2d 1095, 1110 (W.D. Wash. 2012). This

6   Court can make a determination on the IIED claim without a jury trial. *Cf. Dicomes v. State,* 113

7   Wash. 2d 612, 782 P.2d 1002, 1013 (1989) ("The question of whether certain conduct is

8   sufficiently outrageous is ordinarily for the jury, but it is initially for the court to determine if

9   reasonable minds could differ on whether the conduct was sufficiently extreme to result in

10  liability.")

11  "The first element requires proof that the conduct was 'so outrageous in character, and so

12  extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious,

13  and utterly intolerable in a civilized community.'" *Robel v. Roundup Corp.,* 148 Wash. 2d 35, 59

14  P.3d 611, 619 (2002) (quoting *Dicomes,* 782 P.2d at 1012).  The standard requires that Plaintiff

15  show the conduct was so extreme that it would cause severe emotional distress. *Vawter*, 707

16  F.Supp.2d at 1128; Even where the actions in connection with a foreclosure process may be

17  problematic, troubling, or even deplorable, "these actions do not involve physical threats,

18  emotional abuse, or other personal indignities aimed at" Plaintiff.  *Vawter*, 707 F.Supp.2d at 1128.

19  Allegations as to the third element, the actual result of emotional distress, must go beyond

20  "bare and conclusory allegations . . . that he 'became emotionally distressed,' that the distress

21  'manifested itself in physical symptoms,' and that he 'obtained treatment' for his distress and

22  symptoms are a mere 'formulaic recitation of the elements of a cause of action' and in the absence

23  of factual detail are wholly insufficient to state a claim.  *Phillips v. KIRO-TV, Inc.*, 817 F. Supp. 2d

24  1317, 1325 (W.D. Wash. 2011) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct.

25  1955, 167 L. Ed. 2d 929 (2007)).

26  Here Plaintiff failed to plead any element of the IIED claim as to any Defendant; the

27  complaint states only that "Because of the many misrepresentations by Defendants, Plaintiff has

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
(3:14-cv-05798 BHS)

22

Wright, Finlay & Zak, LLP
3600 15th Ave. W, Suite 200
Seattle, WA 98119

1   suffered mental and emotional anguish. Plaintiff has suffered damages caused by a divorce which

2   severed the marital community." SAC ¶ 162. Plaintiff's only other claim states "Plaintiff alleges

3   that the Defendants  . . . have intentionally or negligently taken false and misleading actions which

4   have caused Plaintiff severe emotional distress as the family life he was accustomed to unraveled."

5   SAC ¶ 232.  Neither of these statements shows extreme or outrageous conduct, or even conduct

6   that could be considered troubling, and that Plaintiff's emotional distress could be the only result.

7        Further, the "family life" Plaintiff references in relation to both statements in support of his

8   IIED claim "unraveled" prior to any involvement by WFZ or Parker. See, RJN 6, which clearly

9   shows Plaintiff's divorce from Carolyn Bigelow was completed prior to this litigation.[55]  Plaintiff

10   fails to show that WFZ and Parker had involvement with Plaintiff prior to litigation.

11   **5.  Plaintiff's "FDCPA" claim fails**

12        In order to plead a claim for violation of the FDCPA, a plaintiff is required to allege facts

13   demonstrating that (1) Defendants were collecting debt as debt collectors, and (2) Defendants' debt

14   collection actions violated federal statute.  *See Jerman v. Carlisle, et al.,* 559 U.S. 573, 130 S.Ct.

15   1605, 1606 (2010) (citing 15 U.S.C. § 1692 et seq.).  "The test for determining whether a debt

16   collector violated the FDCPA is objective and does not depend on whether the debt collector

17   intended to deceive or mislead the consumer." *Clark v. Capital Credit & Collection Serv., Inc.*,

18   460 F.3d 1162, 1171 (9th Cir. 2006). The "least sophisticated" debtor standard applies; "the

19   liability analysis turns on whether a debt collector's communications would mislead an

20   unsophisticated but reasonable consumer." *Id.* The Court further finds that the non-judicial

21   foreclosure proceeding at issue is not an attempt to collect a 'debt' for FDCPA purposes."

22   *Mansour v. Cal-W. Reconveyance Corp.*, 618 F. Supp. 2d 1178, 1182 (D. Ariz. 2009).

23        Here, Plaintiff did not allege any facts demonstrating Green Tree violated the FDCPA.

24   Instead, Plaintiff improperly concludes MERS recorded an Assignment without the ability to do

---

[55] Docket no. 67 at ¶ 7.

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
(3:14-cv-05798 BHS)

23

Wright, Finlay & Zak, LLP
3600 15th Ave. W, Suite 200
Seattle, WA 98119

1   so, SAC, ¶ 57, incorrectly states MERS appointed the Successor Trustee, SAC, ¶ 83, and that
2   Defendants all took "action they could not legally take" (SAC, ¶ 194).[56]

3         In order for Plaintiff to reasonably make a claim for violation of the FDCPA, Plaintiff is
4   required to show Green Tree used "unfair or unconscionable means to collect or attempt to collect
5   its debt" by "[t]aking or threatening to take any nonjudicial action to effect dispossession or
6   disablement of property if there is no present right to possession of the property claimed as
7   collateral through an enforceable security interest." 15 U.S.C. § 1692f(6)(A).

8         Plaintiff executed a Note and a Deed of Trust, using the Subject Property as security for
9   repayment of the debt. It is undisputed that the Loan has been in default since November, 2011.[57]
10  Therefore Plaintiff knows he owes some party for payments required by the Note, and could
11  reasonably expect the Subject Property could be foreclosed if payments were not tendered each
12  month. Plaintiff also demonstrates he had knowledge that payments were to be made to Green
13  Tree. See SAC, Ex. C, E, G, I, K, L, and M, *see also*, SAC at ¶ 145; RJN, Exs. 6-C and 6-D.

14        Next, Plaintiff fails to show Green Tree used "false, deceptive, or misleading representation
15  or means in connection with the collection of [the] debt" under 11 U.S.C. § 1692e(10). "An
16  allegedly false or misleading representation is not actionable under the FDCPA unless it is
17  material." *Donohue v. Quick Collect, Inc.,* 592 F.3d 1027, 1033 (9th Cir.2010). Plaintiff does not
18  allege or show Green Tree provided misleading information that was material to, or caused his
19  default, such as providing an incorrect payment address or failing to credit tendered payments.

20        Instead, Plaintiff bases his entire claim on the right of Green Tree to act as holder of the
21  Note. "To preserve the protections and policies of the FDCPA, it is important to know the proper
22  identity of the creditor. Knowing a creditor's identity allows the 'least sophisticated consumer' to
23  make more informed decisions on how to communicate with the creditor and avoid being misled."
24  *Isham v. Gurstel, Staloch & Chargo, P.A.,* 738 F. Supp. 2d 986, 996 (D. Ariz.2010).  Plaintiff's
25  complaint and exhibits clearly demonstrate knowledge that Green Tree was the creditor (*see, e.g.*

26
27  ---
    [56] Plaintiff's FDCPA claims were dismissed as to MERS, WFZ and Parker. Docket no. 92.
    [57] Docket no. 92, ¶ 29: "It is undisputed that Bigelow failed to make his November 1, 2011 payment…").

1  Plaintiff's Exhibits E, G, K, L and M, filed as Docket Item No. 1-1), and he affirmed this

2  knowledge in divorce documents executed prior to the litigation.[58]

3         Plaintiff's claim under 11 U.S.C. § 1692e(5), wherein Plaintiff alleges Green Tree

4  threatened to take, or took an action it could not legally take, appears to be solely based on the

5  premise that the naming of MERS on the Deed of Trust invalidated the document under *Bain*, 175

6  Wn.2d at 117, and that by extension, because MERS could not assign the Deed of Trust, all

7  subsequent actions by Green Tree constituted an FDCPA violation. Complaint, ¶ 194.

8         Although Plaintiff includes QWR and/or debt validation responses in support of his

9  allegations of "threats" by Green Tree, Plaintiff's exhibits do not appear to support an FDCPA

10 claim to the extent an "unsophisticated but reasonable consumer" would have been gravely misled

11 by the contents of the correspondences (or any of the recorded documents for that matter).  None

12 of these correspondences contained "empty threats" used as a means to coerce payment from

13 Plaintiff to which it was not entitled.  *See, Lensch v. Armada Corporation*, 795 F. Supp. 2d 1180,

14 1185 (W.D. Wash. Jun. 13, 2011).

15        Also, Plaintiff fails to make the allegation that he was "deceived by characterization of

16 MERS as a beneficiary on the Deed of Trust." *Zalac v. CTX Mortg. Corp.*, No. C12-01474 MJP,

17 2013 U.S. Dist. LEXIS 20269, 2013 WL 1990728 at*3 (W.D. Wash. 2013). Plaintiff did not file

18 one single exhibit showing he contacted, or even attempted to contact MERS for clarification on

19 ownership of the Loan.  Likewise, Plaintiff fails to prove MERS sent any communications to

20 Plaintiff in furtherance of collection under the Note, and the SAC even states MERS disavowed

21 any connection with the Note (SAC, ¶ 20). Accordingly, Defendants did not violate 15 U.S.C. §

22 1692e(10) and the claim must be dismissed.

///

///

///

///

///

---

[58] RJN, Ex. 6.

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
(3:14-cv-05798 BHS)

25

Wright, Finlay & Zak, LLP
3600 15th Ave. W, Suite 200
Seattle, WA 98119

1

## VI. CONCLUSION

2          Based upon the foregoing, Defendants respectfully request that this Court grant their

3   Motion for Summary Judgment and dismiss Plaintiff's claims as to all Defendants with prejudice.

4

5   Dated: May 25, 2016

Respectfully submitted,
**WRIGHT, FINLAY & ZAK, LLP**

6

7                                        /s/Ryan M. Carson
                                         Ryan M. Carson WSBA #41057

8                                        Attorney for Defendants,
                                         DITECH FINANCIAL LLC as successor in interest

9                                        to GREEN TREE LOAN SERVICING LLC,
                                         MORTGAGE ELECTRONIC REGISTRATION

10                                       SYSTEMS, INC., WRIGHT, FINLAY & ZAK, LLP
                                         and RENEE M. PARKER, ESQ.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
(3:14-cv-05798 BHS)

26

Wright, Finlay & Zak, LLP
3600 15th Ave. W, Suite 200
Seattle, WA 98119

1

## DECLARATION OF SERVICE

2

The undersigned declares as follows:

3

On May 25, 2016, I served the foregoing document: **NOTICE OF MOTION FOR SUMMARY**

4

**JUDGMENT BY DEFENDANTS GREEN TREE SERVICING LLC, MORTGAGE**
**ELECTRONIC REGISTRATION SYSTEMS, INC., WRIGHT, FINLAY & ZAK, LLP AND**

5

**RENEE PARKER, MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS GREEN**
**TREE SERVICING LLC, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS,**

6

**INC., WRIGHT, FINLAY & ZAK, LLP AND RENEE PARKER** on the following individuals
by U.S. Mail, postage prepaid:

7

8

**SERVICE VIA U.S. MAIL:**
PLAINTIFF

9

James A Bigelow
20704 2nd Ave W

10

Lynnwood, WA 98036

11

**SERVICE VIA CM/ECF:**
PLAINTIFF

12

James A. Bigelow
sistermoonproductions@gmail.com

13

14

INTERESTED AND/OR DISMISSED PARTIES
Matthew T Adamson

15

madamson@jbsl.com,lkondo@jbsl.com

16

Timothy Dietz
timthepostman@yahoo.com

17

18

Joseph H Marshall
jhmarshall@rcolegal.com,kstephan@rcolegal.com

19

Thomas F. Peterson

20

tpeterson@sociuslaw.com,lmckenzie@sociuslaw.com

21

22

    I declare under penalty of perjury under the laws of the State of Washington and the United
States of America that the foregoing is true and correct.

23

DATED this 25th day of May, 2016

24

25

          /s/Karina Yefimov
          Karina Yefimov

26

27

DEFENDANTS' MOTION FOR         27         Wright, Finlay & Zak, LLP
SUMMARY JUDGMENT                   3600 15th Ave. W, Suite 200
    (3:14-cv-05798 BHS)                    Seattle, WA 98119